IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGEVITY CORPORATION and INGEVITY SOUTH CAROLINA, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-1391 (RGA) |
| v. | ) ) ) | |
| BASF CORPORATION, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT BASF CORPORATION'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS
<u>FIRST AMENDED ANSWER AND COUNTERCLAIMS</u>**

OF COUNSEL:
Thomas J. Friel, Jr.
KING & SPALDING LLP
601 California Street, Suite 100
Palo Alto, CA 94304
(650) 422-6741

James P. Brogan
Brian Eutermoser
Angela C. Tarasi
Kevin Lake
Mikaela Stone
KING & SPALDING LLP
1515 Wynkoop Street, Suite 800
Denver, CO 80202
(720) 535-2300

Bobby R. Burchfield
Norman Armstrong, Jr.
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

July 23, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
araucci@mnat.com

*Attorneys for Defendant BASF Corporation*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 2

SUMMARY OF THE ARGUMENT ....................................................................................... 3

STATEMENT OF FACTS ...................................................................................................... 3

    A.    The Parties ................................................................................................3

    B.    Ingevity's Egregious Misconduct Before the PTO .................................................4

    C.    Ingevity Continues Its Egregious Misconduct to Improperly Extend Its Monopoly6

LEGAL STANDARDS ......................................................................................................... 7

    A.    Standard for Amending Pleadings ..........................................................................7

    B.    Inequitable Conduct .................................................................................7

ARGUMENT ....................................................................................................................... 8

I.    BASF'S MOTION IS TIMELY. ..................................................................................... 8

II.    INGEVITY WILL NOT BE UNDULY PREJUDICED BY BASF'S PROPOSED
AMENDMENTS. .................................................................................................... 10

III.    BASF'S AMENDMENTS WILL NOT BE FUTILE...................................................... 12

    A.    BASF's Inequitable Conduct Allegations Satisfy the Pleading Requirements of
Rule 9(b) of the Federal Rules of Civil Procedure and, Therefore, Are Not Futile12

        1.    Ingevity's Misconduct Was Material to the PTO's Decisions.................. 14

        2.    Ingevity Had the Knowledge and Intent to Deceive the PTO .................. 15

    B.    BASF's Unclean Hands Defense Is Sufficient ....................................................16

    C.    BASF's *Walker Process* and Sham Litigation Counterclaims Are Sufficient.......17

CONCLUSION..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apotex, Inc. v. UCB, Inc.*,
   763 F.3d 1354 (Fed. Cir. 2014)...................................................................................7

*Bechtel v. Robinson*,
   886 F.2d 644 (3d Cir. 1989)......................................................................................10

*Cargill, Inc. v. Canbra Foods, Ltd.*,
   476 F.3d 1359 (Fed. Cir. 2007)..................................................................................5

*Chrimar Sys. Inc v. Cisco Sys. Inc*,
   No. 13-CV-01300-JSW, 2016 WL 1623922 (N.D. Cal. Apr. 21, 2016) ...............11

*Cordance Corp. v. Amazon.com, Inc.*,
   255 F.R.D. 366 (D. Del. 2009) ...........................................................................9, 11

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
   793 F. Supp. 2d 311 (D.D.C. 2011)......................................................................16, 17

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
   655 F.3d 1337 (Fed. Cir. 2011)................................................................................15

*E. Minerals & Chems. Co. v. Mahan*,
   225 F.3d 330 (3d Cir. 2000)......................................................................................7

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961)..................................................................................................17

*Eisai Co. v. Teva Pharm. USA, Inc.*,
   247 F.R.D. 445 (D.N.J. 2007)....................................................................................9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009).......................................................................... *passim*

*Foman v. Davis*,
   371 U.S. 178 (1962)....................................................................................................7

*France Telecom S.A. v. Novell, Inc.*,
   No. 102-437-GMS, 2002 WL 31355255 (D. Del. Oct. 17, 2002) ..........................16

*Gaymar Indus. Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
   No. 08-CV-299S, 2012 WL 176500 (W.D.N.Y. Jan. 20, 2012)..............................11

ii

*GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*,
   No. 14-877-LPS-CJB, 2016 WL 7319670 (D. Del. Dec. 15, 2016)..........................................7

*Helios Software, LLC v. Awareness Techs., Inc.*,
   No. 11-1259-LPS, 2013 WL 6773658 (D. Del. Dec. 19, 2013) ...............................................11

*Leader Techs., Inc. v. Facebook, Inc.*,
   No. 08-862-LPS, 2010 WL 2545959 (D. Del. June 24, 2010) ...........................................9, 10

*MedImmune, Inc. v. Genentech, Inc.*,
   427 F.3d 958 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007)........................17

*Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*,
   629 F. Supp. 864 (S.D.N.Y. 1986)..........................................................................................18

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
   No. 00–1020–GMS, 2002 WL 598457 (D. Del. 2002) ...........................................................10

*Probert v. The Clorox Co.*,
   258 F.R.D. 491 (D. Utah 2009) ...............................................................................................10

*Roquette Freres v. SPI Pharma, Inc.*,
   No. 06-540-GMS, 2009 WL 1444835 (D. Del. May 21, 2009) ...............................................12

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000).....................................................................................................12

*Sonos, Inc. v. D&M Holdings Inc.*,
   No. 14-1330-RGA, 2017 WL 476279 (D. Del. Feb. 3, 2017) (Andrews, J.) .......................7, 8

*SunPower Corp. v. PanelClaw, Inc.*,
   No. 12-1633-MPT, 2016 WL 5107029 (D. Del. Sept. 19, 2016) ...........................................13

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
   580 F. Supp. 2d 345 (D. Del. 2008)...................................................................................17, 19

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc).............................................................................8, 14

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965)..................................................................................................................17

*Walker Process Equip. v. Good Mach. & Chem. Corp.*,
   382 U.S. 172 (1965)..................................................................................................................17

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
   No. 09-955-LPS-CJB, 2012 WL 600715 (D. Del. Feb. 3, 2012) ...........................................16

## **INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) and D. Del. LR 15.1, Defendant BASF Corporation ("BASF") moves for leave to amend BASF's First Amended Answer and Counterclaims against Plaintiffs Ingevity Corporation and Ingevity South Carolina, LLC (collectively, "Ingevity").

Based on recent discovery produced by ███████████████████ on May 6, May 28, and June 6, 2019, BASF has obtained new information that Roger Williams, named inventor on U.S. Patent No. RE38,844 (the "'844 patent"), committed inequitable conduct by making false and misleading statements to the U.S. Patent Office ("PTO") during prosecution of the '844 patent, whereby Williams knew, but failed to disclose to the PTO, that ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████. Moreover, in opposition to BASF's Petition for *Inter Partes* Review ("IPR") before the Patent Trial and Appeal Board ("PTAB"), Ingevity and its counsel, Brian Buroker of Gibson, Dunn & Crutcher LLP, submitted a response on February 14, 2019, that repeated the '844 patent's misrepresentation of the state of the art as of the patent's priority date, November 21, 2001.  Before learning this information, BASF could not have raised inequitable conduct as an affirmative defense, asserted a *Walker Process* fraud counterclaim, or asserted a sham litigation counterclaim against Ingevity in its First Amended Answer and Counterclaims filed February 14, 2019.  BASF now seeks leave to amend its First Amended Answer and Counterclaims.

A copy of BASF's proposed Second Amended Answer and Counterclaims is attached as Exhibit A.  A redline of the proposed Second Amended Answer and Counterclaims compared to the First Amended Answer and Counterclaims filed February 14, 2019, is attached to this Motion as Exhibit B.

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On July 19, 2018, Ingevity Corporation filed its first Complaint ("July 19, 2018 Complaint") against BASF in this Court, alleging that BASF directly infringed, and actively induced the infringement of, the '844 patent, thereby seeking damages and injunctive relief.  *See* Complaint at ¶ 10, *Ingevity Corp. v. BASF Corp.*, No. 18-cv-01072-RGA (D. Del. July 19, 2018), ECF No. 1.  Ingevity South Carolina, LLC was not a plaintiff in that action.  On July 20, 2018, Ingevity Corporation filed a Motion for a Preliminary Injunction.  *See* Motion for Preliminary Injunction, *Ingevity Corp. v. BASF Corp.*, No. 18-cv-01072-RGA (D. Del. July 20, 2018), ECF No. 5.  On September 6, 2018, Ingevity voluntarily dismissed the July 19, 2018 Complaint because the patent owner was Ingevity South Carolina, LLC.

On September 6, 2018, Ingevity Corporation and Ingevity South Carolina, LLC filed a new Complaint ("Complaint") against BASF in this Court, making the same substantive allegations as in the July 19, 2018 Complaint.  The Complaint alleged that Ingevity South Carolina, LLC was the owner by assignment of the '844 patent.  BASF timely filed its Answer and Affirmative Defenses to the Complaint on October 12, 2018 (D.I. 19).  With Ingevity's consent, BASF filed its First Amended Answer and Counterclaims on February 14, 2019 (D.I. 65).  By the parties' agreement, the Motion for Preliminary Injunction for the improperly-filed case was refiled in the present case without altering the previously-agreed upon schedule (*see* D.I. 12).  On June 4, 2019, the Court denied Ingevity's Motion for Preliminary Injunction, finding that Plaintiffs failed to show that they are likely to succeed on the merits of validity (D.I. 95 at 9).

On July 10, 2019, BASF sent a copy of the proposed amendment to Brian Buroker, Ingevity's lead counsel, asking him to consent to BASF filing a motion to amend.  After he did not respond for more than a week, BASF sent another request to Mr. Buroker.  He finally

responded last Friday, July 19; a true and correct copy of his response is attached as Exhibit 1 to the Declaration of Brian Eutermoser.  Mr. Buroker did not allege undue delay, and he did not claim any prejudice that might result from the amended pleadings.  BASF notes that some of the allegations are directed at Mr. Buroker's own misconduct.

This litigation remains in its early stages.  Pursuant to the Scheduling Order entered by this Court on November 16, 2018 (D.I. 41), fact discovery closes on December 6, 2019, and expert discovery closes on January 16, 2020.  *Id.*  Trial is not set to begin until September 14, 2020, at the earliest.  *Id.*

## SUMMARY OF THE ARGUMENT

Under Federal Rule of Civil Procedure 16(b)(4) and the Third Circuit's liberal standard regarding amendment of pleadings, BASF's request to amend its First Amended Answer and Counterclaims should be granted.  First, BASF has shown good cause by pursuing non-party discovery nearly two months before the April 30, 2019 deadline for the amendment of pleadings and by moving to amend as soon as practicable after receipt of ███████ recent productions on May 6, May 28, and June 6, 2019.  Second, BASF is not bringing this Motion with dilatory motive.  Third, Ingevity will not be unduly prejudiced by BASF's proposed amendments because this case is still in its early stages with over four months remaining in fact discovery.  Finally, BASF's proposed amendments would not be futile because they sufficiently plead facts that satisfy the Rule 9(b) particularity requirement.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiffs design, manufacture, license, market, import, distribute, and sell activated carbon products ("carbon adsorbents") used as part of automotive evaporative emissions control systems.  One of Ingevity's carbon adsorbent products is a honeycomb scrubber, which is sold

under the trade names "Standard HCA" and "HCA-LBE" and installed in fuel vapor canisters to capture automotive evaporative emissions. BASF's Second Amended Answer and Counterclaims ("Second Am. Answer & Countercl.") ¶ 6. Ingevity holds monopoly power in (and near 100% share of) the market for carbon adsorbents for fuel vapor canisters meeting the latest LEV III/Tier 3 environmental regulations ("LEV III/Tier 3 carbon adsorbents") in the United States and Canada. *Id.* ¶ 71–82. Indeed, Ingevity has described itself as "the leading supplier" of carbon adsorbents, *id.* ¶ 1, and has touted its "high market shares," *id.* ¶ 96, in public filings.

BASF is a marketer of chemicals and related products in North America. BASF produces and markets numerous products for use in the automotive industry, including the EvapTrap$^{TM}$ XC, its honeycomb scrubber. *Id.* ¶ 5. With access to a source of synthetic carbon, BASF's EvapTrap$^{TM}$ XC honeycomb scrubber potentially allows vehicles to meet strict United States and Canadian emission standards with just a single scrubber in each canister, versus the multiple scrubbers per canister needed with Ingevity's product. *Id.* ¶¶ 24, 26. This offers customers the choice of an alternative honeycomb scrubber that is both more effective and less expensive.

### B. Ingevity's Egregious Misconduct Before the PTO



███ new evidence proves that ███████████████████████ ██████████████████████████████████ ████████████████████. ████████████████████ ████████████████████████████████ ████████████████████████████████████. The newly-discovered documents leave no doubt that ████████ prior art canister systems satisfied the only

limitation that Ingevity disputed, the "subsequent" adsorbent volume with an IAC below 35 g/L. As such, they invalidate all asserted '844 patent claims.

Additionally, new evidence shows that █████████████████████████████ ██████████████████████████, rendering the asserted claims invalid under 35 U.S.C. § 102(b).

The '844 patent's named inventor Roger Williams was █████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████. Williams never disclosed his knowledge of ███████████████████████████████ during prosecution of the '844 patent. Williams failed to disclose his knowledge of the ██████████████ ████████████████████████. These omissions were material.

The newly-discovered evidence shows that the '844 patent application misrepresented the state of the art, falsely stating that "low BWC adsorbents were not considered useful for inclusion into a canister system" and that "[t]he preferred selection of these low BWC materials . . . was only realized once the dynamics within the adsorbent bed were realized." '844 patent at 5:65–66, 6:6–10. This was false because Williams learned from ██████████ █████████████████████████████████████████████████████████████, significantly reduced DBL. BASF petitioned for IPR of the '844 patent on November 5, 2018. Opposing BASF's IPR petition, Ingevity repeated the material misrepresentations Williams made to the PTO during prosecution of the '844 patent and capitalized on Williams's omissions. The PTAB's non-institution decision turns on this point: "BASF has not shown that an IAC

below 35 g/L would have been anything other than one possible result from combining Meiller[1] and Park to create a staged system for reducing DBL emissions." (D.I. 91, Ex. A at 21). The new ███████ evidence refutes that point: ████████████████████████████████████ ████████████████████, and that invalidates the '844 patent claims.

### C.     Ingevity Continues Its Egregious Misconduct to Improperly Extend Its Monopoly

Recognizing the potential competition posed by BASF's EvapTrap[TM] XC honeycomb scrubber, Ingevity has aggressively pursued a multi-step and multi-faceted strategy to obtain and maintain its monopoly power, including, but not limited to, knowingly and willfully failing to disclose honeycomb scrubbers and prior art canister systems ████████████████████ ████████████████████ both to the PTO during the prosecution of the '844 patent and to the PTAB in response to BASF's Petition for IPR, Answer ¶¶ 8–53; Countercl. ¶¶ 57–70; asserting its invalid patent rights through the instant infringement action against BASF, Countercl. ¶ 72, the pending infringement action against MAHLE Filter Systems North America, Inc. ("MAHLE"), id. ¶ 73, an ITC complaint seeking to exclude imports of competing carbon products manufactured by MAHLE, Kuraray Co., Ltd. and Calgon Carbon Corporation (collectively, "Kuraray"), and Nagamine Manufacturing Co., Ltd. ("Nagamine"), id. ¶ 74, and ████████████████████████████████████████████████████ ████████████████████, id. ¶ 75; and using exclusive long-term supply agreements and coercive ████████████, id. ¶¶ 30–56.

---

[1]     The Meiller patent was obtained by the Delphi inventors ██████████████████ ███████.

## LEGAL STANDARDS

### A.      Standard for Amending Pleadings

A party seeking to amend after a pleading deadline imposed by a scheduling order has passed must, as a threshold matter, show "good cause" to modify the deadlines.  FED. R. CIV. P. 16(b)(4); *Sonos, Inc. v. D&M Holdings Inc.*, No. 14-1330-RGA, 2017 WL 476279, at *1 (D. Del. Feb. 3, 2017) (Andrews, J.); *see also E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000).  Good cause is found when, despite diligence on the part of the party seeking to amend, the deadline in the scheduling order "cannot reasonably be met."  FED. R. CIV. P. 16 Advisory Committee's Notes (1983 amendments).  Courts have thus declined to find good cause "when a party was aware of the facts that would lead it to amend and failed to act on [them]." *GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, No. 14-877-LPS-CJB, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016) (citation and internal quotation marks omitted).  Upon a finding of good cause, a court proceeds to analyze whether granting the movant leave to amend would unduly prejudice the nonmoving party and whether the movant's amendments are futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason— such as . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"); *see also* Fed. R. Civ. P. 15(a).

### B.      Inequitable Conduct

"Parties and individuals involved in [an IPR] have a duty of candor and good faith to the Office during the course of a proceeding." 37 C.F.R. § 42.11; *see also* 37 C.F.R. § 1.56. Violation of this duty—whether by making material misrepresentations to the PTO, withholding important information from the PTO, or engaging in "egregious misconduct"—gives rise to

"inequitable conduct."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).  "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO."  *Therasense*, 649 F.3d at 1287.  When the patentee engages in "egregious misconduct" before the PTO, the misconduct is necessarily material.  *Id.* at 1292; *see also Apotex, Inc. v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014).  Allegations of inequitable conduct must be pleaded with particularity under Fed. R. Civ. P. 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).

**ARGUMENT**

**I.      BASF'S MOTION IS TIMELY.**

BASF did not delay in seeking leave to amend, and it seeks to amend its First Amended Answer and Counterclaims in good faith.  BASF's diligence in pursuing its inequitable conduct defense is sufficient to show good cause to amend its First Amended Answer and Counterclaims. *See Sonos*, 2017 WL 476279, at *2 ("To show good cause, Defendants must show diligence in pursuing their inequitable conduct defense prior to the deadline for amendments . . . .").

When BASF filed its First Amended Answer and Counterclaims on February 14, 2019, it did not yet have access to information showing that Ingevity had committed inequitable conduct by making false and misleading statements to the PTO during prosecution of the '844 patent regarding the state of art as of the '844 patent's priority date of November 21, 2001, including, but not limited to:

- Documentation that,  Answer ¶¶ 10–12;

- Documentation that ████████████████████████████████████
  ████████████████████████████████████, *id.* ¶¶ 13–20; and

- Documentation showing that ████████████████████████████
  ████████████████████████████████████ *id.* ¶¶ 21–23.

Coincidentally, on the same day that BASF filed its First Amended Answer and Counterclaims, Ingevity and its counsel again misrepresented "industry wisdom" and the state of the art as of the '844 patent's priority date in their opposition to BASF's Petition for IPR before the PTAB, *id.* ¶¶ 40–45. Following Ingevity's counsel's misstatements to the PTAB, the PTAB declined to institute IPR. BASF sought to amend its First Amended Answer and Counterclaims as soon as practicable after gaining access to the materials, and having evaluated said evidence of Ingevity's inequitable conduct and additional violations of the federal antitrust laws.

BASF served ████ with third-party subpoenas on March 8, 2019, more than seven weeks before the Court-ordered deadline of April 30, 2019 for the amendment of pleadings, (D.I. No. 69; D.I. No. 41). ████ did not produce documents until May 6, May 28, and June 6, 2019. BASF reviewed ████ productions and worked with ████ counsel to ensure the completeness of the productions. In the weeks since first discovering evidence suggesting inequitable conduct, BASF continued to "act[] diligently in pursuing the inequitable conduct claim and in discovering facts necessary to plead it with particularity." *Leader Techs., Inc. v. Facebook, Inc.*, No. 08-862-LPS, 2010 WL 2545959, at *5 (D. Del. June 24, 2010). Indeed, because "allegations of inequitable conduct are serious," courts do not expect defendants to plead the defense immediately upon first discovery but, rather, to validate the evidence and "fully synthesize the information available to it before filing a motion to amend." *Eisai Co. v. Teva Pharm. USA, Inc.*, 247 F.R.D. 445, 449 (D.N.J. 2007); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 372 (D. Del. 2009) (granting leave where plaintiff was "pleading new legal theories

based on additional information which was recently provided" and "filed its amendment shortly after it was able to satisfy the [applicable] pleading requirements").

In sum, it was not until ████ produced documents proving that inequitable conduct occurred and continued to occur during the IPR that BASF had sufficient factual basis to plead the inequitable defense as well as the *Walker Process* and sham litigation Counterclaims with the requisite levels of particularity.   Following these revelations, BASF did not delay in seeking leave to amend.  *See Probert v. The Clorox Co.*, 258 F.R.D. 491, 494 (D. Utah 2009) (holding that "Defendant did not unduly delay" where "it had suspicions about inequitable conduct" but "appropriately waited" until further discovery to seek leave to amend).   Moreover, BASF's proposed *Walker Process* fraud and sham litigation Counterclaims are based on the facts giving rise to BASF's inequitable conduct defense, facts that did not exist—and were not known to BASF—when BASF filed its First Amended Answer and Counterclaims on February 14, 2019. *See, e.g.*, *Leader Techs.*, 2010 WL 2545959, at *4 (finding that the movant demonstrated good cause to amend its answer to add a counterclaim for unenforceability, where the counterclaim was "based on a new set of facts which could not be adequately confirmed prior to the Scheduling Order's deadline for amended pleadings").   Therefore, BASF's Motion is timely.

## II.   INGEVITY WILL NOT BE UNDULY PREJUDICED BY BASF'S PROPOSED AMENDMENTS.

Ingevity will not be unduly prejudiced by BASF's proposed Affirmative Defense and Counterclaims.   Indeed, Ingevity has not claimed prejudice as a reason not to consent to this motion. Ex. 1.  Ingevity bears the burden of proving that actual prejudice would result if BASF were granted leave to amend.  *See Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989); *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00–1020–GMS, 2002 WL 598457, at *2 (D. Del. Apr. 18, 2002).  However, because more than four months remain before fact discovery concludes,

Ingevity will have ample opportunity to present facts or evidence related to BASF's proposed Affirmative Defense and Counterclaims.  Indeed, Ingevity proposed the very timeline formalized by the Scheduling Order entered by the Court on November 16, 2018, (D.I. 41), which sets forth a protracted discovery period and a trial start date of September 14, 2020, at the earliest. Ingevity has not yet undertaken any discovery in response to the First Amended Answer and Counterclaims, choosing motion practice instead.  That motion is pending (D.I. 71).

Prejudice, moreover, "must be *substantial* in order for the Court to justify denying leave to amend." *Chrimar Sys. Inc v. Cisco Sys. Inc*, No. 13-CV-01300-JSW, 2016 WL 1623922, at *3 (N.D. Cal. Apr. 21, 2016) (emphasis added) (granting leave to amend to assert inequitable conduct based even though fact discovery had already closed, and summary judgment briefs were due in a week, as the patentee failed to show substantial prejudice since it did not have a need for additional discovery).  Indeed, to establish prejudice, Ingevity "must do more than merely claim prejudice; it must show that it [would be] unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been [provided earlier]." *Cordance Corp.*, 255 F.R.D. at 371.

Accordingly, Ingevity cannot show that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that could have been presented had the amendments been made earlier.  *See Helios Software, LLC v. Awareness Techs., Inc.*, No. 11-1259-LPS, 2013 WL 6773658, at *2 (D. Del. Dec. 19, 2013) (holding that plaintiff would not be unduly prejudiced where trial was at least several months away).  If anything, BASF would suffer prejudice by not being able to present a significant unenforceability defense that has arisen recently against the patent asserted in this case.  *See Gaymar Indus. Inc. v. Cincinnati Sub-Zero Prods., Inc.*, No. 08-CV-299S, 2012 WL 176500, at *6 (W.D.N.Y. Jan. 20, 2012) ("[W]hatever

prejudice [plaintiff] may suffer in the form of continued litigation—litigation that, it should be noted, was initiated by [plaintiff]—does not overcome the interests in justice allowing [defendant] to plead and argue its counterclaim on the merits.").

### III.     BASF'S AMENDMENTS WILL NOT BE FUTILE.

Ingevity's decision to withhold evidence directly contradicting its arguments during prosecution of the '844 patent and in the IPRs is egregious and constitutes textbook inequitable conduct.  BASF's Motion for leave to assert an inequitable conduct defense and the two new Counterclaims is supported by good cause: BASF's allegations of inequitable conduct, *Walker Process* fraud, and sham litigation meet the pleading requirements under Rule 9(b).  Ingevity should not be permitted to assert its patent against BASF, seeking substantial damages and injunctive relief, without BASF being able to defend itself by advancing its inequitable conduct defense based on recent discovery from ███ that shows Ingevity's continuing misconduct with respect to the '844 patent.

Further, Ingevity's inequitable conduct before the PTO and PTAB, as well as the assertion of its invalid patent rights through the instant infringement action, the pending infringement action against MAHLE, the ITC complaint against MAHLE, Kuraray, and Nagamine, and ████████████████, among other actions, constitute violations of the federal antitrust laws.

### A.     BASF's Inequitable Conduct Allegations Satisfy the Pleading Requirements of Rule 9(b) of the Federal Rules of Civil Procedure and, Therefore, Are Not Futile

To assess futility of an amended pleading, a court applies the same legal standard as a motion to dismiss for failure to state a claim.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  "Only where it is clear to the court . . . that a claim has *no* possibility of succeeding on the merits, will the court disallow it by denying leave to amend."  *Roquette Freres v. SPI Pharma*,

*Inc.*, No. 06-540-GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009) (omission and emphasis in original) (quoting *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 736 (D. Del. 2002)).

BASF's proposed Second Amended Answer (attached hereto as <u>Exhibit A</u>) alleges facts that, if proved, clearly make out a claim of inequitable conduct—thus, the amended pleading satisfies Rule 9(b) and is not futile. BASF alleges facts identifying "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. BASF's allegations set out that:

- Ingevity, Roger Williams, and Ingevity's counsel in the IPRs, who are also counsel in the present litigation, knew that

- Ingevity, Roger Williams, and Ingevity's counsel in the IPRs knew that the

;

- Ingevity, Roger Williams, and Ingevity's counsel in the IPRs failed on multiple occasions during prosecution of the '844 patent and in the IPR of the '844 patent to inform the PTO that ;

- Not only did Ingevity, Roger Williams, and Ingevity's counsel withhold this material information with the intent to deceive the PTO but Ingevity, Roger Williams, and Ingevity's counsel actively misled the PTO about the state of the art at the time of filing of the patent application and about "industry wisdom" as of the '844 patent's November 21, 2001 priority date; and

- the PTO relied on Ingevity, Roger Williams, and Ingevity's counsel's omissions and misrepresentations in allowing the '844 patent to issue and in declining to institute IPR, such that the '844 patent would not have issued and the PTO would not have declined to institute IPR if the PTO had been aware of the facts outlined in the ▮ documents.

Because each of the above elements is set forth in BASF's proposed Second Amended Answer in detail and properly pleads inequitable conduct, BASF's proposed pleading satisfies the

Rule 9(b) standard. *See SunPower Corp. v. PanelClaw, Inc.*, No. 12-1633-MPT, 2016 WL 5107029, at *12 (D. Del. Sept. 19, 2016) ("The court determines defendant's proposed amendment is not futile as it adequately pleads knowledge of the [] prior art and the facts supporting an inference of that knowledge and an intent to deceive the PTO by withholding that material information.").

## 1.      Ingevity's Misconduct Was Material to the PTO's Decisions

BASF's Second Amended Answer details how Ingevity's misrepresentations were material to PTO's decisions to issue the '844 patent and to later deny IPR.  In a notice of allowance for the '844 patent, the examiner wrote that "[t]he closest prior art discloses evaporative emission prevention systems comprising different sorbents for reducing diurnal breathing but fails to suggest using sorbents having the butane working capacities specified above,"—a statement that was directly contradicted by the ███████████████████. Therefore, the '844 patent would not have issued absent Ingevity's material omissions and misrepresentations.  Additionally, in declining to institute IPR, the PTAB wrote that "BASF has not shown that an IAC below 35 g/L would have been anything other than one possible result from combining Meiller and Park to create a staged system for reducing DBL emissions." Contrary to the PTAB's conclusion, ████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████       Therefore, the PTAB would have instituted IPR but for Ingevity's material omissions and misrepresentations.

Further, although but-for materiality generally must be established to satisfy the materiality element, "egregious misconduct" serves as an independent basis to find materiality even if the "but-for" test is not met. *Therasense*, 649 F.3d at 1292 ("[W]hen the patentee has engaged in affirmative acts of egregious misconduct, . . . the misconduct is material.").

Ingevity's continued shielding of the PTO from the material facts of ████████████ ████████████████, as well as Ingevity's continued misrepresentations to the PTO about "industry wisdom" as of the '844 patent's November 21, 2001 priority date is the kind of "egregious misconduct" that the case law seeks to prevent.  Ingevity's actions thus satisfy the "materiality" requirement for inequitable conduct under both the "but for" test and the egregious misconduct test of *Therasense*.

## 2.        Ingevity Had the Knowledge and Intent to Deceive the PTO

A pleading claiming inequitable conduct must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327.  Given the nature of the allegation, "[i]ntent rarely can be, and need not be, proven by direct evidence. Instead, an intent to deceive is usually inferred from the facts and circumstances surrounding the conduct at issue." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir. 2007).  Here, BASF has met the pleading standard by pleading facts from which the Court may infer that Ingevity, Williams, and Ingevity's counsel in the IPRs knew of ██████████████████████████████████████████████ and deliberately kept the facts from the PTO as well as misrepresented facts related thereto, in order to obtain the '844 patent and, later, argue for the validity of the '844 patent.  *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011).

As set out in the proposed Second Amended Answer, Williams knew, but failed to disclose to the PTO, that ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████, and knew, but failed to disclose

to the PTO, that ████████████████ satisfied every limitation of the '844 patent claims, including the "subsequent" adsorbent volume with an IAC below 35 g/L.  Further, the fact that the same counsel represented Ingevity in the IPRs and in the present litigation permits the Court to infer that Ingevity and its counsel in the IPRs knew of Williams's knowledge, ████████████████████████████████████████████████, and invalidating prior art.

The facts BASF has pleaded regarding the conduct of Ingevity and its counsel also permit the Court to infer that Ingevity acted with intent to deceive the PTO.  These failures by Ingevity and its counsel during prosecution of the '844 patent and the IPR constitute a pattern of conduct from which the Court can infer an intent to deceive the PTO—indeed, it is the most reasonable inference to draw.  *See Exergen*, 575 F.3d at 1329 n.5.  Ingevity's pattern of conduct provides a factual basis for the Court to "reasonably infer that [Ingevity] made a deliberate decision to deceive the PTO."  *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955-LPS-CJB, 2012 WL 600715, at *7 (D. Del. Feb. 3, 2012).

### B.     BASF's Unclean Hands Defense Is Sufficient

For the same reasons as above, BASF has good cause to amend its answer with respect to the defense of unclean hands, which is based on the same underlying conduct as the defense of inequitable conduct.  *France Telecom S.A. v. Novell, Inc.*, No. 102-437-GMS, 2002 WL 31355255, at *4 (D. Del. Oct. 17, 2002) (recognizing that the defenses of inequitable conduct and unclean hands "may well rest on the same facts" but that the two defenses "are not necessarily identical").  Moreover, BASF's First Amended Answer and Counterclaims already asserts the defense of unclean hands.  *See* BASF's First Amended Answer and Counterclaims (D.I. 65), Seventh Affirmative Defense.  Thus, the proposed Amended Answer does not add a new defense but simply provides additional details underlying an existing defense.  *See Council*

*on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 324 (D.D.C. 2011) (granting leave to amend pleadings with additional "factual allegations [that] merely fine-tune" the claims already asserted). It is therefore proper and timely.

### C.      BASF's *Walker Process* and Sham Litigation Counterclaims Are Sufficient

Because BASF's proposed Second Amended Answer pleads facts that, if proved, satisfy the requisite Rule 9(b) pleading standard applicable to its *Walker Process* and sham litigation Counterclaims, the proposed Counterclaims are not futile.  Generally, a party who petitions the government for redress is immune from antitrust liability.  *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).  However, a patent owner cannot invoke *Noerr-Pennington* immunity, and may be subject to liability under Section 2 of the Sherman Act, where: (1) an accused infringer demonstrates that the asserted patent was procured through "knowing and willful fraud," *Walker Process Equip. v. Good Mach. & Chem. Corp.*, 382 U.S. 172 (1965) ("*Walker Process* fraud"); or (2) an accused infringer proves that the lawsuit was a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor," *Noerr*, 365 U.S. at 144.  To establish a *Walker Process* fraud claim, an accused infringer must show: "(1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation."  *See Teva Pharms. USA, Inc. v. Abbott Labs.*, 580 F. Supp. 2d 345, 362 (D. Del. 2008) (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069–70 (Fed. Cir. 1998)).  Specifically, the accused infringer must plead facts

that satisfy the Rule 9(b) particularity requirement. *See MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007).

Here, as set forth in Section 3.A, BASF's proposed Second Amended Answer alleges detailed facts obtained from ███ through discovery identifying "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. Accordingly, BASF pleads facts with sufficient particularity to assert that Ingevity misrepresented information to the PTO that underlie the *Walker Process* Counterclaim. *Contra Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.) Inc.*, 629 F. Supp. 864, 870–71 (S.D.N.Y. 1986) (finding that a conclusory assertion that the patentee withheld "relevant and material information about pertinent prior art affecting the patentability and validity of Letters Patent, and . . . knowingly and willfully presented false and/or misleading arguments and materials . . . and in doing so perpetrated a fraud on [the PTO]" failed to satisfy Rule 9(b) (internal quotation marks omitted)). And, finally, BASF's First Amended Answer and Counterclaims adequately pleaded all of the necessary elements of a monopolization claim— namely, that not only does Ingevity hold monopoly power in (and a near 100% market share) of the market for carbon adsorbents for LEV III/Tier 3-compliant fuel vapor canisters in the United States and Canada, Second Am. Answer & Countercl. ¶ 71–82, Ingevity has also aggressively pursued a multi-step strategy to obtain and maintain that monopoly power by engaging in inequitable conduct; asserting its invalid patent rights against BASF in the instant action, Countercl. ¶ 72, and against MAHLE in a pending action, *id.* ¶ 73; filing an ITC complaint seeking to exclude imports of competing carbon products, *id.* ¶ 74; ███████████████████

███████████████████████████████, *id.*

¶ 75; and enforcing exclusive long-term supply agreements and ███████████████, *id.*

¶¶ 30–56.  Therefore, BASF's proposed *Walker Process* Counterclaim is not futile.

Similarly, the Second Amended Complaint properly alleges the sham litigation Counterclaim. The "sham litigation" exception to *Noerr-Pennington* immunity applies if an accused infringer satisfies both the objective and subjective portions of the two-part test: (1) the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) the accused infringer proves, by clear and convincing evidence, that the patent owner's activities were not truly efforts to vindicate its rights in court but rather an "attempt to interfere directly with the business relationships of a competitor." *See Teva Pharms.*, 580 F. Supp. 2d at 361–62 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61) (internal quotation marks omitted).  Ingevity could not have reasonably expected success on the merits when it filed the instant infringement action against BASF because, at the time of filing, Ingevity was already aware of prior art in the form of ██████ evaporative emissions control system.  Additionally, Ingevity's intent to directly interfere  with BASF's business relationships is amply demonstrated by its conduct to lock BASF's customers into exclusive, long-term purchase and ███████████, improperly threaten litigation against BASF's customers, and engage in other acts intended to coerce and intimidate customers into doing business with Ingevity and not with BASF.

In sum, BASF's proposed inequitable conduct defense, *Walker Process* Counterclaim, and sham litigation Counterclaim plead facts sufficient to satisfy the Rule 9(b) particularity requirement and, therefore, are not futile.

## **CONCLUSION**

For all of the foregoing reasons, BASF respectfully requests that the Court grant BASF leave to amend its First Amended Answer and Counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
araucci@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Thomas J. Friel, Jr.
KING & SPALDING LLP
601 California Street, Suite 100
Palo Alto, CA  94304
(650) 422-6700

James P. Brogan
Brian Eutermoser
Angela Tarasi
Kevin Lake
Mikaela Stone
KING & SPALDING LLP
1515 Wynkoop Street, Suite 800
Denver, CO  80202
(720) 535-2300

Bobby R. Burchfield
Norman Armstrong, Jr.
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC  20006
(202) 737-0500

July 23, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 23, 2019, upon the following in the manner indicated:

John W. Shaw, Esquire                                       *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Jeffrey T. Thomas, Esquire                                  *VIA ELECTRONIC MAIL*
Taylor W. King, Esquire
Rustin K. Mangum, Esquire
Spencer W. Ririe, Esquire
Eric T. Syu, Esquire
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612
*Attorneys for Plaintiffs*

Brian M. Buroker, Esquire                                   *VIA ELECTRONIC MAIL*
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
*Attorneys for Plaintiffs*


                                         */s/ Anthony D. Raucci*
                                         _____
                                         Anthony D. Raucci (#5948)