IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INGEVITY CORPORATION, and<br>INGEVITY SOUTH CAROLINA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BASF CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REDACTED- PUBLIC VERSION**

C.A. No. 18-1391-RGA

████████████

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY

Karen E. Keller (No. 4489)
John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
Jeffrey T. Thomas
Taylor W. King
Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
(949) 451-3800

Brian M. Buroker
Omar F. Amin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5300

Rustin K. Mangum
Spencer W. Ririe
MANGUM RIRIE LLP
999 Corporate Dr. #260
Ladera Ranch, CA 92694
(949) 298-5590

Dated: June 24, 2020

## TABLE OF CONTENTS

Page

I.      BASF'S OPPOSITION FAILS TO PRECLUDE SUMMARY JUDGMENT ................. 1

    A.      BASF Identifies No Legal or Factual Basis to Avoid Summary Judgment on its Patent Misuse Affirmative Defense ............................................................ 1

        1.      BASF Has Identified No Genuine Dispute of Fact to Overcome Summary Judgment on its Tying Theory of Misuse .................................. 1

            a)      Ingevity Has Not Improperly Tied Licenses to Purchases of its FVC Honeycomb Products ............................................................. 1

            b)      BASF Cannot Show Misuse Relating to Base Carbon Products .... 4

        2.      BASF's Exclusive Dealing Theory Fails as a Matter of Law .................... 7

        3.      BASF's Exhaustion Theory of Patent Misuse Misrepresents *Quanta* ..................................................................................................... 9

    B.      BASF's Waiver, Implied Waiver, Equitable Estoppel and Unclean Hands Defenses Should be Dismissed on Summary Judgment ...................................... 10

    C.      Judgment Should Be Entered Against BASF On Its Enablement Defense .......... 10

    D.      BASF Does Not Dispute that EvapTrap XC Has No Actual Substantial Non-Infringing Uses ....................................................................................... 15

II.     THE IDENTIFIED EXPERT TESTIMONY SHOULD BE EXCLUDED ..................... 16

    A.      Dr. Mathur Should Be Precluded from Offering Opinions on Patent Misuse ............................................................................................................ 16

        1.      Dr. Mathur Offered No Opinion on Patent Misuse, and Should Not Be Permitted to Do So for the First Time at Trial .................................... 16

        2.      The Court Should Preclude Dr. Mathur From Testifying on Theories for Which She Offered No Opinions or Analysis ..................... 17

    B.      The Court Should Preclude Certain Testimony of Mr. Lyons Under *Daubert* ......................................................................................................... 18

        1.      The Court Should Preclude Mr. Lyons's Testimony on Topics For Which He Has No Expertise, Including Commercial Offers For Sale ........................................................................................................... 18

        2.      The Court Should Preclude Mr. Lyons's Testimony Applying Incorrect Legal Standards ....................................................................... 18

III.    CONCLUSION ....................................................................................................... 20

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Andersen Corp. v. Fiber Composites, LLC*,
474 F.3d 1361 (Fed. Cir. 2007)..................................................................................15

*Automotive Techs. Int'l Inc. v. BMW of N.A., Inc.*,
501 F.3d 1274 (Fed. Cir. 2007)..................................................................................13

*Bayer Healthcare LLC v. Baxalta Inc.*,
407 F. Supp. 3d 462 (D. Del. Aug. 23, 2019)...........................................................12

*Bowman v. Monsanto Co.*,
569 U.S. 278 (2013)......................................................................................................9

*Brulotte v. Thys Co.*,
379 U.S. 29 (1964)........................................................................................................7

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)....................................................................................7

*Cardsoft, LLC v. VeriFone, Inc.*,
807 F.3d 1346 (Fed. Cir. 2015)....................................................................................9

*In re ChanBond, LLC Patent Litig.*,
No. CV 15-842-RGA, 2019 WL 6910284 (D. Del. Dec. 19, 2019).........................17

*Chiron Corp v. Genentech, Inc.*,
363 F.3d 1247 (Fed. Cir. 2004)..................................................................................14

*Dawson Chem. Co. v. Rohm & Haas Co.*,
448 U.S. 176 (1980)......................................................................................................2

*Dennison Mfg. Co. v. Ben Clements & Sons, Inc.*,
467 F. Supp. 391 (S.D.N.Y. 1979)..............................................................................3

*Dow Chem. Canada Inc. v. HRD Corp.*,
909 F. Supp. 2d 340 (D. Del. 2012).............................................................................6

*Durel Corp. v. Osram Sylvania Inc.*,
256 F.3d 1298 (Fed. Cir. 2001)............................................................................13, 14

*In re Facius*,
408 F.2d 1396 (C.C.P.A. 1969) ...........................................................................18, 19

*Ferring B.V. v. Barr Labs., Inc.*,
437 F.3d 1181 (Fed. Cir. 2006)....................................................................................6

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
    438 F.3d 1354 (Fed. Cir. 2006)........................................................................2, 15

*Hodosh v. Block Drug Co.*,
    833 F.2d 1575 (Fed. Cir. 1987)...........................................................................1

*Hoffmann-La Roche Inc. v. Promega Corp.*,
    1994 WL 761241 (N.D. Cal. June 13, 1994) ....................................................3, 16

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)............................................................................3, 16

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
    137 S.Ct. 1523 (2017) ........................................................................................9

*Inline Connection Corp. v. AOL Time Warner Inc.*,
    2007 WL 275928 (D. Del. Jan. 29, 2007)..........................................................19, 20

*Inline Connection Corp. v. EarthLink, Inc.*,
    684 F. Supp. 2d 496 (D. Del. 2010) ...................................................................13, 14

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005)..........................................................................18

*Invitrogen Corp. v. Clontech Labs. Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005)..........................................................................14

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984)...............................................................................................4

*Kimble v. Marvel Entertainment, LLC*,
    135 S. Ct. 2401 (2015)........................................................................................7

*MagSil Corp. v. Hitachi Global Storage Techs., Inc.*,
    687 F.3d 1377 (Fed. Cir. 2012)..........................................................................12

*Mendenhall v. Astec Indus., Inc.*,
    1988 WL 188449 (E.D. Tenn. Oct. 31, 1988) ...................................................3

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001)..........................................................................15

*Nevro Corp. v. Stimwave Techs., Inc.*,
    No. CV 19-325-CFC, 2019 WL 3322368 (D. Del. July 24, 2019)....................11

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998).............................................................................................20

**TABLE OF AUTHORITIES** (*continued*)

<u>Page(s)</u>

*PolyVision Corp. v. Smart Techs. Inc.*,
   501 F. Supp. 2d 1068 (W.D. Mich. 2007) ............................................................................15

*Princo v. ITC*,
   616 F.3d 1318 (Fed. Cir. 2010)..................................................................................6, 7, 8

*Promega Corp. v. Life Techs. Corp.*,
   773 F.3d 1338 (Fed. Cir. 2014)........................................................................................13

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
   553 U.S. 617 (2008)........................................................................................................9, 10

*Szubielski v. Pierce*,
   2018 WL 456873 (D. Del. Jan. 17, 2018)........................................................................8, 9

*Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*,
   623 F. Supp. 2d 518 (D. Del. 2009)..................................................................................17

*U.S. Philips Corp. v. ITC*,
   424 F.3d 1179 (Fed. Cir. 2005)..........................................................................................4

*United States v. Univis Lens Co.*,
   316 U.S. 241 (1942)............................................................................................................9

*Virginia Panel Corp. v. MAC Panel Co.*,
   1996 WL 335381 (W.D. Va. May 29, 1996), *rev'd on other grounds*, 133 F.3d
   860 (Fed. Cir. 1997)......................................................................................................6, 7, 8

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009)........................................................................................15

*WesternGeco LLC v. ION Geophysical Corp.*,
   876 F. Supp. 2d 857 (S.D. Tex. 2012) ...............................................................................3

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ......................................................................................................17

Fed. R. Evid. 402 .....................................................................................................................19

Fed. R. Evid. 702 ..........................................................................................................17, 18, 19, 20

# I.    BASF'S OPPOSITION FAILS TO PRECLUDE SUMMARY JUDGMENT

## A.    BASF Identifies No Legal or Factual Basis to Avoid Summary Judgment on its Patent Misuse Affirmative Defense

### 1.    BASF Has Identified No Genuine Dispute of Fact to Overcome Summary Judgment on its Tying Theory of Misuse

Faced with Ingevity's motion demonstrating that BASF's theories are legally unfounded or unsupported by evidence, BASF improperly pivots to new arguments and facts that, even if considered, fail to raise a genuine dispute of material fact to preclude summary judgment.

#### a)    Ingevity Has Not Improperly Tied Licenses to Purchases of its FVC Honeycomb Products

BASF failed to identify any triable issue of fact that prevents the Court from granting summary judgment on BASF's tying theory of misuse relating to FVC Honeycombs.

First, despite BASF's complaint that Ingevity used the term "fuel vapor canister honeycombs" ("FVC Honeycombs") to explain its business, BASF cannot show, regardless of the terms used, that Ingevity has ever tied a license to the '844 Patent to the purchase of a non-FVC Honeycomb. BASF failed to challenge Ingevity's statements of undisputed fact (D.I. 293 at 2 (SUF 2-3)), provide a contrary statement of disputed fact, or otherwise identify *any evidence* that Ingevity has required customers to purchase non-FVC Honeycombs to obtain a license to the '844 Patent. The staple/nonstaple inquiry for patent misuse must focus on the actual product that was allegedly tied. *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987) (explaining that the court needed to analyze "the material actually sold by the accused and the uses made of it by its purchasers"). Evidence regarding non-FVC Honeycombs is thus irrelevant.

Hoping to avoid summary judgment, BASF relies for the first time on new evidence it never identified during discovery: erroneous entries in a spreadsheet BASF alleges show that FVC Honeycombs were sold for air intake uses in limited quantities to ███████████

1

███████████████ [1] D.I. 305 at 8. These new contentions cannot overcome BASF's own expert's admission that the "only reasonable and intended use" of FVC Honeycombs is in fuel vapor canisters (D.I. 293 at 2 (SUF 4)). Even if these erroneous entries are considered, BASF fails to identify any evidence that these FVC Honeycombs were ever actually used in air intake systems or that ███████████████████ ever manufactured air intake systems. A "staple" article for purposes of patent misuse is one that would not meet the contributory infringement test under 35 U.S.C. § 271(c). *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 186 n.6 (1980). But BASF fails to present any evidence that the products were "actually used in a non-infringing way." [2] *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363-64 (Fed. Cir. 2006). BASF's expert does not even opine that Ingevity's FVC Honeycombs have been—or could be—used in air intake systems. Ex. C1 (Lyons Opening Rep.) ¶¶ 718-733. No reasonable fact finder could find for BASF on this record under the correct legal standard.

Second, even if the erroneous spreadsheet entries were considered correct for purposes of this motion, no reasonable fact finder could conclude that these uses of FVC Honeycombs— ████ of Ingevity's FVC Honeycomb sales from █████████████ [3]—constitute substantial

---

[1] In interrogatory responses and invalidity contentions addressing the argument that Ingevity's honeycombs are staple products, which BASF must prove to show that Ingevity's alleged tying qualifies as patent misuse, BASF focused on the uses of non-FVC Honeycombs and never identified alleged uses of FVC Honeycombs for air intake applications. Ex. C2 at 19-24; Ex. C3 at 86-89. Such new evidence should not be considered for summary judgment purposes because Ingevity was not able to address this alleged evidence during fact or expert discovery, but in any case, the information BASF cites is from data entry errors. Ex. C4 (Woodcock Decl. (6/23/20)).
[2] BASF deposed ████ yet obtained no evidence that ████ manufactures air intake systems or has ever used a FVC Honeycomb in an air intake system.
[3] Ex. C5 (highlighting added) shows sales volumes to ███████████ in ███ and ███ for alleged air intake systems. Ex. C6 shows the total sales volume of FVC Honeycombs in ███ and ███. Ex. C7 shows sales volumes to ███████████ in ███ and ███ for alleged air intake systems. Ex. C8 shows total sales volume of FVC Honeycombs in ███ and ███. Exs. C9 and C10 show total sales volumes of FVC Honeycombs in ████████. Elementary math shows BASF is arguing about less than ████ of Ingevity's ████████ sales.

noninfringing uses under § 271(c). BASF's new evidence fails to show uses that are not "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010). "Such occasional aberrant use of a product that is clearly designed to be used in a particular manner" cannot qualify as a substantial noninfringing use to render FVC Honeycombs a staple article. *Dennison Mfg. Co. v. Ben Clements & Sons, Inc.*, 467 F. Supp. 391, 428 (S.D.N.Y. 1979); *Hoffmann-La Roche Inc. v. Promega Corp.*, 1994 WL 761241, at *11 (N.D. Cal. June 13, 1994) ("[O]ccasional aberrant use of a product does not make that use 'substantial.'"); *WesternGeco LLC v. ION Geophysical Corp.*, 876 F. Supp. 2d 857, 903-04 (S.D. Tex. 2012) (evidence of one noninfringing use did not demonstrate substantial noninfringing use); *Mendenhall v. Astec Indus., Inc.*, 1988 WL 188449, at *59 (E.D. Tenn. Oct. 31, 1988) (evidence of three instances of noninfringing use was "not substantial"). Because no reasonable fact finder could find on this record that FVC Honeycombs have substantial noninfringing uses, summary judgment is warranted.

Finally, BASF asserts that Ingevity's FVC Honeycombs are not essential to the '844 Patent's advance over the prior art.[4] But it is undisputed that the '844 Patent's advance over the prior art is the addition of a low-IAC adsorbent in combination with a high-IAC adsorbent that was already used in prior art canisters—without the low-IAC adsorbent, a canister would only include a high-IAC adsorbent, which is the prior art canister identified in the Patent. Ex. C11 at 1:58-2:33; 3:43-4:63. Ingevity's FVC Honeycombs are one commercial embodiment of these

---

[4] This is another new position for BASF. BASF contends that Ingevity's opening brief did not address this issue. D.I. 305 at 9. But BASF bears the burden on patent misuse and never asserted that Ingevity's FVC Honeycombs are not essential to the Patent's advance over the prior art (Ex. C2 at 19-24; Ex. C3 at 86-89), nor did BASF raise such an argument in addressing *Rohm & Haas* in opposition to Ingevity's motion to dismiss (D.I. 81 at 15-18). This issue was never in dispute until BASF's opposition brief raised it.

low-IAC adsorbents whose use in fuel vapor canisters forms the Patent's advance over the prior art. D.I. 309 at 28-29. BASF identified no alternative evidence or theory for any other potential advance over the prior art for the Patent, so there is no genuine dispute of fact.

       **b)**       **BASF Cannot Show Misuse Relating to Base Carbon Products**

BASF did not preserve a tying claim regarding Ingevity's base carbon products. But even if the Court considers this argument, summary judgment is warranted.

BASF alleges that Ingevity began "unlawful tying arrangements" relating to base carbon products "[a]s early as 2010." The law is clear that a tying arrangement "cannot exist unless two separate product markets have been linked." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984). Here, BASF's tying theory relies on a "tying product" that BASF identifies specifically as "technologies to meet current bleed emissions standards … referred to as 'LEV III/Tier 3.'" D.I. 290 at 25. But LEV III and Tier 3 standards did not exist in 2010; the only standards that existed in 2010 were LEV II and Tier 2 standards, which are not part of BASF's tying claim. *See* Ex. C2 at 19-24; Ex. C3 at 86-89. BASF's own expert admitted that LEV III/Tier 3 standards were not required until 2018 and 2017, respectively. Ex. C12 ¶ 16. Despite this admission, BASF provides no argument or evidence addressing when the LEV III/Tier 3 "technology" market allegedly started or when Ingevity allegedly gained market power in that market. *See* Ex. C2 at 19-24; Ex. C3 at 86-89. Because a Court must analyze market power at the time the alleged tying took place, *U.S. Philips Corp. v. ITC*, 424 F.3d 1179, 1186 (Fed. Cir. 2005), BASF's lack of evidence regarding a relevant tying product and market power in that tying product "[a]s early as 2010"—or at any relevant time period prior to Ingevity's change in business practices relating to base carbons—means that BASF failed to carry its burden of presenting a viable theory of misuse relating to Ingevity's past conduct relating to base carbon products, and summary judgment for Ingevity is warranted.

BASF also has failed to identify any genuine dispute of material fact that Ingevity has purged the alleged misuse.[5] BASF does not rebut Mr. Woodcock's testimony relating to Ingevity's change in business practices in late 2018 (or early 2019 at the latest) with any evidence. D.I. 305 at 3-4; Ex. C13 (Woodcock Tr. (12/2/19)) at 23:9-12, 25:5-10; D.I. 63. Mr. Woodcock also testified that ███████████████████████████████████ ████████████████████████████████████████████████ Ex. C13 at 39:14-20. Again, BASF presented no evidence to rebut that fact, relying instead on attorney argument. D.I. 305 at 4. Indeed, Ingevity's customers ██████████████████████████████████████████ ███████████████ *E.g.*, Ex. C14 (LaBine Tr. (7/19/19)) at 209:1-213:4.

Faced with a lack of evidence regarding Ingevity's purge of any potential misuse, BASF reaches for yet another new argument—that the KFTC and MAHLE license agreements are ████ ██████████████████████████[6] D.I. 305 at 4. But Ingevity entered these licenses ███ ████████████████████████████ so there is no viable tying argument regarding the licenses when signed, █████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ BASF has identified no evidence to show that Ingevity ████ ██████████████████ or that Ingevity, █████████████████████████████████ █████, ever required KFTC or MAHLE to ████████████████████████████████████ ██████████████████████ since the change in business practice—

---

[5] Given the timing of Ingevity's ██████████████████████ shortly after LEV III and Tier 3 standards were implemented, BASF has not identified any evidence to support a theory that Ingevity engaged in patent misuse at all relating to base carbon products, so summary judgment is warranted. But even if BASF had identified such evidence, any alleged misuse has been purged.

[6] BASF also raises for the first time a new argument that Ingevity allegedly cannot recover damages due to alleged tying of base carbons. Once again, that argument should not be considered for summary judgment purposes.

BASF's lack of evidence presents no triable dispute of fact. *See Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) (attorney argument is "insufficient to overcome a motion for summary judgment"). Moreover, the evidence in the record since the change in business practice is to the contrary—Ingevity reiterated to MAHLE multiple times during litigation that purchases of base carbon from Ingevity were not required (*e.g.*, Ex. C15 (NGVT0431489) at Response Nos. 91, 95; Ex. C16 (NGVT0498725) at Q/A 143-44), and Ingevity entered a supply agreement with ████████████████████████████ (Ex. C17).

Indeed, BASF presented no cognizable theory to avoid summary judgment even if it had presented evidence the licenses are being enforced as to base carbon. The license agreements provide a license ████████████████████████████ Ex. C22; Ex. C18. Nothing in the agreements ████████████████████████ ████████████████████████ so BASF's theory relies on a misreading of the licenses that fails to raise a triable issue of fact. Ex. C22; Ex. C18; *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 343 (D. Del. 2012) (contract interpretation is a legal question). If KFTC or MAHLE ████████████████████ ████████████████████████ and the Federal Circuit has been clear that a patentee is free to charge whatever royalty "the patent monopoly permits." *Princo v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010).

BASF also does not distinguish *Virginia Panel Corp. v. MAC Panel Co.*, 1996 WL 335381, at *11 (W.D. Va. May 29, 1996), *rev'd on other grounds*, 133 F.3d 860 (Fed. Cir. 1997). As in that case, BASF has no evidence to create a factual dispute as to whether Ingevity has "affirmatively ceased all conduct" allegedly constituting patent misuse for tying of base carbons, and ceasing such conduct "is the only viable affirmative step which [Ingevity] could

take under the circumstances of this case," so any potential misuse has been purged. *Id.*

## 2.     BASF's Exclusive Dealing Theory Fails as a Matter of Law

"[T]he defense of patent misuse is not available to a presumptive infringer simply

because a patentee engages in some kind of wrongful commercial conduct, even conduct that

may have anticompetitive effects." *Princo*, 616 F.3d at 1329; *C.R. Bard, Inc. v. M3 Sys., Inc.*,

157 F.3d 1340, 1373 (Fed. Cir. 1998) (patent misuse is confined to "a handful of specific

practices" and "does not include a general notion of 'wrongful' use"). BASF failed to cite any

case in which exclusive dealing constituted patent misuse. D.I. 305 at 10-13. Because exclusive

dealing is not one of the "handful of specific practices" addressed by the patent misuse doctrine,

BASF's exclusive dealing theory of misuse fails as a matter of law.

BASF's theory that Ingevity's supply agreements with Delphi, ████████████

"effectively extend[] the limited period of patent exclusivity"[7] also fails because it relies on a

misinterpretation of the standard set forth in *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), and

*Kimble v. Marvel Entertainment, LLC*, 135 S. Ct. 2401 (2015), for this type of misuse. As

explained in *Kimble*, "*Brulotte* poses no bar to business arrangements other than royalties—all

kinds of joint ventures, for example—that enable parties to share the risks and rewards of

commercializing an invention." 135 S. Ct. at 2408. BASF attempts to explain away the Supreme

Court's express statement by limiting it to joint ventures (D.I. 305 at 12), but the Court states that

this rule "poses *no bar to business arrangements other than royalties*," and joint ventures are

merely an example of a non-royalty arrangement. *Kimble*, 135 S. Ct. at 2408 (emphasis added).

BASF admits that the Delphi, ████████████████████████████████████

---

[7] BASF's Opposition combines its exclusive dealing and extension of the patent theories into one, ignoring that they are distinct theories (Ex. C3 at 86-97) and that only the extension of patent rights theory has been recognized, under certain conditions, as a valid misuse theory.

████████ D.I. 305 at 11. Because the extension of a patent right past expiration applies only to royalty agreements and not other business arrangements, such as the supply agreements at issue here, BASF's argument fails as a matter of law. Moreover, patent misuse requires that a patent "significantly contribute[] to the practice under attack" because patent misuse "will not be found when there is 'no connection' between the patent right and the misconduct in question or no 'use' of the patent." *Princo*, 616 F.3d at 1331. BASF presents no evidence that Ingevity leveraged the '844 Patent to enter into these agreements or that the '844 Patent was "used" to enter into the agreements (D.I. 305 at 10-13), so there is no triable issue of fact.

BASF attempts to avoid summary judgment by arguing that Ingevity's conduct would still need to be analyzed under the rule of reason. D.I. 305 at 13. But BASF cites no case applying a rule of reason analysis to an extension theory of misuse. BASF's position contradicts the Supreme Court's explanation that a court "need only ask whether a licensing agreement provides royalties for post-expiration use of a patent. *If not, no problem*; if so, no dice." *Kimble*, 135 S. Ct. at 2411 (emphasis added). Even if BASF had presented facts to support its allegation that Ingevity improperly extended its patent right beyond expiration, BASF has identified no case in which the alleged misuse for post-expiration conduct made a patent unenforceable during the term of the patent—*Virginia Panel* provides no such support. D.I. 305 at 13. Instead, any potential remedy addresses the post-expiration conduct. D.I. 293 at 11-12.

Finally, BASF does not dispute Ingevity's arguments that summary judgment is warranted on BASF's misinterpretation of the supply agreements and its baseless theory of withholding supply of base carbons unless customers purchase FVC Honeycombs from Ingevity. D.I. 293 at 17-18; D.I. 305 at 10-13. BASF's failure to respond to these arguments constitutes waiver and summary judgment should be granted. *Szubielski v. Pierce*, 2018 WL 456873, at *6

8

(D. Del. Jan. 17, 2018); *Cardsoft, LLC v. VeriFone, Inc.*, 807 F.3d 1346, 1353 (Fed. Cir. 2015).

### 3.   BASF's Exhaustion Theory of Patent Misuse Misrepresents *Quanta*

BASF's exhaustion argument relies on a misapplication of *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), and fails as a matter of law.

In *Quanta*, the patented system required the use of microprocessors and chipsets along with other components, such as memory and buses. *Id.* at 621-24. LGE sued Quanta and others for infringement because they used microprocessors and chipsets sold by Intel (LGE's licensee) with non-Intel memory and buses to practice the patents. *Id.* at 624. The accused products practiced the patent because of the Intel microprocessors and chipsets, which substantially embodied the asserted patent. *Id.* Notably, the sale of the microprocessors and chipsets exhausted the patent *as to the products sold*. *Id.* at 631, 638.[8] Because LGE's patent rights were exhausted as to the microprocessors and chipsets, LGE could not assert infringement as to the microprocessors and chipsets sold by Intel. *Id.* at 630-38. The products did *not* include unlicensed, third-party microprocessors and chipsets in addition to the Intel products.

MAHLE's ██████████████████████████████████████████ ████—an inventive feature substantially embodying the invention—from a non-Ingevity source. For *Quanta* to be similar, Quanta would have needed to manufacture its computers using two sets of microprocessors and chipsets—one purchased from licensee Intel, and a second purchased from an unlicensed third party. According to BASF's theory, Quanta still would have avoided infringement due to exhaustion even when using unlicensed components that

---

[8] That exhaustion applies to the product sold is consistent with other cases. *See United States v. Univis Lens Co.*, 316 U.S. 241, 251 (1942); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S.Ct. 1523, 1531 (2017); *Bowman v. Monsanto Co.*, 569 U.S. 278, 286 (2013). BASF also does not address Ingevity's argument that BAX is irrelevant to exhaustion, conceding the point.

substantially embodied the invention. *Quanta* does not stand for such a proposition, and BASF has identified no other relevant case.[9] And as explained in Ingevity's Opening Brief, BASF's theory cannot be correct because it would nullify the Supreme Court's conclusions in *Rohm & Haas* and *Monsanto*—points that BASF does not address in its Opposition.[10]

### B.     BASF's Waiver, Implied Waiver, Equitable Estoppel and Unclean Hands Defenses Should be Dismissed on Summary Judgment

BASF required Ingevity to litigate BASF's waiver, implied waver, and equitable estoppel defenses through fact and expert discovery and, now that Ingevity demonstrated that those defenses fail as a matter of law, judgment should be entered. BASF's last-minute informal "withdrawal" does not render this motion moot. Similarly, nothing BASF identified during discovery supports an unclean hands defense that is separate from patent misuse (BASF pled unclean hands and patent misuse as two separate defenses) and thus, judgment should also be entered on BASF's separate unclean hands defense.

### C.     Judgment Should Be Entered Against BASF On Its Enablement Defense

BASF wrongly asserts that it is Ingevity's position that "the 'novel aspect' of the invention that must be enabled is limited to the combination of adsorbents expressly disclosed in the specification, and other claimed combinations are just 'tangential.'" D.I. 305 at 17. To the contrary, Ingevity's position is that the novel aspect is the combination of a subsequent absorbent volume with an IAC less than 35 g/L with existing canisters having adsorbent volumes with IACs greater than 35 g/L, and the '844 Patent enables POSITA to make and use such

---

[9] *Quanta* is akin to the impliedly licensed canisters manufactured by Ingevity's customers that include an Ingevity honeycomb without any other subsequent adsorbent volume from a non-Ingevity source. Such canisters have an implied license and Ingevity does not assert infringement.
[10] To the extent the Court considers the ALJ's decision persuasive, BASF's exhaustion argument relies on the same misreading of *Quanta* that Respondents attempted, which the ALJ flatly rejected. Ex. C19 at 179-182 (exhaustion applied to Ingevity's FVC Honeycombs "and not any larger product HCA might end up in," and did not apply to MAHLE's canisters using MPAC).

combinations. D.I. 293 at 26-27. BASF advances no facts or expert opinions that POSITA were incapable at the time of the Patent of combining adsorbents with IACs greater and less than 35 g/L. What is tangential is BASF's position that every conceivable adsorbent with IAC greater and less than 35 g/L must themselves have been enabled independent of enabling the combination of such adsorbents. *Id.*; D.I. 290 at 11-14. BASF effectively alleges that an invention concerning ways of *combining* adsorbents to reduce bleed emissions must instead teach ways to *manufacture* novel adsorbents. *See Nevro Corp. v. Stimwave Techs., Inc.*, No. CV 19-325-CFC, 2019 WL 3322368, at *10 (D. Del. July 24, 2019) (criticizing enablement defense as "ignor[ing] the fact that the asserted claims cover methods of configuring signal generators, not the manufacture of signal generators"). BASF points to no claim purporting to require a novel adsorbent or Patent teaching purporting to present a novel adsorbent, as BASF's expert acknowledges. Ex. C20 (Lyons Tr. (10/30/18)) at 122:20-23; 123:24-124:1. In an effort to avoid summary judgment, BASF mischaracterizes Ingevity's argument, misconstrues the law, and runs away from what is indisputable: POSITA were enabled to practice the patented invention.

First, under Ingevity's construction of the law, no dispute of fact precludes summary judgment.[11] BASF admits that the Patent discloses adsorbents with IACs greater than and less than 35 g/L. D.I. 305 at 16. And BASF's expert testified that a POSITA armed with the Patent and such adsorbents could have made devices covered by the Patent. Ex. C20 at 97:20-98:9, 117:15-118:1, 121:18-122:1. BASF presents no contrary evidence. BASF is wrong that opinions of Ingevity's expert contradict the novel aspect asserted herein. D.I. 305 at 17. Ingevity's expert did not opine that the novel aspect is adsorbents with flat isotherms (i.e., IAC less than 35 g/L)

---

[11] Under BASF's view of the law, BASF failed to establish a lack of disputed issues of material fact to be entitled to summary judgment. D.I. 309 at 12-14.

themselves, but rather their use to reduce bleed emissions, *which use requires combination with adsorbents having IAC greater than 35 g/L*. BASF Ex. 95 ¶ 23 ("[T]he '844 Patent is … the combination of high-IAC and low-IAC adsorbent volumes ….").

Second, BASF misconstrues the law. BASF relies primarily on *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1383-84 (Fed. Cir. 2012) and *Bayer Healthcare LLC v. Baxalta Inc.*, 407 F. Supp. 3d 462 (D. Del. Aug. 23, 2019). D.I. 305 at 17, 19. Both cases actually are congruent with this Court's focus on enablement of the "novel aspect" of the claim in *Delaware Display* and upon which Ingevity relies-in-part. D.I. 293 at 28.

*MagSil* concerned tri-layer junction devices. 687 F.3d at 1378-79. These devices were known in the art, but prior to MagSil's patent had exhibited changes in resistance of only 2.7%. *Id.* MagSil's patent described a specific way to make junction devices that exhibited changes in resistance of 11.8%. *Id.* at 1379-80. But MagSil's patent claimed all junction devices with a "change in []resistance by at least 10%." *Id.* This limitation constituted the only difference between the claimed invention and prior art junction devices. *Id.* at 1378-80. Thus, in context, the Federal Circuit's holding of lack of enablement clearly focused on whether the full scope of the *novel aspect* was enabled, congruent with *Delaware Display*.

*Bayer* concerned a protein conjugated with polyethylene glycol at the protein's "B-domain." 407 F. Supp. 3d at 467-68, 470. Conjugation at the B-domain was the "novel aspect" and could be accomplished via conjugation at lysine and cysteine amino acids. *Id.* at 470-72. The defendant admitted that conjugation at cysteine was enabled but contested whether conjugation at lysine also was enabled. *Id.* at 470, 472. Thus, when this Court addressed enablement of conjugation at lysine, it did so as something within the claim's novel aspect, not something tangential thereto, as BASF incorrectly asserts. D.I. 305 at 19.

12

*Automotive Techs. Int'l Inc. v. BMW of N.A., Inc.*, 501 F.3d 1274 (Fed. Cir. 2007), also is congruent with *Delaware Display*. D.I. 305 at 16, 18. *Auto Tech* concerned side impact sensors for deploying airbags. 501 F.3d at 1277. The claims were construed to cover "velocity-type sensors." *Id.* While conventional wisdom was that such sensors were too slow for this application, "[t]he inventors [] discovered that velocity-type sensors when properly designed could successfully and timely operate to deploy an airbag in a side collision." *Id.* Thus, when the court held that the electronic species of velocity-type sensors were not enabled, it was considering the full scope of the purported discovery (i.e., novel aspect), not merely a limitation tangential thereto. BASF's other cases do not support its position either. *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338 (Fed. Cir. 2014) did not concern open-ended ranges and thus does not support BASF's contention that every species in the claimed range must be enabled. D.I. 305 at 18. Similarly, BASF's ITC decision does not determine that the limitations were not an inventive feature. *Id.*

BASF argues that "Ingevity's interpretation of the law would mean the specification need not enable the very 'subsequent adsorbent' it accuses of infringement"—BASF's honeycomb. D.I. 305 at 19. Indeed, the Federal Circuit has held that "[t]he dispositive question of enablement does not turn on whether the accused product is enabled." *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001). This Court relied on *Durel* to reject arguments analogous to BASF's in *Inline Connection Corp. v. EarthLink, Inc.*, 684 F. Supp. 2d 496 (D. Del. 2010). *Inline* concerned, *inter alia*, a patent reciting a telecommunications system with "a plurality of separate conductive paths" where each must "exceed[] 1000 feet in length." *Id.* at 504. The defendant argued this open-ended claim must enable a system that can transmit up to 16,000 feet because that is the distance over which the accused system operated. *Id.* at 526. This Court

rejected the argument as "flatly contrary" to *Durel*. *Id.* Further, this Court distinguished between that which the scope of the claims required (exceeding 1000 feet) and "anything broader" than that (i.e., 16,000 feet), noting that the rule "that the specification 'need not enable anything broader than the scope of the claims' [] protects patentees from having someone avoid infringement merely by adding one additional element to an otherwise infringing product." *Id.* at 526-27.[12] This is exactly what BASF's misconstruction of the enablement standard seeks to do here. BASF effectively argues that its accused honeycomb has an "additional element"—an IAC of about 5 g/L— not enabled by the '844 Patent. D.I. 305 at 19. Addition of this unrequired element cannot defeat enablement for the same reasons expressed in *Inline*.

   In sum, BASF's legal construct assumes that an invention's "full scope" that must be enabled includes every possible embodiment of the invention. This is contrary to Federal Circuit precedent: "[T]he law requires the inventor to enable claims throughout their full scope," but "[e]nablement does not require the inventor to foresee every means of implementing an invention at pains of losing his patent franchise." *Invitrogen Corp. v. Clontech Labs. Inc.*, 429 F.3d 1052, 1070-71 (Fed. Cir. 2005). For example, the Federal Circuit recognizes that accused devices and after-arising technologies (like IACs greater than 80 g/L or less than 16 g/L, per BASF's contentions) need not be enabled. *Durel*, 256 F.3d at 1306 (accused devices); *Chiron Corp v. Genentech, Inc.*, 363 F.3d 1247, 1253-54 (Fed. Cir. 2004) ("The law does not expect an applicant to disclose knowledge invented or developed after the filing date."). BASF's attempt to equate the "full scope" with "every embodiment" is wrong. Even if the Court finds the '844 Patent must enable every embodiment of the IAC limitations, BASF failed to show IAC has no

---

[12] Stated differently, suppose a patent claimed a widget with feature A, which it enabled. A widget with features A and B would still infringe notwithstanding that feature B is not enabled.

inherent upper and lower bounds. Its assertions show IAC values are only marginally higher since the time of filing. D.I. 290 at 12 (asserting IACs higher than 85 g/L are not commercially available). Open-ended claims are enabled "if there is an inherent, albeit not precisely known, [] limit and the specification enables [POSITA] to approach that limit," which the Patent does. *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1376-77 (Fed. Cir. 2007).

### D. BASF Does Not Dispute that EvapTrap XC Has No Actual Substantial Non-Infringing Uses

BASF admits that "EvapTrap XC does not have any 'current commercial application' other than in fuel vapor canisters," that resolves the dispute and entitles Ingevity to partial summary judgment. BASF's arguments do not change that outcome. First, BASF argues that

█████████████████████████████████████████████████████████████████████

███████████████████████ D.I. 305 at 23-24. That is not true. BASF and its business partners have actually used EvapTrap XC in the U.S. in infringing fuel vapor canisters. Ex. R9 (Rockstraw Opening Rep.) ¶¶ 315-328. A sale is not necessary for an actual use.

Second, BASF's argument that "there are 'many applications' that it *could potentially* be used for ███████████████████████████████—with only *minor adjustments* to its size and shape" misses the point. D.I. 305 at 24 (emphasis added). The staple article inquiry focuses on "actual uses of the device," not hypothetical ones. *Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363–64 (Fed. Cir. 2006) (focusing on actual use only). The inquiry also focuses on the product as delivered, not hypothetical modifications to it. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009); *PolyVision Corp. v. Smart Techs. Inc.*, 501 F. Supp. 2d 1068, 1091 (W.D. Mich. 2007).

Further, BASF cites testimony of BASF employee Dr. Wolfgang Ruettinger in which—

far from supporting BASF's point—Dr. Ruettinger testifies that ███████████████
███████████████████████████████████████████ Ex. 103 at 188:1-18; *see also Hoffmann-La Roche Inc*, 1994 WL 761241, at *11 ("Whether a use is 'substantial' or not depends on how likely and often the use will occur. Thus, occasional aberrant use of a product does not make that use 'substantial.' Similarly, inefficient and uneconomical uses are less likely to be deemed 'substantial.'").

Third, BASF's argument that "other honeycombs" (i.e., not EvapTrap XC) and other makers' honeycombs have alternative uses is completely irrelevant.[13] The focus must be on EvapTrap XC's use. BASF does not dispute that EvapTrap XC is especially made for use as a subsequent adsorbent volume in a fuel vapor canister. D.I. 293, SOF ¶ 18; *i4i Ltd. P'ship*, 598 F.3d at 851. Because there is no dispute of material fact that EvapTrap XC has no substantial use other than as a subsequent adsorbent volume in a fuel vapor canister, summary judgment is appropriate finding that it is not a staple article of commerce.

## II.    THE IDENTIFIED EXPERT TESTIMONY SHOULD BE EXCLUDED

### A.    Dr. Mathur Should Be Precluded from Offering Opinions on Patent Misuse

#### 1.    Dr. Mathur Offered No Opinion on Patent Misuse, and Should Not Be Permitted to Do So for the First Time at Trial

BASF does not dispute that Dr. Mathur offers no opinion on whether Ingevity's conduct amounts to patent misuse or that Dr. Mathur failed to identify and reliably apply any patent misuse legal standards. Instead, BASF argues that testimony she offered on factual issues related

---

[13] BASF argues that "Ingevity's technical expert could not point to any differences between BASF's EvapTrap-branded honeycombs and other honeycombs manufactured and sold by BASF." D.I. 305 at 24-25. This argument is irrelevant, but contrary to BASF's implication that Dr. Rockstraw compared EvapTrap XC to BASF's un-accused honeycombs and could not identify a difference; Dr. Rockstraw stated that "to the extent that I can't recall other BASF honeycombs, it would be impossible to identify differences between them." BASF Ex. 84 at 213-23.

to BASF's antitrust claims, such as Ingevity's market power and Dr. Mathur's market definition applies to patent misuse as well. But market definition is not relevant in a patent misuse defense, so that testimony is unhelpful to the fact finder and should be precluded. D.I. 305 at 25-28. Also, because Dr. Mathur offered no opinion on whether Ingevity's conduct amounts to patent misuse, she should not be permitted to do so for the first time at trial. Fed. R. Civ. P. 26(a)(2)(B).

Further, because Dr. Mathur did not identify the governing patent misuse standards, her opinion is not the product of "reliable principles" that were "reliably applied to the facts of the case." Fed. R. Evid. 702(c)-(d). BASF's argument that experts are not obliged to identify the legal standards applied in their analysis would serve only to impede the Court's ability to perform its gatekeeping function under Rule 702,[14] and should be rejected. Contrary to BASF's suggestion, Ingevity did not argue that Dr. Mathur should have opined on what the governing legal standards are. Instead, Ingevity argued that, to the extent Dr. Mathur intends to offer at trial an opinion on patent misuse, which "embraces an ultimate issue to be decided by the trier of fact" (*Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 533 (D. Del. 2009)),[15] Dr. Mathur is required to have identified and applied the correct legal standards. *Accord In re ChanBond, LLC Patent Litig.*, No. CV 15-842-RGA, 2019 WL 6910284, at *6 (D. Del. Dec. 19, 2019) (expert opinion must apply legal standard correctly to be reliable). Dr. Mathur should be precluded from opining that Ingevity engaged in patent misuse.

### 2.    The Court Should Preclude Dr. Mathur From Testifying on Theories for Which She Offered No Opinions or Analysis

---

[14] The gatekeeping function may be particularly important if the Court grants BASF's request to try the patent misuse defense with its antitrust counterclaims in the bifurcated trial. D.I. 285.

[15] BASF cites *Transportes* for the notion that experts do not need to identify the legal standards relevant to their analysis, but *Transportes* held that it was improper for an expert to opine on the legal question of "the existence or non-existence of a contract," and the issue "ha[d] already been decided by the Court in the underlying Mexican litigation." 623 F. Supp. 2d at 533.

Among its patent misuse theories, BASF argues that Ingevity required customers to purchase base carbon to receive a license to practice the '844 Patent. But Dr. Mathur did not offer opinions on that theory. Specifically, she opined that because BASF made no attempt to enter the base carbon market and thus lacks any antitrust injury, her analysis is limited to carbon honeycombs. Ex. 82, ¶ 58 ("[T]he alleged conduct is limited to carbon honeycombs."); Ex. 104 ¶ 6 ("[T]he tying arrangements and exclusive LTAs are limited to carbon honeycombs."). She should not be permitted to offer testimony on BASF's high-IAC patent misuse theory now after expressly excluding that theory in her expert report.

### B. The Court Should Preclude Certain Testimony of Mr. Lyons Under *Daubert*

#### 1. The Court Should Preclude Mr. Lyons's Testimony on Topics For Which He Has No Expertise, Including Commercial Offers For Sale

BASF identifies no qualification of Mr. Lyons that would make his testimony related to what qualifies as a "commercial offer for sale" helpful to the trier of fact under FRE 702. D.I. 305 at 29 (contending requirements "are of no moment"). BASF asserts that, notwithstanding any legal qualifications related to contract formation, it can offer Mr. Lyons based on technical knowledge and "practical experience." D.I. 305 at 30. BASF is wrong. Opinion testimony is permitted only from experts with "specialized knowledge" that can "help the trier of fact to understand the evidence." Fed. R. Evid. 702. Mr. Lyons' technical and "practical experience" do not specialized knowledge on contract formation and thus, his testimony should be excluded.

#### 2. The Court Should Preclude Mr. Lyons's Testimony Applying Incorrect Legal Standards

Mr. Lyons failed to apply the correct legal standards in his reports.

**102(a)'s "known or used by others":** The relevant inquiry under § 102(a) is whether an entity other than the inventors disseminated the allegedly invalidating "knowledge or use." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380-81 (Fed. Cir. 2005); *In re Facius,*

408 F.2d 1396, 1406 (C.C.P.A. 1969). Mr. Lyons admitted that rather than apply that correct

legal standard, he "used [his own] understanding of what known or used by others means." D.I.

293 at 37. BASF's brief does not show otherwise. Testimony on that flawed basis cannot assist

the trier of fact. Fed. R. Evid. 702. The same error is found in BASF's assertions regarding Mr.

Lyons's analysis of "available to the public." The relevant inquiry is not whether members of

"the industry" knew of the use of Westvaco's honeycomb, it is whether such knowledge was

"accessible to the public"—and from a source other than Westvaco. D.I. 293 at 36-37.

**102(b)'s "commercial offer for sale":** BASF attempts to downplay the opinions offered

by Mr. Lyons by asserting that "'commercial offer for sale' appears only once in Lyons's

Opening Report." D.I. 305 at 29. But BASF fails to acknowledge that Mr. Lyons uses "offer(s)

for sale," "offered for sale," and "offering for sale," in relation to § 102(b) in numerous places.

*E.g.*, Ex. C1 ¶¶ 306, 386, 395, 396, 429, 438, 439, 440, 545, 546, 547, 553, 708, 713, 714. And

Mr. Lyons explicitly opines that the on-sale bar is met, which requires a qualifying "commercial

offer for sale." *E.g.*, *id.* ¶ 429 ("[I]t is my opinion that the alleged inventions of the Asserted

Claims were publicly used and sold, or offered for sale."). Not only is Mr. Lyons not qualified to

offer such opinions (see above), his conclusions are erroneous and cannot assist the trier of fact

because he failed to apply the correct legal standard.[16]

**102(b)'s "ready for patenting":** Mr. Lyons failed to apply the correct legal standard on

ready for patenting. D.I. 293 at 38-29; Fed. R. Evid. 402, 702; *Inline Connection Corp. v. AOL*

---

[16] BASF opposition incorrectly contends that Ingevity "admits [Mr. Lyons] states the correct legal standard" by truncating Ingevity's assertion. D.I. 305 at 29. Ingevity actually asserted the opposite: "**While** Mr. Lyons correctly identified the two-part test expressed in *Pfaff*, **he did not identify and failed to apply the correct legal standard for determining whether an interaction qualifies as a 'commercial offer for sale' or when an invention is 'ready for patenting.'**" D.I. 305 at 38 (emphasis showing portions truncated).

*Time Warner Inc.*, 2007 WL 275928, at \*4-5 (D. Del. Jan. 29, 2007) (misapplying law renders opinion inadmissible). BASF asserts that Mr. Lyons reviewed "drawings and other descriptions," but the Supreme Court requires evidence that such drawings and descriptions "*enable* a [POSITA] to practice the invention." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998) (emphasis added). Mr. Lyons does not analyze whether "drawings or other descriptions" he reviewed could enable a POSITA to practice the claims of the '844 Patent. BASF's argument thus fails.

**102(b)'s "public use":** When asked about the legal standard he applied for "public use," Mr. Lyons identified only "what's in paragraph 39" of his opening report, which merely quotes the statutory text. Ex. C21 (Lyons Tr. (5/28/20)) at 220:3-16; Ex. C1 ¶39. BASF opposition cites to other legal understandings not found in Mr. Lyons's opening report—only his reply report— and apparently were not known to Mr. Lyons at his deposition. *Id.* Further, BASF has not shown that Mr. Lyons has any requisite expertise in what constitutes a "limitation restriction or obligation of secrecy." D.I. 305 at 32. Thus, such opinions are similarly inadmissible.

BASF asserts that Mr. Lyons "recited and applied the correct legal standards for anticipation and used his depth of relevant technical expertise to conclude that the asserted claims are anticipated." D.I. 305 at 33. Such a broad, conclusory statement is both inapt and refuted by the record. As shown, the challenged testimony is irrelevant and inadmissible because Mr. Lyons failed to apply the correct legal standards. *Inline*, 2007 WL 275928, at \*4-5.

## III.   CONCLUSION

The Court should grant summary judgment on BASF's equitable and enablement defenses, partial summary judgment that EvapTrap XC is not a staple article, and preclude the identified testimony from Dr. Mathur and Mr. Lyons.

/s/ Jeff Castellano
Karen E. Keller (No. 4489)
John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
Jeffrey T. Thomas
Taylor W. King
Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
(949) 451-3800

Brian M. Buroker
Omar F. Amin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5300

Rustin K. Mangum
Spencer W. Ririe
MANGUM RIRIE LLP
999 Corporate Dr. #260
Ladera Ranch, CA 92694
(949) 298-5590

Dated: June 24, 2020

## CERTIFICATE OF SERVICE

I, Jeff Castellano, hereby certify that on June 24, 2020, this document was served on the

persons listed below in the manner indicated:

### BY EMAIL

Rodger D. Smith, II
Anthony D. Raucci
MORRIS, NICHOLS, ARHST & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
araucci@mnat.com

Thomas J. Friel, Jr.
KING & SPALDING LLP
601 South Carolina Avenue
Suite 100
Palo Alto, CA 94304
(650) 422-6700
tfriel@kslaw.com

Joseph D. Eng, Jr.
KING & SPALDING LLP
1185 Avenue of the Americas
35th Floor
New York, NY 10036-2601
(212) 556-2250
jeng@kslaw.com

James P. Brogan
Brian Eutermoser
Angela C. Tarasi
Mikala Stone
KING & SPALDING LLP
1515 Wynkoop Street, Suite 800
Denver, CO 80202
(720) 535-2300
jbrogan@kslaw.com
beutermoser@kslaw.com
atarasi@kslaw.com
mikaela.stone@kslaw.com

Bobby R. Burchfield
Norman A. Armstrong, Jr.
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500
bburchfield@kslaw.com
narmstrong@kslaw.com
cyook@kslaw.com

*/s/ Jeff Castellano*
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jcastellano@shawkeller.com
*Attorneys for Plaintiffs*