IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INGEVITY CORPORATION, INGEVITY SOUTH CAROLINA, LLC, | |
| Plaintiffs, | |
| v. | C.A. No. 18-1391-RGA |
| BASF CORPORATION, | |
| Defendant. | |

## **PROPOSED FINAL JURY INSTRUCTIONS**

Pursuant to D. Del. L.R. 51.1(a) and the Court's Scheduling Order (D.I. 41), the parties submit the attached Joint Proposed Final Jury Instructions.  Where there is disagreement, separate proposed instructions are provided.  These instructions are also being submitted via email to the Court in Word format.

*/s/ Jeff Castellano*
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com

*/s/ Rodger D. Smith II*
Rodger D. Smith II (No. 3778)
Anthony D. Raucci (No. 5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
araucci@mnat.com

OF COUNSEL:

Jeffrey T. Thomas
Taylor W. King
Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Dr.
Irvine, CA 92612-4412
(949) 451-3800

Brian M. Buroker
Omar F. Amin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Rustin K. Mangum
Spencer W. Ririe
MANGUM RIRIE LLP
999 Corporate Dr. #260
Ladera Ranch, CA 92694
(949) 298-5590

*Attorneys for Plaintiffs Ingevity Corporation and Ingevity South Carolina, LLC*

Dated: August 25, 2020

OF COUNSEL:

Thomas J. Friel, Jr.
KING & SPALDING LLP
601 South Carolina Avenue, Suite 100
Palo Alto, CA 94304
(650) 422-6700

James P. Brogan
Brian Eutermoser
Angela C. Tarasi
Mikaela Stone
KING & SPALDING LLP
1515 Wynkoop Street, Suite 800
Denver CO 80202
(720) 535-2300

Bobby R. Burchfield
Norman A. Armstrong, Jr.
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500

Joseph D. Eng., Jr.
KING & SPALDING LLP
1185 Avenue of the Americas, 35th Floor
New York, NY 10036
(212) 556-2205

*Attorneys for Defendant BASF Corporation*

# TABLE OF CONTENTS

**Page**

1. GENERAL INSTRUCTION ................................................................. 1
   1.1 INTRODUCTION .................................................................. 1
   1.2 JURORS' DUTIES ................................................................ 1
   1.3 BURDENS OF PROOF [DISPUTED] ........................................ 2
   1.4 EVIDENCE DEFINED ............................................................ 3
   1.5 CONSIDERATION OF EVIDENCE .......................................... 4
   1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................ 4
   1.7 CREDIBILITY OF WITNESSES ............................................. 5
   1.8 DEMONSTRATIVE EXHIBITS ............................................. 6
   1.9 USE OF NOTES .................................................................. 7
2. THE PARTIES AND THEIR CONTENTIONS .............................. 7
   2.1 THE PARTIES .................................................................... 7
   2.2 SUMMARY OF CONTENTIONS ........................................... 8
3. PATENT CLAIMS ...................................................................... 8
   3.1 THE ROLE OF THE CLAIMS IN A PATENT ........................... 8
   3.2 INDEPENDENT AND DEPENDENT CLAIMS ........................ 9
   3.3 CONSTRUCTION OF CLAIMS ............................................ 10
4. INFRINGEMENT ....................................................................... 10
   4.1 INFRINGEMENT GENERALLY ........................................... 10
   4.2 INFRINGEMENT [DISPUTED] ............................................. 11
   4.3 INFRINGEMENT — DIRECT INFRINGEMENT: MAKING AND USING A SYSTEM  12
   4.4 INFRINGEMENT — INDIRECT INFRINGEMENT ..................... 13
       4.4.1 INFRINGEMENT — INDIRECT INFRINGEMENT — ACTIVE INDUCEMENT ................................................................. 13

## TABLE OF CONTENTS

(continued)

**Page**

      4.4.2   INFRINGEMENT — INDIRECT INFRINGEMENT — CONTRIBUTORY INFRINGEMENT [DISPUTED] ........................................ 14

      4.4.3   INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM UNITED STATES FOR COMBINATION ABROAD [DISPUTED] .... 15

   4.5    WILLFUL INFRINGEMENT [DISPUTED] ...................................... 17

5.    [INGEVITY'S PROPOSAL: VALIDITY] [BASF'S PROPOSAL: INVALIDITY] — GENERALLY [DISPUTED] ............................................ 18

   5.1    [INGEVITY'S PROPOSAL: PRESUMPTION OF VALIDITY]..................... 19

     [INGEVITY'S PROPOSAL: DEFINITENESS ............................................. 20

     [BASF'S PROPOSAL: INDEFINITENESS ............................................. 21

   5.3    [INGEVITY'S PROPOSAL: ENABLEMENT] [BASF'S PROPOSAL: LACK OF ENABLEMENT] [DISPUTED] ............................................ 23

     [INGEVITY'S PROPOSAL: WRITTEN DESCRIPTION ........................... 26

     [BASF'S PROPOSAL: LACK OF WRITTEN DESCRIPTION ................... 27

   5.5    PRIOR ART ....................................................................... 29

      5.5.1   PRIOR ART AT ISSUE [DISPUTED] .................................. 30

   5.6    ANTICIPATION [DISPUTED] ................................................. 34

      5.6.1   [BASF'S PROPOSAL: PRIOR INVENTION BY ANOTHER INVENTOR] [DISPUTED] ................................................. 36

      5.6.2   [BASF'S PROPOSAL: PRIOR KNOWLEDGE OR USE] [DISPUTED] 37

      5.6.3   [BASF'S PROPOSAL: PUBLIC USE] [DISPUTED] ........................... 38

   5.7    OBVIOUSNESS ................................................................. 39

      5.7.1   SCOPE AND CONTENT OF THE PRIOR ART ................................... 39

      5.7.2   LEVEL OF ORDINARY SKILL IN THE ART .................................... 40

      5.7.3   SECONDARY CONSIDERATIONS [DISPUTED] ............................. 41

   5.8    INVENTORSHIP ................................................................. 42

**TABLE OF CONTENTS**

(continued)

**Page**

5.9    DERIVATION [DISPUTED] ............................................................. 43

6.    DAMAGES ........................................................................................ 46

6.1    DAMAGES — GENERALLY ........................................................ 46

6.1.1   CALCULATING DAMAGES IN CASES OF INDUCEMENT OR CONTRIBUTORY INFRINGEMENT .................................. 47

6.2    REASONABLE ROYALTY — ENTITLEMENT ........................... 48

6.2.1   REASONABLE ROYALTY AS A MEASURE OF DAMAGES ......... 48

6.2.2   FACTORS FOR DETERMINING REASONABLE ROYALTY .......... 49

6.3    DATE OF COMMENCEMENT OF CLAIMED DAMAGES ........... 51

7.    DELIBERATION AND VERDICT ................................................... 51

7.1    DELIBERATION AND VERDICT — INTRODUCTION ............... 51

7.2    UNANIMOUS VERDICT ............................................................. 52

7.3    DUTY TO DELIBERATE .............................................................. 52

7.4    SOCIAL MEDIA .......................................................................... 53

7.5    COURT HAS NO OPINION ......................................................... 54

# 1.     GENERAL INSTRUCTION

## 1.1     INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case.  Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.  In following my instructions, you must follow all of them and not single out some and ignore others.  They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

### **Source**

Final Jury Instruction 1.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 1.2     JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to

1

instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

**Source**

Final Jury Instruction 1.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 1.3    BURDENS OF PROOF [DISPUTED]

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." **[BASF's Proposal: Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not either party has met its burden of proof.]** In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

This is a civil case in which Ingevity Corporation and Ingevity South Carolina, LLC (whom I will refer to as "Ingevity" or "Plaintiffs") are accusing BASF Corporation (whom I will refer to as "BASF" or "Defendant") of patent infringement. In addition to denying that infringement for some of the Asserted Claims, BASF asserts that the Asserted Claims are invalid.

Plaintiffs have the burden of proving patent infringement by what is called a preponderance of the evidence. That means Plaintiffs have to produce evidence which, when considered in light of all of the facts, leads you to believe that the infringement is more likely true than not. To put it

differently, if you were to put Ingevity's and BASF's evidence on the opposite sides of a scale, the evidence supporting Ingevity's claims would have to make the scales tip slightly on Ingevity's side. BASF has the burden of proving that the Asserted Claims are invalid by what is called clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence **[BASF's Proposal: , but still lower than the "beyond a reasonable doubt" standard, which, again, does not apply here].**

### Source

Final Jury Instruction 1.3, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019); Final Jury Instruction 1.3, *St. Jude Medical, Cardiology Division, Inc. et al. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012).

## 1.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that was presented to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and any other evidence that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Sometimes testimony and exhibits are received only for a limited purpose.  When I give instructions regarding that limited purpose, you must follow it.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**Source**

Final Jury Instruction 1.4, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

**1.5    CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Source**

Final Jury Instruction 1.5, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

**1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two kinds of evidence: direct evidence and circumstantial evidence.  Direct evidence is direct proof of a fact, such as the testimony of an eyewitness.  For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

4

Circumstantial evidence is indirect proof of a fact, i.e., proof of facts from which you may infer or conclude that other facts exist. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between the weight that you should give to either direct or circumstantial evidence, but simply requires that you find facts from all the evidence in the case.

You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**<u>Source</u>**

Final Jury Instruction 1.6, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 1.7    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or

failed to say or do something that was different from the testimony he or she gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses.

**Source**

Final Jury Instruction 1.7, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 1.8    DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**Source**

Final Jury Instruction 1.8, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 1.9    USE OF NOTES

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### Source

Final Jury Instruction 1.9, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 2.    THE PARTIES AND THEIR CONTENTIONS

## 2.1    THE PARTIES

I will now review for you the parties in this action, and the positions that you will have to consider in reaching your verdict.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

The parties are Ingevity Corporation and Ingevity South Carolina, LLC, who are the Plaintiffs, and BASF Corporation, the Defendant.

Ingevity South Carolina, LLC is the owner, and Ingevity Corporation is the exclusive licensee, of U.S. Patent No. RE38,844, which I will refer to as the "'844 Patent" or the "Asserted Patent."

**Source**

Final Jury Instruction 2.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 2.2     SUMMARY OF CONTENTIONS

Plaintiffs allege that BASF directly and/or indirectly infringes Claims 1, 2, 4, 8, 11, 14, 18, 19, 21, 24, 27, 43, 45, 48 and 51 of the '844 Patent, which I will refer to as the "Asserted Claims."

Plaintiffs allege that BASF's infringement of the Asserted Patent was and is willful.  BASF denies that its products or services infringe the Asserted Claims of the '844 Patent.

BASF also denies that it has encouraged its customers or end users to infringe the Asserted Claims.

BASF contends that the Asserted Claims of the '844 Patent are invalid because the inventions described therein are found in the prior art, are obvious in view of the prior art, lack an enabling disclosure, fail to provide an adequate written description, and are indefinite.

If any of the Asserted Claims has been infringed and is not invalid, you will then need to decide money damages to be awarded to Plaintiffs to compensate them for the infringement.

**Source**

Final Jury Instruction 2.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 3.     PATENT CLAIMS

## 3.1     THE ROLE OF THE CLAIMS IN A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

Each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

**Source**

Final Jury Instruction 3.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 3.2    INDEPENDENT AND DEPENDENT CLAIMS

Claims can be stated in two different ways in a patent.  The first way a claim can be stated is in the form of an "independent claim."  An independent claim does not refer to any other claim of the patent.  An independent claim is read alone to determine its scope.

In this case, Claims 1, 18 and 43 of the '844 Patent are independent claims.  An "independent claim" sets forth all of the requirements that must be met in order for an accused system or method to be covered by that claim.

The second way a claim can be stated is in the form of a dependent claim.  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements.  In this way, the claim "depends" on another claim or claims.  A dependent claim incorporates all of the requirements of the claims to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

In this case, Claims 2, 4, 8, 11, 14, 19, 21, 24, 27, 45, 48 and 51 of the '844 Patent are dependent claims.  An accused product or method is only covered by, and therefore infringes, a dependent claim if the accused product meets all of the requirements of both the dependent claim and the claims to which the dependent claim refers.  Because a dependent claim incorporates all of the features of the independent claims it refers to, if you find that an independent claim is not infringed, then the claims that depend on that independent claim cannot be infringed.  Similarly,

if you find that an independent claim is not obvious, then the claims that depend on that independent claim are also not obvious.

**Source**

Final Jury Instruction 3.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 3.3    CONSTRUCTION OF CLAIMS[1]

The law says that it is the Court's duty to define the terms of the patent's claims.  I have already defined the meaning of some of the words of the Asserted Claims in this case.  These definitions have been provided to you on a chart in your juror notebooks.

You must accept my definition of these words in the Asserted Claims as correct.  You must use the definitions I give you for each claim to make your decisions as to whether the claim is infringed or invalid.  You must ignore any different definitions used by the witnesses or the attorneys.  You should not take my definition of the language of the Asserted Claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, namely infringement and invalidity.  These issues are yours to decide.

**Source**

Final Jury Instruction 3.3, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 4.    INFRINGEMENT

## 4.1    INFRINGEMENT GENERALLY

Patent law provides that any person or business entity which makes, uses, or offers for sale, without the patent owner's permission, any product, apparatus, or method covered by at least one claim of a United States patent before the patent expires, infringes the patent.  A patent owner may

---

[1] This instruction should be omitted if no claim terms are construed by the Court.

enforce his right to exclude others from making, using, or offering for sale the patented invention by filing a lawsuit for patent infringement.

In this case, there are four possible ways that a claim may be infringed. The four types of infringement are called: (1) direct infringement; (2) active inducement; (3) contributory infringement; and (4) supply of components in or from the United States for infringement abroad. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, Ingevity must also prove that BASF's actions caused direct infringement.

In order to prove infringement, Ingevity must prove that the requirements for one or more of these four types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

**Source**

Final Jury Instruction 4.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

**4.2    INFRINGEMENT [DISPUTED]**

To prove infringement of the Asserted Claims, Ingevity must show by a preponderance of the evidence that BASF has made or used a product or system that meets every limitation of the claim. Making or using a product that meets every limitation of the claim constitutes infringement. In other words, a claim is infringed if a product or system includes each and every component or practices each and every step of the claim. If a product or system omits any single component or fails to practice any step recited in a claim, that product does not infringe that claim.

11

You must determine infringement with respect to each patent claim individually.  **[BASF's Proposal: Remember, the question is not whether BASF's products are similar or even identical to a product made by Ingevity.]**

Someone can infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent.  They also may infringe a patent even though they believe in good faith that what they are doing does not infringe a patent or if they believe in good faith that the patent is invalid.  An independently developed product or process that falls within the scope of an Asserted Claim still infringes.  Thus, BASF's knowledge or lack of knowledge of Ingevity's patent and BASF's intent are irrelevant to your determination of whether BASF infringes.

### Source

Final Jury Instruction 4.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019); Final Jury Instruction 3.2, *Vectura Ltd. v. Glaxosmithkline LLC*, C.A. No. 16-638-RGA (D. Del. May 3, 2019); Final Jury Instruction 3.6, *St. Jude Medical, Cardiology Division, Inc. et al. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012).

## 4.3    INFRINGEMENT — DIRECT INFRINGEMENT: MAKING AND USING A SYSTEM

Direct infringement requires that the accused system include every element recited in the claim.  To infringe by making a system, a single accused infringer must combine all of the claim elements.  A product directly infringes a claim if the product includes each and every element of that claim. In order to find direct infringement, you must find that every element of the claim in question was satisfied. You are to make a separate determination of direct infringement for each of the fifteen asserted claims of the Ingevity patent.

To prove infringement by use, Plaintiffs may show that a single accused infringer used the entire system.  If the system's use is performed by more than one party, Plaintiffs must prove by a

preponderance of the evidence that a single accused infringer put the entire system into service,

controlled the system (even if indirectly), and benefited from each claimed element of the system.

**Source**

Final Jury Instruction 4.4, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019); Final Jury Instruction 4, *Sonos v. D&M Holdings Inc.*, C.A. No. 1:14-cv-01330-WCB (D. Del. Dec. 15, 2017); Final Jury Instruction 3.5, *The Dow Chemical Co. v. Nova Chemicals Corp. et al.*, C.A. No. 1:05-cv-00737-LPS (D. Del. Jun. 14, 2010).

## 4.4    INFRINGEMENT — INDIRECT INFRINGEMENT

There are two types of indirect infringement (1) active inducement; and (2) contributory

infringement.   There cannot be indirect infringement without someone else engaging in direct

infringement.   To prove indirect infringement, Ingevity must also prove that BASF's actions

caused direct infringement.

**Source**

Final Jury Instruction 4.5, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

### 4.4.1    INFRINGEMENT — INDIRECT INFRINGEMENT — ACTIVE INDUCEMENT

Ingevity alleges that BASF is liable for infringement by actively inducing others to directly

infringe the Asserted Patent.  As with direct infringement, you must determine whether there has

been active inducement on a claim-by-claim basis.  BASF is liable for active inducement of a claim

only if Plaintiffs prove by a preponderance of the evidence: (1) that the acts are actually carried

out by BASF's testing partners or potential customers directly infringe that claim; and (2) that

BASF took action during the time the Asserted Patent was in force intending to cause the infringing

acts by BASF's testing partners and potential customers; and (3) that BASF was aware of the

Asserted Patent and knew that the acts, if taken, would constitute infringement of the patent.  If

you find that BASF was aware of the patent, but believed that the acts it encouraged did not

infringe that patent, BASF cannot be liable for inducement.  A belief that a patent is invalid is not a belief of noninfringement.

**Source**

Final Jury Instruction 4.5.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015).

### 4.4.2    INFRINGEMENT — INDIRECT INFRINGEMENT — CONTRIBUTORY INFRINGEMENT [DISPUTED]

Ingevity argues that BASF is liable for contributory infringement by contributing to the direct infringement of the Asserted Patent by BASF's prospective customers and testing partners. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

BASF is liable for contributory infringement of a claim if Ingevity proves by a preponderance of the evidence: (1) BASF offered to sell within the United States a component of a product, or apparatus for use in a **[BASF's Proposal: patented]** process, during the time the Asserted Patent was in force; (2) the component or apparatus **[Ingevity's Proposal: has no]** **[BASF's Proposal: is not capable of]** substantial, noninfringing use; (3) the component or apparatus constitutes a material part of the invention; (4) BASF was aware of the Asserted Patent and knew that the products or processes for which the component or apparatus has no other substantial use were covered by a claim of the Asserted Patent; and (5) that use directly infringes the claim.

**Source**

Final Jury Instruction 4.5.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).  AIPLA Model Jury Instruction 3.10; Final Jury Instruction 6, *Sonos, Inc. v. D&M Holdings, Inc. d/b/a The D+M Group*, C.A. 1:14-cv-01330-WCB (D. Del. Dec. 15, 2017); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("For purposes of contributory infringement, the inquiry

focuses on whether the accused products can be used for purposes other than infringement.") (emphasis omitted).

### 4.4.3  INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM UNITED STATES FOR COMBINATION ABROAD [DISPUTED]

BASF is liable for § 271(f)(1) infringement of a claim (active inducement of foreign combination of components supplied from the United States) if Ingevity proves by a preponderance of the evidence that:

(1)    BASF supplied or causes to be supplied components from the United States to a place outside the United States, which make up all or a substantial portion of the invention of a claim of the '844 Patent;

(2)    BASF took action intentionally to cause prospective customers and testing partners to assemble the components outside of the United States;

(3)    BASF knows of the '844 Patent, and knows that the encouraged acts constitute infringement of that patent; and

(4)    the encouraged acts would constitute direct infringement of the claim if they had been carried out in the United States.

If you find that BASF was aware of the patent, but believed that the acts it encouraged would not constitute infringement of the patent if carried out in the United States, BASF cannot be liable for inducement.  **[Ingevity's Proposal: A belief that a patent is invalid, however, is not a belief of noninfringement.]**

To establish active inducement of infringement, it is not sufficient that BASF's prospective European customer(s) and testing partner(s) allegedly directly infringes the claim. Nor is it sufficient that BASF was aware of the act(s) that allegedly constitute the direct infringement. Rather, you must find that BASF specifically intended for BASF's prospective customer(s) and testing partner(s) to infringe the '844 Patent, to find inducement of infringement. If you do not find that BASF specifically intended for acts of direct infringement to occur and

that BASF was aware those acts would infringe, then you must find that BASF has not actively induced the alleged infringement under § 271(f)(1).

BASF is liable for § 271(f)(2) infringement of a claim if Ingevity proves by a preponderance of the evidence that:

(1)     BASF supplies a component, or causes a component to be supplied, from the United States to a place outside of the United States;

(2)     the component is especially made or adapted for use in the claimed invention and is not a staple article or commodity of commerce suitable for substantial, noninfringing use;

(3)     BASF is aware of the '844 patent and knows that the component is especially adapted for use in the claimed invention and **[<u>Ingevity's Proposal</u>: has no] [<u>BASF's Proposal</u>: is not capable of]** substantial noninfringing use; and

(4)     intends for the component to be used in a product that would directly infringe the claim if it had been used in the United States.

### <u>Source</u>

Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 3.4); U.S.C. § 271(f); *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 737 (2017) ("We hold that a single component does not constitute a substantial portion of the components that can give rise to liability under § 271(f)(1)."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015); *Cardiac Pacemakers, Inc. v. St. Jude Med.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009) (§ 271(f) does not cover method claims); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1222-23 (Fed. Cir. 2006); *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117-18 (Fed. Cir. 2004); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1366 (Fed. Cir. 2005); *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys., Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001) ("[T]he statutory language in this section [271(f)(2)] does not require an actual combination of the components, but only a showing that the infringer shipped them with the intent that they be combined."). *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338-39 (Fed. Cir. 2012); *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075, n.1 (N.D. Cal. 2007); ("Section 271(f)(2) is not at issue because Judge White determined that BODI's software was *capable of* substantial non-infringing uses.") (emphasis added).

**4.5     WILLFUL INFRINGEMENT [DISPUTED]**

In this case, Ingevity argues both that BASF infringed and, further, that BASF infringed willfully.  If you have decided that BASF has infringed, you must go on and address the additional issue of whether this infringement was willful.  Willfulness requires you to determine whether Ingevity proved that it is more likely than not that BASF knew of Ingevity's patent and that the infringement by BASF was intentional.  You may not determine the infringement was willful just because BASF knew of the Asserted Patent and infringed it.  **[Ingevity's Proposal: Instead, you must also find that BASF knew its actions would infringe the '844 Patent.]  [BASF's Proposal: Instead, willful infringement is reserved for the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.]**

To determine whether BASF acted willfully, consider all facts.  These may include, but are not limited, to:

(1)     Whether BASF intentionally copied a product that is covered by the Asserted Patent;

(2)     Whether BASF reasonably believed it did not infringe or that the Asserted Patent was invalid;

**[Ingevity's Proposal:**

**(3)     Whether BASF acted consistently with the standards of behavior for its industry;**

**(4)     Whether BASF made a good-faith effort to avoid infringing the Asserted Patent, for example, whether BASF attempted to design around the patent; and**

**(5)     Whether BASF tried to cover up its infringement.]**

**[BASF's Proposal:**

**(3)     Whether BASF knew, or should have known, that its conduct involved an unreasonable risk of infringement.]**

**Source**

Final Jury Instruction 4.6, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019); Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 3.10); Final Jury Instruction 3.3, *Vectura Limited v. Glaxosmithkline LLC*, C.A. No. 16-638-RGA (D. Del. May 3, 2019); *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016) (preponderance of the evidence standard for finding willfulness); *Eko Brands, LLC v. Adrian Rivera Mayanez Enters., Inc.*, No. 2018-2215, slip op. at 16 (Fed. Cir. January 13, 2020) ("Under *Halo*, the concept of willfulness requires a jury to find no more than deliberate or intentional infringement."); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) ("*Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer,'—can support an award of enhanced damages." (quoting *Halo*, 136 S. Ct. at 1930)); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness and explaining, in the context of willful infringement, that "the patent law encourages competitors to design or invent around existing patents"); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (willful blindness is "just as culpable as … actual knowledge"); 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.").

5.    **[INGEVITY'S PROPOSAL: VALIDITY] [BASF'S PROPOSAL: INVALIDITY] — GENERALLY [DISPUTED]**

BASF has challenged validity of the Asserted Claims, and its challenges fall into two categories. First, BASF asserts that the '844 Patent is invalid because it fails to meet certain patent law requirements, specifically: (1) the Asserted Claims of the '844 Patent are invalid because they are indefinite; (2) the Asserted Claims of the '844 Patent lack enablement; and (3) the Asserted Claims of the '844 Patent lack written description. Second, BASF also asserts that the '844 Patent is invalid because it is anticipated and/or rendered obvious by prior art, specifically: (1) the invention allegedly covered by the Asserted Claims of the '844 Patent was previously invented by Delphi; (2) the inventors of the '844 Patent improperly derived the claimed invention from employees of Delphi; (3) the '844 Patent fails to identify the correct inventors; (4) the invention allegedly covered by the Asserted Claims of the '844 Patent were previously known or used by

others prior to Ingevity's alleged invention; (5) the Asserted Claims of the '844 Patent are rendered obvious by the combination of U.S. Patent No. 6,896,852 to Meiller and U.S. Patent No. 5,914,294 to Park; [**BASF's Proposal: and (6) the Asserted Claims of the '844 Patent are rendered obvious by the combination of U.S. Patent No. 6,896,852 to Meiller and a person of ordinary skill in the art's knowledge of other prior art canister systems.**]

To prove that any claim of a patent is invalid, BASF must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

**Source**

Final Jury Instruction 5, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 5.1    [INGEVITY'S PROPOSAL: PRESUMPTION OF VALIDITY][2]

A patent granted by the United States Patent and Trademark Office ("Patent Office") carries the presumption that it is valid. Once the patent issues, it is presumed that its subject matter is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. Absent clear and convincing evidence to the contrary, the law presumes that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

---

[2] BASF's proposal is that no instruction on the presumption of validity is necessary, because the instructions on BASF's clear and convincing burden of proof, included above in Part 1.3, already account for the presumption of validity. Avia Group Int'l Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1562 (Fed. Cir. 1988) (explaining "The presumption is one of law, not fact, and does not constitute evidence to be weighed against the challenger's evidence."); Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360 (Fed. Cir. 1984) ("The presumption of validity and heightened burden of proving invalidity are static and in reality different expressions of the same thing – a single hurdle to be cleared."); Chrion Corp. v. Genentech Inc., 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) ("Therefore, the district court did not err in declining to include a jury instruction on the presumption of validity because the jury applied the correct clear and convincing evidence standard.").

Because patents are presumed valid, BASF bears the burden of proving invalidity. While the presumption of validity can be rebutted, the burden is on BASF to do so. This burden requires that BASF prove by clear and convincing evidence that each of the asserted claims is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

**Source**

Final Jury Instruction 4, *Dow Chem. Co. v. Nova Chem. Corp.*, C.A. No. 05-cv-00737 (JJF) (D. Del. June 14, 2010);

**5.2**

**[INGEVITY'S PROPOSAL: DEFINITENESS[3]**

BASF contends that one or more of the claims of the '844 Patent are invalid because the language of the claims is indefinite. BASF has the burden of proving that a claim is indefinite by clear and convincing evidence.

A claim is indefinite if it does not inform a person of ordinary skill in the art about the scope of the invention with reasonable certainty. A claim is definite if it informs a person of ordinary skill in the art about the scope of the invention even if some experimentation is needed. A patent does not need to expressly recite all of the information necessary to determine whether an accused product meets a claim. If that information would have been understood by a person of ordinary skill in the art reading the patent at the time the patent was filed, the claims are definite. In particular, a patent does not need to recite all of the conditions for conducting a test required by

---

[3] Ingevity has included instructions related to definiteness in the event the Court determines that the jury should offer an advisory verdict on this legal issue. If the Court decides that there are no material facts and rules on definiteness or that an advisory verdict is unnecessary, then this question would be removed.

a claim.  In such a case, the claim would be definite if a person of ordinary skill in the art reading the patent would understand how to perform the test.  Where there is more than one method of measurement and the patent does not explicitly discuss the methods, persons experienced in the field are reasonably deemed to select the method that best measures the parameters relevant to the invention.

Definiteness is determined from the point of view of the hypothetical person of ordinary skill in the art on the date the patent was filed, which in this case is November 21, 2001.  Post-filing date developments are irrelevant to the indefiniteness inquiry.  The person of ordinary skill in the art is presumed to know everything that was known to persons of ordinary skill in the art at the time, including the content of all available publications.  The question is not whether a claim is definite to you as a layperson.  The question is whether it could be understood by a person of ordinary skill in the field of adsorbent systems.]

**Source**

Final Jury Instruction 4.3, *Dow Chem Co. v. Nova Chems. Corp. (Canada)*, 1:05-cv-00737-LPS (D. June 14, 2010); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).

**[BASF'S PROPOSAL: INDEFINITENESS**

The patent laws have requirements for the way in which patent claims are written.  Patent claims must be sufficiently clear that a person of ordinary skill in the art reading them is able to determine what the claims cover and what they do not cover.  If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.  BASF contends that one or more of the claims of the '844 Patent are invalid because the language of the claims is indefinite.  BASF has the burden of proving that a claim is indefinite by clear and convincing evidence.

A claim is indefinite if it does not inform a person of ordinary skill in the art about the scope of the invention with reasonable certainty. Specifically, a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them. Where the patent claims a particular physical property and multiple approaches or tests for measuring that physical property exist, a patent must establish a single known approach or establish that a person of ordinary skill in the art would know which approach to select. If you find that multiple methods exist for assessing a physical characteristic claimed by the '844 Patent, that each of those methods may produce different results, and that the '844 Patent does not provide any guidance as to which method should be used, then the Asserted Claims are indefinite.

Definiteness is determined from the point of view of the hypothetical person of ordinary skill in the art on the date the patent was filed, which in this case is November 21, 2001. Post-filing date developments are irrelevant to the indefiniteness inquiry. The person of ordinary skill in the art is presumed to know everything that was known to persons of ordinary skill in the art at the time, including the content of all available publications. The question is not whether a claim is definite to you as a layperson. The question is whether it could be understood by a person of ordinary skill in the field of adsorbent systems.]

**<u>Source</u>**

Final Jury Instruction 6.6., *Pacific Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, C.A. No. 17-cv-275-LPS (D. Del. Mar. 17, 2020); Final Jury Instruction VII.F, *Agrofresh, Inc. v. Essentiv LLC*, C.A. No. 16-662 (MN) (D. Del. Oct. 11, 2019); Proposed Final Jury Instruction 5.7, *Bayer Healthcare LLC v. Baxalta Inc.*, C.A. No. 16-01122 (RGA) (D. Del. Jan. 31, 2019); *The Dow Chemical Co. v. Nova Chems. Corp.*, 803 F.3d 620 (Fed. Cir. 2015); *Teva Pharma. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).

**5.3    [INGEVITY'S PROPOSAL: ENABLEMENT] [BASF'S PROPOSAL: LACK OF ENABLEMENT] [DISPUTED][4]**

The patent law contains certain requirements for the part of the patent called the specification, which is the entirety of the patent before its claims. BASF contends that the Asserted Claims are invalid because the specification does not enable the claimed invention; that is, the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention, and that therefore the Asserted Claims are invalid. To be sufficiently full and clear, the description in the specification must contain enough information to have allowed a person having ordinary skill in the field of the technology of the patent to make and use the full scope of the claimed invention at the time of the priority date of the patent claim, which in this case is November 21, 2001. This is known as the "enablement" requirement. If the full scope of a patent claim is not enabled, it is invalid.

[**BASF's Proposal**: BASF has the burden of establishing lack of enablement by clear and convincing evidence.]

[**Ingevity's Proposal**: BASF has the burden of establishing by clear and convincing evidence that the specification fails to meet the law's requirements for enablement of the claimed invention.]

To be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of original filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. A patent specification need not

---

[4] The parties have moved for summary judgment on BASF's enablement defense and thus, if the Court grants either party's motion, this special interrogatory would likewise need to be removed.

include the information already known to and available to one of ordinary skill in the art; **[BASF's**

**Proposal: however, the novel aspects of an invention must be enabled in the patent itself.]**

In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may take into account such factors as:

a.    The quantity of experimentation necessary;

b.    The time and cost of any necessary experimentation;

c.    How routine any necessary experimentation is in the field of adsorbent systems;

d.    Whether the patent discloses specific working examples of the claimed invention;

e.    The amount of guidance presented in the patent;

f.    The nature and predictability of the field of adsorbent systems;

g.    The level of ordinary skill in the field of adsorbent systems;

h.    The nature and scope of the claimed invention;

i.    **[BASF's Proposal: The state of the prior art;]** and

**j.**    **[Ingevity's Proposal: The breadth of the claims.]**

No one or more of these factors is dispositive.  Rather, you must make your decision whether the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the content of this invention and the state of the art at the time of the priority date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the novel aspects of the claimed invention.

**[Ingevity's Proposal: Enablement does not require the specification to foresee every means of implementing an invention.  Nor does the specification need to enable the accused**

24

product, technologies that arose after the patent was filed, or limitations tangential to the invention.]

[**BASF's Proposal**:  The enablement requirement is not limited to the novel aspect of the invention.  Although enablement does not require that the specification foresee every means of implementing an invention, the full scope of the Asserted Claims must be enabled. For example, when claims include an open-ended range, the specification must teach a person of ordinary skill in the art to fully perform the claims across that entire range.]

### Source

Proposed Final Jury Instruction 5.8, *Bayer Healthcare LLC v. Baxalta Inc.*, C.A. No. 16-01122 (RGA) (D. Del. Jan. 31, 2019); Transcript (including Final Jury Instructions), *Bayer Healthcare LLC v. Baxalta Inc.*, C.A. No. 16-01122 (RGA) (D. Del. Aug. 5, 2019); Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 4.2b); 35 U.S.C. § 112(a); Pre-AIA 35 U.S.C. § 112, ¶ 1; *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149 (Fed. Cir. 2019); *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338 (Fed. Cir. 2014), *rev'd and remanded on other grounds*, 137 S. Ct. 734 (2017); *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013) ("The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be 'unduly extensive.'") (quoting *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004) and *PPG Indus.,Inc. v. Guardian Indus., Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996)); *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1338 (Fed. Cir. 2013); *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012) (requiring that the specification "must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation"); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("'The scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[ ] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims.'") (quoting *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999)); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283, 1285 (Fed. Cir. 2007) (full scope of claimed invention must be enabled)("[T]he rule that a specification need not disclose what is well known in the art is 'merely a rule of supplementation, not a substitute for basic enabling disclosure.'") (affirming summary judgment of non-enablement, where the specification failed to enable both types of electronic sensors covered by the claims and, therefore, failed to enable "the full scope of the claims"); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (enabling the full scope of each claim is "part of the quid pro quo of the patent bargain" and suggesting express teaching against later-claimed embodiment may also be relevant); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (factors for determining

undue experimentation); *Invitrogen Corp. v. Clontech Labs. Inc.*, 429 F.3d 1052, 1070-71 (Fed. Cir. 2005) ("Enablement does not require the inventor to foresee every means of implementing an invention at pains of losing his patent franchise.") ("The specification must teach those of skill in the art how to make and how to use the invention as broadly as it is claimed."); *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001) ("The dispositive question of enablement does not turn on whether the accused product is enabled."); *Chiron Corp v. Genentech, Inc.*, 363 F.3d 1247, 1253-54 (Fed. Cir. 2004) ("The law does not expect an applicant to disclose knowledge invented or developed after the filing date."); *Delaware Display Grp. LLC v. Vizio, Inc.*, 2017 WL 784988, at *4-6 (D. Del. Mar. 1, 2007)(acknowledging that where a limitation is conventional, it is appropriate "to supplement the specification on how to use [the limitation] with the knowledge of one skilled in the art"). *Automative Technologies* is distinguishable because the enablement issue there related to the novel aspect of the patent, not to a tangential limitation."); *McRO, Inc. v. Bandai Namco Games America Inc.*, 959 F.3d 1091, 1102 (Fed. Cir. 2020) ("Because this process is the novel aspect of the claimed invention, the specification must reasonably teach how to make and use this aspect of the invention.").

**5.4**

**[INGEVITY'S PROPOSAL: WRITTEN DESCRIPTION**

The patent law contains another requirement for the specification called the written description requirement. BASF contends that the Asserted Claims of the '844 Patent are invalid because the specification of the patent does not contain an adequate written description of the claimed invention. BASF must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the claimed invention.

In deciding whether the specification satisfies the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.

The written description requirement is satisfied if a person having ordinary skill in the art at the time of the priority date—here, November 21, 2001—would have recognized, from reading the patent specification, that the inventor described the invention on or before the priority date.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. The

specification is not required to expressly include what is well-known to a person of ordinary skill in the art at the priority date.  The level of required disclosure depends on a variety of factors, such as the existing knowledge in the particular field, the scope and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.  Under the doctrine of inherent disclosure, when a specification describes an invention that has certain undisclosed yet inherent properties, those inherent properties may be relied upon for written description support.  To be inherent, the feature that is alleged to have been inherent must necessarily have existed in the specification.  The fact that the feature is likely to have existed is not sufficient.  It is not required, however, that persons of ordinary skill recognize or appreciate the inherent disclosure at the time the November 21, 2001 application was filed.  The written description requirement does not demand either examples or an actual reduction to practice.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s).  However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.  A patent is not required to describe in the specification every conceivable and possible future embodiment of the invention.]


**[BASF'S PROPOSAL: LACK OF WRITTEN DESCRIPTION**

The patent law contains another requirement for the specification called the written description requirement.  BASF contends that the Asserted Claims of the '844 Patent are invalid

because the specification of the patent does not contain an adequate written description of the claimed invention. BASF has the burden of establishing a lack of written description by clear and convincing evidence.

In deciding whether the specification satisfies the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.

The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail. When determining whether the specification discloses the invention, the claim must be viewed as a whole. The written description requirement is satisfied if a person having ordinary skill in the art at the time of the priority date—here, November 21, 2001—would have recognized, from reading the patent specification, that the inventor possessed the full scope of the invention on or before the priority date.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. The specification is not required to expressly include what is well-known to a person of ordinary skill in the art at the priority date. The level of required disclosure depends on a variety of factors, such as the nature and scope of the patent claims, the existing knowledge in the particular field, the scope and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter. The written description requirement does not demand either examples or an actual reduction to practice.

The written description does not have to be in the exact words of the claim. Nor is a patent required to describe in the specification every conceivable and possible future embodiment of the invention.]

**Source**

Joint Proposed Final Jury Instruction 5.4, *In re Chanbond, LLC*, C.A. No. 15-00842 (RGA) (D. Del. June 30, 2020); Proposed Final Jury Instruction 5.7, *Bayer Healthcare LLC v. Baxalta Inc.*, C.A. No. 16-01122 (RGA) (D. Del. Dec. 21, 2018); Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 4.2a); 35 U.S.C. § 112(a); Pre-AIA 35 U.S.C. § 112, ¶ 1; *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373-79 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 787 (2019); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014); *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349-51 (Fed. Cir. 2013); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1287 (Fed. Cir. 2012); *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352-53 (Fed. Cir. 2010) (en banc) ("Requiring a written description of the invention plays a vital role in curtailing claims that do not require undue experimentation to make and use, and thus satisfy enablement, but that have not been invented, and thus cannot be described.") ("While the description requirement does not demand any particular form of disclosure, or that the specification recite the claimed invention *in haec verba,* a description that merely renders the invention obvious does not satisfy the requirement." (internal citations omitted)); *PowerOasis, Inc. v. T-MOBILE USA, INC*., 522 F. 3d 1299, 1306 (Fed. Cir. 2008); *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) ("In order for a disclosure to be inherent, however, the missing descriptive matter must necessarily be present in the parent application's specification such that one skilled in the art would recognize such a disclosure."); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996); *Cordis Corp. v. Medtronics AVE, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003).

## 5.5    PRIOR ART

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art."

**Source**

Final Jury Instruction 5.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

### 5.5.1    PRIOR ART AT ISSUE [DISPUTED]

[**Ingevity's Proposal**:

BASF contends that there is prior art that invalidates Ingevity's patent.  The parties agree that the Park patent is prior art.  You must determine whether all of the remaining work on which BASF relies upon is prior art that can be considered in determining whether the Asserted Claims of the '844 patent are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

BASF contends that the Meiller patent is prior art because it was filed before November 21, 2001 and issued as a patent.

BASF contends that Westvaco and its customers' canister systems together are prior art because they were publicly known to or used by others in the United States before November 21, 2001, which is the effective filing date of the application for the '844 Patent. An invention is publicly known by others when the information about it was reasonably accessible to the public on that date through efforts that do not involve the inventors.

BASF contends that Westvaco and its customers' canister systems together is also prior art because it was publicly used in the United States more than one year before November 21, 2001, which is the effective filing date of the application for the '844 Patent.  An invention was publicly used when it was either accessible to the public or commercially exploited.

BASF contends that a group of three employees of Delphi – Thomas Meiller, Charles Covert, and Susan LaBine – invented the claims of the '844 Patent before the Ingevity team of Laurence Hiltzik, Jacek Jagiello, Edward Don Tolles, and Roger Williams, and that the Delphi team of Thomas Meiller, Charles Covert, and Susan LaBine did not abandon, suppress, or conceal the invention.  I will explain the requirements for prior invention in a moment but to be a prior inventor, the group must have appreciated the invention actually claimed. For other persons to have "invented" or "made" the claimed invention before the Ingevity/Hiltzik team of '844 Patent inventors, the other persons must have either (1) reduced the claimed invention to practice before November 21, 2001 and appreciated their invention before then or (2) conceived of the claimed invention before '844 Patent inventors and exercised diligence in reducing it to practice starting just before the named inventor's conception date.  An invention is "made" by another only if the other purported inventors appreciated the invention.  Conception or reduction to practice of an invention "require[s] more than unrecognized accidental creation"; it "requires that the inventor appreciate that which he has invented." A purported inventor must be able to meet the statutory requirements to qualify for a patent, including providing an enabling disclosure.

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day.  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception of an invention is complete when the idea is so clearly defined in the

inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person.  But there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.  A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention and when the inventors appreciated the claimed invention.

BASF contends that the claims are invalid because the Ingevity inventors derived their invention from the Delphi team of Thomas Meiller, Charles Covert, and Susan LaBine.

BASF must prove by clear and convincing evidence that all of the alleged prior art actually qualifies as prior art under the law.]

[**BASF's Proposal**:

BASF contends that the claims of the '844 Patent are anticipated and rendered obvious by prior art. Prior art includes any of the following items:

1. Patents that issued more than one year before the effective filing date of the '844 patent;

2. Patents that issued before the date of the invention of the '844 patent; or

3. **Patents issued on applications that were filed before the date of the invention of the '844 patent;**

4. **Publications having a publication date more than one year before the effective filing date of the '844 patent;**

5. **Publications having a publication date before the date of the invention of the '844 patent;**

6. **Anything being used by the public or on sale in the United States more than one year before the effective filing date of the '844 Patent; or**

7. **Anything that was known or used by others in the United States before the date of invention of the '844 patent.**

The parties agree that the effective filing date for the '844 Patent is November 21, 2001.

You must determine whether the prior art qualifies as prior art that can be considered in determining whether the Asserted Claims of the '844 patent are anticipated or obvious.

Ingevity has the burden of producing evidence to establish a date of invention for the '844 patent that is earlier than November 21, 2001.  BASF has the burden of establishing that prior art qualifies as prior art by clear and convincing evidence.]

### Source

Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 4.3a-2); Final Jury Instruction 4.2, *St. Jude Medical Cardiology Division, Inc. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012); Final Jury Instruction III(1), *Sonos, Inc. v. D&M Holdings Inc.*, C.A. No. 14-1330-WCB (D. Del. Dec. 15, 2017); Pre-AIA 35 U.S.C. § 102(a)-(g); Pre-AIA 35 U.S.C. § 103(c); *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628 (2019); *Teva Pharm. Indus. v. AstraZeneca Pharms.*, 661 F.3d 1378 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Int'l Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010); *In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317 (Fed. Cir. 2009); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186 (Fed. Cir. 2008); *Flex- Rest, LLC v.*

*Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983)

Regarding invention date disputes: *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-79 (Fed. Cir. 1996); *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060 (Fed. Cir. 2019); *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004 (Fed. Cir. 2016); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014) ("While defendants bear the burden of persuasion to show that the Brandt references are prior art to the '404 patent by clear and convincing evidence, the patentee nevertheless must meet its burden of production to demonstrate an earlier conception date."); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

Regarding appreciation:  *Heard v. Burton*, 333 F.2d 230, 243-244 (C.C.P.A. 1964); *Silvestri v. Grant*, 496 F.2d 503, 597 (C.C.P.A. 1974); *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1341 (Fed. Cir. 2001); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1063-66, 1074 (Fed. Cir. 2005).

## 5.6    ANTICIPATION [DISPUTED]

For someone to be entitled to a patent, the invention must actually be "new."  BASF contends that all of the Asserted Claims of the '844 patent are invalid because the claimed invention is anticipated and because Ingevity lost the right to obtain a patent.

**[Ingevity's Proposal:**

**BASF must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid.**

Anticipation must be determined on a claim-by-claim basis. BASF must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently, such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention. Under the doctrine of inherent disclosure, the inherent properties must necessarily have existed in the prior art.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.]

[**BASF's Proposal:**

To prove anticipation, BASF must prove by clear and convincing evidence, that the claimed invention in the '844 patent is not new.

Anticipation must be determined on a claim-by-claim basis. To anticipate a claim, each and every element in the claim must be present in a single item of prior art. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently, such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference,

could make and use the claimed invention.  Under the doctrine of inherent disclosure, the inherent properties must necessarily have existed in the prior art.

There is a requirement that apply to the particular categories of anticipation that

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

There are requirements that apply to the particular categories of anticipation that BASF contends apply in this case. I will now instruct you about those.]

**Source**

Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 4.3b-1); Pre-AIA 35 U.S.C. § 102(a)-(g); *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1343 (Fed. Cir. 2018); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); Final Jury Instruction 4.3, *St. Jude Medical Cardiology Division, Inc. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012).

### 5.6.1    [BASF'S PROPOSAL: PRIOR INVENTION BY ANOTHER INVENTOR] [DISPUTED][5]

An Asserted Claim is invalid if the invention defined in that claim was previously invented by another inventor before it was invented by Ingevity.  BASF contends that the invention claimed by the Asserted Claims was previously invented by three Delphi engineers— Thomas Meiller, Charles Covert, and Susan LaBine.  To prove prior invention of a particular claim, BASF must prove by clear and convincing evidence that another inventor either previously reduced the invention to practice, or previously conceived of the invention and then exercised reasonable diligence in reducing the invention to practice.

---

[5]  It is Ingevity's position that this instruction is not necessary because this ground of invalidity is already covered in 5.5.1 and many jury instructions do not give this level of detail about each ground of invalidity because it confuses the jury.  As such, Ingevity's position is that this instruction should not be read to the jury.

A prior inventor has reduced an invention to practice when that inventor has (1) constructed an embodiment or performed a process that meets all of the claim limitations; and (2) determined that the invention worked for its intended purpose. The inventor does not need to know everything about how or why his or her invention worked, and the inventor does not need to conceive of the invention using the same words as Ingevity later used to claim it. In determining whether an inventor was diligent in reducing the conceived of invention to practice, you may consider inventor testimony, preparation of patent applications or other records describing the prior invention, or activity by the inventor to obtain necessary supplies for manufacturing.

**Source**

*Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001); *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1384-85 (Fed. Cir. 2011) ("[P]rior inventor does not need to know everything about how or why its invention worked. Nor must it conceive of its invention using the same words as the patentee would later use to claim it."); *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001); *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1341 (Fed. Cir. 2001); *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312 (Fed. Cir. 2011); *Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006) (diligence may be shown by variety of activities, including inventor testimony, preparation of patent applications or other records describing the invention, or activity to obtain necessary supplies for manufacturing).

### 5.6.2   [BASF'S PROPOSAL: PRIOR KNOWLEDGE OR USE] [DISPUTED][6]

An Asserted Claim is invalid if the invention defined in that claim was publicly known or used by others in the United States before it was invented by Ingevity. To prove public knowledge or use of a particular claim, BASF must prove by clear and convincing evidence that

---

[6] It is Ingevity's position that this instruction is not necessary because this ground of invalidity is already covered in 5.5.1 and many jury instructions do not give this level of detail about each ground of invalidity because it confuses the jury. As such, Ingevity's position is that this instruction should not be read to the jury.

a publicly known or publicly used invention in the United States met all of the elements of the Asserted Claim.

For an invention to be publicly known or used, knowledge or use of the invention must be publicly accessible to those skilled in the art. While the knowledge or use must be public, it is not required to be published or widespread. The invention need not be reduced to practice, but the public knowledge of the invention must teach one of ordinary skill in the art how to make or carry out the invention without undue experimentation.

**Source**

Final Jury Instruction 4.4, *St. Jude Medical Cardiology Division, Inc. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002), reh'g and reh'g en banc denied, (Nov. 4, 2002) and cert. dismissed, 123 S. Ct. 1779 (U.S. 2003); *Oak Industries, Inc. v. Zenith Electronics Corp.*, 726 F. Supp. 1525, 1537 (N.D. Ill. 1989).

### 5.6.3   [BASF'S PROPOSAL: PUBLIC USE] [DISPUTED][7]

An Asserted Claim is invalid if the invention defined in that claim was publicly used in the United States before it was invented by Ingevity or more than one year before the effective filing date of the '844 patent—which is November 21, 2001. To prove prior use of a particular claim, BASF must prove by clear and convincing evidence that a product was publicly used, and that the product met all of the elements of the Asserted Claim.

An invention is publicly used if it is used by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. A decision on whether there has been a public use should be made upon consideration of the entire surrounding circumstances, including, for example, whether payment was made for the device, the length of the test period,

---

[7] It is Ingevity's position that this instruction is not necessary because this ground of invalidity is already covered in 5.5.1 and many jury instructions do not give this level of detail about each ground of invalidity because it confuses the jury. As such, Ingevity's position is that this instruction should not be read to the jury.

and whether the user agreed to use the device secretly. The absence of affirmative steps to conceal is evidence of a public use.

**Source**

Final Jury Instruction 4.5, *St. Jude Medical Cardiology Division, Inc. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012).

**5.7    OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. BASF contends that the Asserted Claims of the '844 Patent are invalid for obviousness. BASF must prove that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider: (1) the scope and content of the prior art, (2) the level of ordinary skill in the pertinent art, and (3) the differences between the claimed invention and the prior art.

**5.7.1    SCOPE AND CONTENT OF THE PRIOR ART**

To determine the scope and content of the prior art, you must determine what prior art is reasonably pertinent to the particular problems with which the inventors were faced. The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art. The prior art includes all of the categories I already listed.

**Source**

Final Jury Instruction 4.6.1, *St. Jude Medical Cardiology Division, Inc. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012).

### 5.7.2   LEVEL OF ORDINARY SKILL IN THE ART

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

The next factor that you must consider is the differences, if any, between the prior art and the claimed inventions.  Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The motivation to modify the prior art to arrive at the claimed invention need not be explicitly stated in the prior art to be combined nor the same motivation that the inventor had.

In deciding the obviousness question, you may take into account such factors as:

a.    Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

b.    Whether the claimed invention provides an obvious solution to a known problem in the field of adsorbent systems;

c.    Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

d.    Whether the prior art teaches away from combining elements in the claimed invention; and

e.    Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

In determining whether the claimed invention was obvious, consider each claim separately.  Do not use hindsight, i.e. consider only what was known at the time of the invention.

**<u>Source</u>**

Final Jury Instruction 5.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019); Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 4.3c); Final Jury Instruction 4.7, *St. Jude Medical Cardiology Division, Inc. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012).

### 5.7.3    SECONDARY CONSIDERATIONS [DISPUTED]

In making obviousness determinations, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as: whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities); whether the claimed invention satisfied a long-felt need; whether others had tried and failed to make the claimed invention; whether others copied the claimed invention; whether the claimed invention achieved unexpected results; whether others in the field praised the claimed invention; whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; whether others sought or obtained rights to the patent from the patent holder; and whether the inventor proceeded contrary to accepted wisdom in the field.

Finding secondary considerations may suggest that the claim was not obvious.  **[<u>BASF's Proposal</u>: However, there must be a connection between the evidence showing any of these factors and the claimed inventions if this evidence is to be given weight by you in arriving at**

your conclusion on the obviousness issue.  **For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the products other than those claimed in the patents in suit, then any commercial success may have no relation to the issue of obviousness.]**

<u>**Source**</u>

Final Jury Instruction 5.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019); Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 4.3c); Final Jury Instruction 4.7.2, *St. Jude Medical Cardiology Division, Inc. v. Volcano Corporation*, C.A. No. 10-631-RGA (D. Del. Oct. 19, 2012).

## 5.8    INVENTORSHIP

A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement. In this case, BASF contends that the '844 patent is invalid because of improper inventorship because Thomas Meiller, Charles Covert, and Susan LaBine should have been named as inventors.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent even if that claim has not been alleged to be infringed. Whether the contribution is significant in quality is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they

must have some open line of communication during or at approximately the time of their inventive effort.

**Source**

Federal Circuit Bar Association Model Jury Instruction (May 2020) (Section 4.3d);35 U.S.C. §§ 102, 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid.") and *id.* at 1351 (setting forth framework for determining joint inventorship); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997) (applying "clear and convincing evidence" standard to inventorship claims and finding plaintiff who offered suggestions to named inventors was not an inventor); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

## 5.9    DERIVATION [DISPUTED]

**[Ingevity's Proposal:**

To prove derivation under § 102(f), BASF must prove by clear and convincing evidence that the Delphi team of Thomas Meiller, Charles Covert, and Susan LaBine conceived of the invention and communicated that conception to Ingevity.

Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice. BASF must prove that Thomas Meiller, Charles Covert, and Susan LaBine conceived of all the limitations of the claimed invention. BASF must prove conception with corroborating evidence of a contemporaneous disclosure by the Delphi team to Ingevity that would enable one skilled in the art to make the invention; testimony from Thomas Meiller, Charles Covert, and Susan LaBine is not sufficient by itself.

To prove that Thomas Meiller, Charles Covert, and Susan LaBine communicated their conception to Ingevity, BASF must prove that Thomas Meiller, Charles Covert, and Susan LaBine's communication was sufficient to enable one of ordinary skill in the art to

make the patented invention.  The communication must address the entire conception; it is insufficient for the communication to make the invention obvious to one of ordinary skill in the art.  If the communication at issue does not disclose one of the limitations of the claimed invention, it cannot serve as the basis for a communication of that idea and thus cannot support a finding of communication of the conception.  If BASF's evidence shows conception and communication of an idea different from the claimed invention, even where that idea would make the claimed idea obvious, then BASF has not satisfied its burden of proving that Ingevity derived the invention from Thomas Meiller, Charles Covert, and Susan LaBine. BASF must prove communication of the conception with corroborating evidence; an inventor's testimony respecting the facts surrounding a claim of derivation cannot, standing alone, rise to the level of clear and convincing proof.]

[**BASF's Proposal:**

A patent claim is invalid if the named inventors on the patent did not actually invent the subject matter of the claim, but rather derived it from another.  BASF contends that the inventors named on the '844 patent did not actually invent the claimed invention, but rather derived the claimed invention from three engineers at Delphi—Thomas Meiller, Charles Covert, and Susan LaBine.  To prove derivation under § 102(f), BASF must prove by clear and convincing evidence that Thomas Meiller, Charles Covert, and Susan LaBine conceived of the invention and communicated that conception to Ingevity.

Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice. As I have previously explained, the inventor does not need to know everything about how or why his or her invention worked, and the inventor does not need to conceive of the invention using

the same words as Ingevity later used to claim it. BASF must prove conception with corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention; testimony from Thomas Meiller, Charles Covert, and Susan LaBine is not sufficient by itself. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. Conception must include every feature or limitation of the claimed invention.

To prove that Thomas Meiller, Charles Covert, and Susan LaBine communicated their conception to Ingevity, BASF must prove that Thomas Meiller, Charles Covert, and Susan LaBine's communication was sufficient to enable one of ordinary skill in the art to make the patented invention. The communication must be sufficient to enable one of ordinary skill in the art to make the patented invention; it is insufficient for the communication to make the invention obvious to one of ordinary skill in the art. BASF must prove communication of the conception with corroborating evidence; an inventor's testimony respecting the facts surrounding a claim of derivation cannot, standing alone, rise to the level of clear and convincing proof.]

### Source

*Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017) ("The conception requirement of derivation borrows from the conception standard for prior invention."); *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1313 (Fed. Cir. 2011); *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) ("The communication must be sufficient to enable one of ordinary skill in the art to make the patented invention."); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1577 (Fed. Cir. 1997) ("The Supreme Court announced the standard for finding communication of a prior conception over 125 years ago in Agawam Woolen v. Jordan, 74 U.S. (7 Wall.) 583, 19 L.Ed. 177 (1868). The Court required a showing that the communication 'enabled an ordinary mechanic, without the exercise of any ingenuity and special skill on his part, to construct and put the improvement in successful operation.'"); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

*Final Jury Instruction 5.2A, W.L. Gore & Associates, Inc. v. C.R. Bard, Inc.,* C.A. No. 11-515-LPS-CJB (D. Del. Mar. 7, 2017); *Mycogen Plant Sci. v. Monsanto Co.,* 243 F.3d 1316, 1332 (Fed. Cir. 2001); *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP,* 661 F.3d 1378, 1384-85 (Fed. Cir. 2011) ("[P]rior inventor does not need to know everything about how or why its invention worked. Nor must it conceive of its invention using the same words as the patentee would later use to claim it.").

## 6.    DAMAGES

## 6.1    DAMAGES — GENERALLY

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue.

The damages you award must be adequate to compensate Ingevity for the infringement. They are not meant to punish an infringer.  Your damages awards, if you reach this issue, should put Ingevity in approximately the same financial position that it would have been in had the infringement not occurred.

Ingevity has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Ingevity establishes that it more likely than not suffered.  While Ingevity is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Ingevity may be entitled to recover.  In this case, Ingevity seeks a reasonable royalty.  A reasonable royalty is defined as the amount of money a patent holder and an alleged infringer would have agreed upon as a fee for use of the invention if they had negotiated about it before the infringement first began.  I will give you more detailed instructions regarding damages shortly.

If you find that any of Asserted Claims is valid and infringed, then you must determine the damages to which Ingevity is entitled for BASF's infringement.  If you find that the Asserted Claims of the '844 Patent are invalid, then Ingevity is not entitled to any damages.  If you find that BASF has not infringed any valid claim of the '844 Patent, then Ingevity is not entitled to any damages.

**Source**

Final Jury Instruction 6.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

### 6.1.1    CALCULATING DAMAGES IN CASES OF INDUCEMENT OR CONTRIBUTORY INFRINGEMENT

In order to recover damages for induced infringement, Ingevity must either prove that the allegedly infringing product necessarily infringes the Asserted Patent or prove acts of direct infringement by others that were induced by BASF.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Ingevity must further prove the number of direct acts of infringement of the Asserted Patent, for example, by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

In order to recover damages for contributory infringement, Ingevity must either prove that the allegedly infringing product necessarily infringes the Asserted Patent or prove acts of direct infringement by others to which BASF made a substantial contribution.  Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, Ingevity must further prove the number of direct acts of infringement of the Asserted Patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

**Source**

Final Jury Instruction 6.1.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 6.2    REASONABLE ROYALTY — ENTITLEMENT

If you find that Plaintiffs have established infringement, Plaintiffs are entitled to at least a reasonable royalty to compensate it for that infringement.

**Source**

Final Jury Instruction 6.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

### 6.2.1    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

A royalty is a payment made to a patent holder in exchange for the right to make or use the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and

unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of a royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

**Source**

Final Jury Instruction 6.2.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

### 6.2.2    FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)    The rates paid by the licensee for the use of other patents comparable to the patents in suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly

(5)    The commercial relationship between Ingevity and BASF, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)    The duration of the patent and the term of the license.

(8)    The established profitability of the products made under the patents, its commercial success, and its current popularity.

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of a commercial embodiment of it, if any, as owned and produced by Ingevity, and the benefits to those who have used the invention.

(11)    The extent to which BASF has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion testimony of qualified experts.

(15)    The amount that a licensor (such as the owner of the patent rights) and a licensee (such as BASF) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty BASF would have been willing to pay and Ingevity would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between Ingevity and BASF taking place at a time prior to when the infringement began.

**<u>Source</u>**

Final Jury Instruction 6.2.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

**6.3    DATE OF COMMENCEMENT OF CLAIMED DAMAGES**

If you find that Plaintiffs are entitled to damages, the date that damages would begin to be calculated in this case for the '844 Patent is September of 2017.

**Source**

Final Jury Instruction 6.3, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

**7.    DELIBERATION AND VERDICT**

**7.1    DELIBERATION AND VERDICT — INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages: Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**Source**

Final Jury Instruction 7.1, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans. You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

### Source

Final Jury Instruction 7.2, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 7.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your

fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**<u>Source</u>**

Final Jury Instruction 7.3, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

## 7.4    SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

**<u>Source</u>**

Final Jury Instruction 7.4, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).

**7.5     COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

**<u>Source</u>**

Final Jury Instruction 7.5, *Alarm.com, Inc. v. Securenet Techs.*, LLC, C.A. No. 1:15-cv-00807-RGA-CJB (D. Del. Feb. 7, 2019).