IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGEVITY CORPORATION, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 18-1391-RGA |
| | : | |
| BASF CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**ORDER ON MOTIONS IN LIMINE**

Plaintiff's motion (D.I. 353) seeks to exclude evidence relating to ITC and EPO proceedings. The motion mostly seeks to exclude the evidence as irrelevant to infringement and invalidity, which it is. Defendant, however, does not seek to offer it for those purposes. Rather, it wants to offer evidence of rulings on invalidity to rebut willfulness. And it wants to introduce "Ingevity's statements" as admissions. On the first point, relating to the ITC and EPO, Defendant states that the decisions, even if they are not final, support the reasonableness of the belief that the asserted patent was invalid.[1] In reply, Plaintiff states that nothing that has happened subsequent to some date in "2017 or earlier" when Defendant first began to infringe is relevant to the willfulness question.

I cannot decide the first dispute on the present record. I need the full picture of what the willfulness evidence is. And, I am not so sure that Plaintiff can limit the willfulness evidence only to what preceded Defendant's first infringing activities. *See SRI Int'l, Inc. v. Cisco Syss,*

---

[1] Defendant also mentions my denial of Plaintiff's request for a preliminary injunction, but does not suggest that it wants to introduce that decision.

*Inc.*, 930 F.3d 1295, 1308-11 (Fed. Cir. 2019), *cert. den.*, 140 S.Ct. 1008 (2020) (discussing post-first infringement evidence, including conduct during litigation). The "challenged conduct" may have started in "2017 or earlier," but it is possible that it continues to this day, even if BASF is not making any sales.[2]

On the second point, it is not entirely clear what the parties are arguing about, as Plaintiff's reply is not helpful. But a blanket limiting of the admissibility of statements of a party-opponent is not warranted.

Thus, the motion in limine is DISMISSED without prejudice as to the first issue and DENIED as to the second issue.

Plaintiff's second motion (D.I. 355) concerns statements made by Ingevity to the EPO to the effect that the patent-in-suit "does not disclose" "'the use of an adsorbent in the "subsequent" canister with a BWC of less than 3 g/dL' or an equivalent IAC." BASF says it is admissible for two reasons. One, non-infringement, and, two, enablement and written description invalidity challenges. On the first, BASF is wrong. Questions of scope are claim construction issues, and not issues to be presented to the jury. On the second, BASF has a chain of inferences that lead to the conclusion that a statement about BWC applies to IAC. I would think it is a matter of black and white whether or not the specification of the patent-in-suit has examples involving less than 3 g/dL, and thus I wonder why there needs to be any reference to what Ingevity told the EPO, which may be completely unnecessary and therefore properly excludable under Rule 403. I will hear from the parties on this at the pretrial conference, but unless BASF persuades me there is some need for this evidence, I intend to grant the motion.

---

[2] In a different motion, BASF says it "has made no sales of the accused honeycombs" during the pendency of the lawsuit. (D.I. 365 at 2 of 12). Ingevity appears to accept that as the current state of affairs.

Plaintiff's third motion (D.I. 358) involves Ingevity's assertion that some evidence should be excluded as being irrelevant and unfairly prejudicial to Ingevity as it only involves wrongful or unethical conduct. The parties agree that BASF can point out which prior art was not before the PTO. BASF is not going to suggest that there was any misconduct relating to the PTO not having the prior art. BASF is not going to refer to Ingevity as a monopolist, or otherwise use language or introduce evidence to suggest antitrust violations. BASF says it has a derivation defense. (Ingevity does not oppose evidence of this.). BASF says it has letters from third parties saying that they do not know how to determine "incremental adsorption capacity" ("IAC"). BASF says the letters are hearsay, and from "potential infringers" more than a decade after the patent-in-suit's priority date. The briefing on this point is too cursory to permit an informed decision. BASF says Ingevity will introduce license agreements that had excessive royalty rates because Ingevity wanted to penalize its customers who bought carbon adsorbents from other suppliers. Ingevity says BASF's damages expert does not address this. In any event, I do not understand how BASF's desire to get a high royalty rate (whether it is to punish or to maximize profit) is relevant, and certainly introducing Ingevity's desire to punish is inflammatory and prejudicial such that whatever marginal probative value that would have is substantially outweighed by the risk of unfair prejudice to Ingevity. *See* Fed. R. Evid. 403. Thus, on the only two disputed points, the motion is DISMISSED on the indefiniteness point and GRANTED on the damages point.

Defendant's first motion (D.I. 360) concerns testimony about honeycombs before the conception and reduction to practice date Ingevity asserts for the patent-in-suit, which is August 17, 2001. Honeycombs are separate from the invention of the patent-in-suit. It is unclear to me why the parties are arguing about this, including what the legal framework is that makes the

conception of something that is not the invention relevant.  The parties should be prepared to discuss this at the pretrial conference.[3]

Defendant's second motion (D.I. 362) is to preclude Ingevity from offering evidence that it had an activated carbon honeycomb having a butane working capacity of 7.5 g/dL before November 21, 2001.  BASF says the only basis for this conclusion is an anomalous entry on a Westvaco spreadsheet that is hearsay.  Ingevity points out, correctly I think, that whether the entry is an error or not is not something I can resolve on a motion in limine – that's an issue for the jury.  BASF does not respond to Ingevity's hearsay theory that this document, which has metadata showing it was created in 2000, is an "ancient document."  *See* Fed. R. Evid. 803(16).  The document will be twenty years old by the time of trial and the metadata, I expect, will establish its authenticity.  Defendant's second motion is DENIED.

Defendant's third motion (D.I. 365) relates to damages. BASF says it has made no sales of the accused infringing product – the EvapTrap XC.  Ingevity says assuming that BASF makes no sales before trial, it will not present evidence to support a damages claim based on "lost profits, price erosion, or lost market share."  (*Id*. at 5 of 12).  Apparently, Ingevity's damages claim is limited to a reasonable royalty for testing, that is, $400,000.  (D.I. 366-1 at 41 of 783).  I decline to exclude the opinion simply on the basis that it was not disclosed in an interrogatory response.  Nor is a motion in limine the place to challenge the thoroughness of Plaintiff's expert's opinion.  To the extent Plaintiff calls witnesses to introduce factual evidence about anything that might be reasonable to the calculation of a reasonable royalty, Plaintiff will be

---

[3] I think I understand the hearsay issue.  Dr. Beckler can't say, Tolles told me in 1999 that he had this x, y, z idea in 1998 to prove that he had the idea in 1998.  But Dr. Beckler can say, Tolles told me on March 1, 1999, that his idea was x, y, z to prove that he had the idea on March 1, 1999.

permitted to do so.  The fact that the same evidence might also be "irreparable harm" evidence does not matter.  Defendant's third motion is DENIED.

    IT IS SO ORDERED this 26th day of August 2020.

                                                                                      /s/ Richard G. Andrews
                                                                                      United States District Judge