IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| INGEVITY CORPORATION, INGEVITY SOUTH CAROLINA, LLC,<br><br>　　　　　　　　　　　Plaintiffs;<br><br>　　　v.<br><br>BASF CORPORATION,<br><br>　　　　　　　　　　　Defendant. | Civil Action No. 18-cv-1391-RGA |

MEMORANDUM OPINION

Karen E. Keller, Jeffrey T. Castellano, SHAW KELLER LLP, Wilmington, DE; Brian M. Buroker, GIBSON, DUNN & CRUTCHER LLP, Washington, DC; Eric T. Syu, Frank P. Coté, GIBSON, DUNN & CRUTCHER LLP, Irvine, CA; Stuart Rosenberg, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, CA.

Attorneys for Plaintiffs.

Rodger D. Smith II, Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Angela C. Tarasi, Brian Eutermoser, Mikaela Stone, KING & SPALDING LLP, Denver, CO; Bobby R. Burchfield, Christopher C. Yook, Norm A. Armstrong, KING & SPALDING LLP, Washington, DC; James P. Brogan, Thomas J. Friel, Jr., KING & SPALDING LLP, Palo Alto, CA.

Attorneys for Defendant.

November 17, 2020

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court are Defendant's Motion for Summary Judgment (D.I. 289) and Plaintiffs' Motion for Summary Judgment (D.I. 291). The motions are fully briefed. (D.I. 290, 293, 305, 309, 317, 320). I heard oral argument on October 26, 2020. (D.I. 417).

## I.  BACKGROUND

Plaintiffs Ingevity Corporation and Ingevity South Carolina, LLC filed suit against Defendant BASF Corporation asserting infringement of U.S. Patent No. RE38,844 ("the '844 patent"). (D.I. 1 at 5-8). The '844 patent discloses a "method for sharply reducing diurnal breathing loss emissions from automotive evaporative emissions control systems by providing multiple layers, or stages, of adsorbents." (D.I. 1, Exh. A at 2 of 13). Specifically, the '844 patent claims "[a] method for reducing fuel vapor emissions in automotive evaporative emissions control systems," which requires contacting the fuel vapor with an initial adsorbent volume having an incremental adsorption capacity ("IAC") of greater than 35 g n-butane/L and at least one subsequent adsorbent volume with an IAC less than 35 g n-butane/L. (*Id.* at 11 of 13).

Plaintiffs claim that Defendant is manufacturing, testing, and marketing a new generation of Defendant's product EvapTrap XC, which is a "bleed trap that can be used as part of, or in conjunction with, a fuel vapor canister." (D.I. 1 at 4). Plaintiffs allege that Defendant and its customers and vendors have "performed and are currently performing testing for the New EvapTrap XC in conjunction with a fuel vapor canister." (*Id.*). Plaintiffs claim that Defendant has infringed claims 1, 4, 11, 18, 19, 24, 43, and 48 of the '844 patent by conducting this testing. (*Id.* at 5-6; *see* D.I. 406-1 at 27 of 36).

Defendant filed a motion for summary judgment and to exclude the opinions of Plaintiffs' damages expert. (D.I. 289). Defendant argues for summary judgment on invalidity for indefiniteness, invalidity for lack of written description and failure to enable the invention, invalidity as a third party, Delphi Technologies, was a prior inventor of the invention, and that the patent is unenforceable due to patent misuse. (D.I. 290 at 11, 15, 24). Defendant further asserts that the opinions of Plaintiffs' damages expert should be excluded for being unreliable and moves for summary judgment of no damages. (*Id.* at 31).

Plaintiffs also moved for summary judgment. (D.I. 291). Plaintiffs contend that they are entitled to summary judgment on Defendant's equitable defenses (patent misuse, unclean hands, waiver, implied waiver, and equitable estoppel) and its enablement defense. (D.I. 293). Plaintiffs further argue for summary judgment that EvapTrap XC is not a staple article of commerce. (*Id.* at 29-31). Lastly, Plaintiffs move to exclude the testimony of two of Defendant's expert witnesses, one for unreliability and the other under *Daubert*. (*Id.* at 31, 34-35).

At oral argument, I denied both parties' summary judgment motions on enablement and written description. (D.I. 417 at 79: 7-11). I also denied Defendant's motion for summary judgment on indefiniteness. (*Id.* at 79-80). After oral argument, I denied Plaintiffs' *Daubert* motions to exclude Defendant's expert witnesses' testimony. (D.I. 410). Still pending are Defendant's motion for summary judgment due to prior invention, both parties' motions regarding patent misuse, Plaintiffs' motion for summary judgment that EvapTrap XC is not a staple article of commerce, and Defendant's motion to exclude the opinion of Plaintiffs' expert witness on damages.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

3

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

### III.     PATENT INVALIDITY DUE TO PRIOR INVENTION

Under 35 U.S.C § 102(g)[1], a patent is invalid where another inventor had previously made the invention and did not abandon, suppress, or conceal it. 35 U.S.C. § 102(g). Section 102(g) "ensure[s] that a patent is awarded only to the 'first' inventor in law." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001). A patent challenger can establish prior invention by showing that "(1) it reduced its invention to practice first. . . or (2) it was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001). Priority is a question of law that is based on underlying factual findings. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). Proof of prior invention must be shown by clear and convincing evidence. *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

Defendant argues that the '844 patent is invalid because Delphi Technologies made the invention prior to Plaintiffs. (D.I. 290 at 15). Defendant asserts that there is no genuine dispute that the Delphi inventors were (1) the first to reduce the invention to practice and (2) the first to conceive of the invention and that they exercised diligence in reducing it to practice. (*Id.*). Defendant contends that the Delphi inventors conceived of, made, and tested a prototype of the

---

[1] As the '844 patent was filed before March 16, 2013, the pre-America Invents Act ("AIA") version of 35 U.S.C. § 102 applies.

4

invention, the "Delphi Scrubber," between October 1999 and January 2000, prior to Plaintiffs' conception in August 2001. (*Id.*).

Plaintiffs contend that the Delphi inventors did not conceive of or appreciate the invention disclosed by the '844 patent. (D.I. 309 at 15). Plaintiffs argue that since the Delphi inventors did not understand IAC, they could not have appreciated or conceived of the claimed requirement of a subsequent adsorbent volume with an IAC less than 35 g/L. (*Id.*). Plaintiffs assert that there is a factual dispute as to who conceived of the idea to use a honeycomb scrubber to reduce bleed emissions and when this idea was conceived. (*Id.* at 15-16).

### A. The Delphi Inventors Reduced the Claims of the '844 Patent to Practice Before Plaintiffs.

To demonstrate an actual reduction to practice, the inventor must show that "(1) he constructed an embodiment or performed a process that met all the limitations of the interference count; and (2) he determined that the invention would work for its intended purpose." *Mycogen Plant Sci.*, 243 F.3d at 1332 (quoting *Cooper*, 154 F.3d at 1327).

Defendant argues that the Delphi inventors reduced the claims of the '844 patent to practice first in the form of the Delphi Scrubber. (D.I. 290 at 15). Defendant contends that Tom Meiller, a Delphi senior design engineer, "had the idea to use an activated carbon honeycomb in his pup canister system to capture bleed emissions" during a meeting with Westvaco (Plaintiffs' predecessor) on October 18-19, 1998. (*Id.* at 16). Defendant then describes the Delphi inventors' process of creating a prototype, testing it in fuel canisters, and finding that it worked to reduce bleed emissions. (*Id.* at 15-20). Defendant asserts that the Delphi inventors' testimony and Delphi's Record of Invention ("RoI") show that Delphi had constructed the Delphi Scrubber and established that it worked to reduce bleed emissions by January 10, 2000. (*Id.* at 20). Defendant

5

argues that the claims of the '844 patent were reduced to practice on that date, which precedes Plaintiffs' asserted date of conception of August 2001. (*Id.* at 15, 20).

Plaintiffs, meanwhile, contend that the Delphi inventors did not reduce the claims of the '844 patent to practice first, as the Delphi inventors did not appreciate the IAC or adsorptive qualities of the honeycomb. (D.I. 309 at 17-21). Therefore, in Plaintiffs' view, the Delphi inventors did not appreciate the subject matter claimed by the '844 patent, so the Delphi inventors did not reduce the '844 patent to practice. (*Id.*).

To show reduction to practice, Defendant must first establish that Delphi constructed a prototype that met all the limitations of the '844 patent. *See Mycogen Plant Sci.*, 243 F.3d at 1332. Defendant argues that the Delphi Scrubber met the limitations of the '844 patent, as it had both an initial adsorbent volume having an IAC at 25°C of greater than 35 g n-butane/L and at least one subsequent adsorbent volume having an IAC of less than 35 g n-butane/L. (D.I. 290 at 20-21). Plaintiffs did not dispute this in their briefing. At oral argument, Plaintiffs agreed that the Delphi Scrubber had all the elements and limitations of the '844 patent. (D.I. 417 at 43-44).

Therefore, there is no genuine dispute of fact that the Delphi Scrubber met the limitations of the asserted '844 patent claims. The Delphi inventors used BAX 1100 or BAX 1500 carbon as the initial adsorbent in the Delphi Scrubber. (D.I. 292-3, Exh. 36 at 6, 9 of 298; D.I. 292-1, Exh. 7 at 114 of 256). The IAC of BAX 1100 is 52 g/L and the IAC of BAX 1500 is 80 g/L. (D.I. 1, Exh. A at 10 of 13; D.I. 292-1, Exh. 7 at 114-15 of 256). Regardless of which carbon was used, the IAC of the initial adsorbent volume was greater than 35 g n-butane/L, as claimed by the '844 patent.

The subsequent adsorbent volume in the Delphi Scrubber also met the limitations of the '844 patent. During her September 4, 2019 deposition, Susan LaBine, one of the inventors of the

Delphi Scrubber, opened the original scrubber, removed six honeycombs, and gave one to both Defendant and Plaintiffs for testing. (D.I. 292-3, Exh. 45 at 110 of 298). Defendant's honeycomb was tested by an independent laboratory and Defendant's expert calculated the honeycomb's estimated IAC based on that testing. (*Id.* at 110-17 of 298). The testing and subsequent calculations show that the IAC of the honeycomb used in the Delphi Scrubber is within the range from 14 to 17 g/L. (*Id.* at 116-17 of 298). This range is under the 35 g/L threshold claimed by the '844 patent. (*Id.*; D.I. 1, Exh. A at 11 of 13). Therefore, it is undisputed that the Delphi Scrubber met the limitations of the '844 patent.

Defendant must then show that there is no genuine issue of material fact that the Delphi inventors determined that the Delphi Scrubber would work for its intended purpose. *See Mycogen Plant Sci.*, 243 F.3d at 1332. Reduction to practice only occurs when the inventor determines "that the invention will work for its intended purpose." *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997); *see also Scott v. Finney,* 34 F.3d 1058, 1063 (Fed. Cir. 1994) ("Reduction to practice… require[s]… only a reasonable showing that the invention will work to overcome the problem that it addresses."). It is well-established that "conception and reduction to practice cannot be established nunc pro tunc. There must be contemporaneous recognition and appreciation of the invention represented by the counts." *Breen v. Henshaw*, 472 F.2d 1398, 1401 (C.C.P.A. 1973). When testing is required to establish utility, "there must be recognition and appreciation that the tests were successful for reduction to practice to occur." *Estee Lauder*, 129 F.3d at 594-95.

However, an "inventor need not understand precisely why his invention works in order to achieve an actual reduction to practice." *Parker v. Frilette*, 462 F.2d 544, 547 (C.C.P.A. 1972). In fact, the "prior inventor need not know everything about how or why its invention worked.

7

Nor must it conceive of its invention using the same words as the patentee would later use to claim it." *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1384 (Fed. Cir. 2011). A prior inventor is not required to "establish that he recognized the invention in the same terms as those recited in the count. The invention is not the language of the count but the subject matter thereby defined." *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1341 (Fed. Cir. 2001) (quoting *Silvestri v. Grant*, 496 F.2d 593, 599 (C.C.P.A. 1974)). "The claimed subject matter is not presumed to change as a function of how one elects to measure it." *Teva Pharm. Indus.*, 661 F.3d at 1383 (quoting *In re Kao*, 639 F.3d 1057, 1066 (Fed. Cir. 2011)).

Defendant contends that the Delphi inventors appreciated that the Delphi Scrubber worked to reduce bleed emissions, the intended purpose of the invention, even though the Delphi inventors did not use IAC in describing their invention. (D.I. 290 at 21-22). Defendant argues that the Delphi inventors knew the scrubber's butane working capacity ("BWC"), that the low flow restriction and greater scrubbing efficacy were novel and important features of the invention, and that the use of the Scrubber was to reduce bleed emissions. (*Id.*).

In opposition, Plaintiffs argue that Delphi did not actually reduce the '844 patent claims to practice, as the Delphi inventors did not appreciate the claimed invention. (D.I. 309 at 19). Plaintiffs argue that the Delphi inventors needed to appreciate having a subsequent adsorption volume with an IAC of less than 35 g/L in order to appreciate the invention of the '844 patent. (*Id.* at 20-21).

The parties' dispute centers on whether Delphi needed to know the IAC of the carbon honeycomb in order to appreciate the invention. The Federal Circuit answered a similar question in *Teva Pharmaceuticals*. *See Teva Pharm. Indus.*, 661 F.3d at 1382. There, AstraZeneca created a stable drug, but did not know which component of the drug had the stabilizing effect. *Id.* at

1381. The patentee, Teva, argued that without this knowledge, AstraZeneca could not have appreciated its invention. *Id.* at 1381-82. The Federal Circuit determined that AstraZeneca did not need to understand which component stabilized its drug in order to win a priority dispute. *Id.* at 1382. The Court held that AstraZeneca needed to "appreciate that the compound it asserted as its invention was stable and what the components were." *Id.* at 1385. AstraZeneca, however, "did not need to appreciate which component was responsible for its stabilization." *Id.* As AstraZeneca knew that the drug was stable and what its components were, that was sufficient to show appreciation. *Id.* The Federal Circuit also noted, "when AstraZeneca made the claimed invention first, it did so not by accident and knew what it had made." *Id.*

In *Dow Chemical*, the Federal Circuit found undisputed, clear and convincing evidence that the inventors, employees at Astro-Valcour, had appreciated that they had made isobutane-blown foam. *Dow Chem. Co.*, 267 F.3d at 1341. The Court determined that the inventors were aware that the foam was made with an isobutane blowing agent and a stability control agent, that the witnesses at the time of testing and production were "surprised" and "elated" at the making of the foam, and that the company purchased a license to the patent after the successful testing. *Id.* This evidence led the Court to conclude that the inventors had sufficiently appreciated their invention. *Id.* The Federal Circuit noted that the purchase of a license to the patent eleven days after the first test is evidence of Astro-Valcour's "confidence that its invention would work for its intended purpose." *Id.* The Court found that the inventors "clearly recognized and appreciated the existence of its new process and product." *Id.*

Similarly, in *Mycogen Plant Science,* the Federal Circuit noted that while the evidence of appreciation of each specific claim limitation was not extensive, it was legally satisfactory, in light of the "extensive evidence" that the inventor "performed a process that met all of the

9

limitations of the claims and that the resulting product was successfully tested and appreciated to work for its intended purpose." *Mycogen Plant Sci.*, 243 F.3d at 1337.

In this case, the Delphi inventors knew that the intended purpose of the Delphi Scrubber was to reduce bleed emissions and knew that the invention achieved that purpose. They did not create the claimed invention "by accident and knew what [they] had made." *Teva Pharm. Indus.*, 661 F.3d at 1385. Evidence in the record shows that there is no genuine dispute that the Delphi inventors knew the Delphi Scrubber worked for its intended purpose.

The Delphi inventors submitted the RoI to the Delphi Review Board for an initial evaluation of the Delphi Scrubber. (D.I. 292-3, Exh. 38 at 30 of 298). In the RoI, the invention is titled "Hydrocarbon Bleed Emission Scrubber with Low Restriction" and lists Thomas Meiller, Charles Covert, and Susan LaBine as the inventors. (*Id.* at 30-31 of 298). The RoI states that the invention was first thought of at a "10-18-99 at meeting with Westvaco." (*Id.* at 32 of 298). The inventors signed and dated the RoI on January 10, 2000. (*Id.* at 34 of 298).

In addition to the RoI, Delphi submitted a provisional patent application on March 29, 2000. (D.I. 292-3, Exh. 41 at 58-71 of 298). The provisional patent application states that "the invention relates to an evaporative emission control system employing a hydrocarbon scrubber device utilizing a honeycomb shaped adso[r]ptive media." (*Id.* at 61 of 298). The claimed invention is summarized, "The honeycomb sorbent media hydrocarbon scrubber device described herein, when used in conjunction with a well-designed main canister, will enable the canister's bleed emissions to be reduced…." (*Id.* at 62 of 298).

Delphi filed a patent application on October 26, 2000. (D.I. 292-3, Exh. 42 at 73 of 298). The application issued as U.S. Patent No. 6,896,852, titled "Hydrocarbon Bleed Emission Scrubber with Low Restriction," on May 24, 2005. (*Id.*). Two of the inventors, Mr. Meiller and

10

Ms. LaBine, testified that the issued patent describes the Delphi Scrubber that was disclosed in the RoI. (D.I. 292-3, Exh. 36 at 16 of 298; D.I. 292-1, Exh. 7 at 109 of 256). The RoI, the provisional patent application, and the patent application all show that the Delphi inventors knew that the intended purpose of the Delphi Scrubber was to reduce bleed emissions.

The Delphi inventors also knew that the Delphi Scrubber worked for its intended purpose. The RoI states that the Delphi Scrubber with the honeycomb "has much greater bleed emissions efficiency" than a scrubber made with other material. (D.I. 292-3, Exh. 38 at 33 of 298). The RoI also refers to the Delphi Scrubber's "performance benefits" and its "higher scrubbing efficiency." (*Id.*).

The Delphi inventors' testing results also demonstrate that the inventors appreciated that the Delphi Scrubber worked to reduce bleed emissions. The RoI stated that the prototype had been "tested on fuel tank systems with results as good as the best performing granular bed scrubbers which utilize ten time[s] more carbon and bypass valves." (*Id.*). The inclusion of this information in the RoI is "recognition and appreciation that the tests were successful." *Estee Lauder*, 129 F.3d at 594-95. The RoI shows that the Delphi Scrubber "was successfully tested and appreciated to work for its intended purpose." *Mycogen Plant Sci.*, 243 F.3d at 1337.

The submissions of the RoI, the provisional patent application, and the patent application all evidence the "confidence that [the] invention would work for its intended purpose." *Dow Chem. Co.*, 267 F.3d at 1341. The Delphi inventors' statements about the purpose of the Delphi Scrubber, its successful testing, and the RoI and patent applications all establish that there is no genuine issue of material fact that the Delphi inventors knew that the Delphi Scrubber worked for its intended purpose of reducing bleed emissions.

11

It is undisputed that the Delphi inventors did not know the IAC of the carbon honeycombs. (D.I. 290 at 22; D.I. 309 at 17). However, such knowledge was not necessary for the Delphi inventors to appreciate their invention. In *Teva Pharmaceuticals*, the inventors "did not need to appreciate which component was responsible for [the drug's] stabilization" in order to appreciate the invention. *Teva Pharm. Indus.*, 661 F.3d at 1385. Similarly, the Delphi inventors did not have to appreciate which characteristic of the honeycomb was responsible for reducing bleed emissions in order to appreciate that they created an invention that reduced bleed emissions. The fact that the Delphi inventors knew that the Scrubber worked for its intended purpose, to reduce bleed emissions, was enough. *See id.*

Plaintiffs argue that the Delphi Scrubber, instead of being a prior invention to the invention of the '844 patent, was an unrecognized accidental duplication. (D.I. 417 at 58). In the case of an unrecognized accidental duplication, "the invention exists but remains unrecognized." *Invitrogen Corp. v. Clontech Labs.*, 429 F.3d 1052, 1064 (Fed. Cir. 2005). An "accidental, unappreciated reduction to practice should not constitute a 'true' reduction to practice for the purposes of determining priority of invention or anticipation" under Section 102(g). *Mycogen Plant Sci.*, 243 F.3d at 1336.

However, the Delphi inventors' reduction to practice was not accidental or unrecognized. The Delphi inventors knew that the purpose of the Delphi Scrubber was to reduce bleed emissions and appreciated that it worked for that purpose. (D.I. 292-3, Exh. 38 at 30-31, 33 of 298). Delphi's reduction to practice of the Delphi Scrubber was an intentional effort to create a prototype that functioned to reduce bleed emissions. (*See id.*).

The Federal Circuit has recognized that *Dow Chemical*, *Mycogen Plant Science*, and *Invitrogen* are applications of the same rule: "To establish prior invention, the party asserting it

12

must prove that it appreciated what it had made." *Teva Pharm. Indus.*, 661 F.3d at 1384. In this case, Defendant has shown that there is no genuine issue of material fact that the Delphi inventors appreciated that they had made a scrubber that utilized a honeycomb in a canister to successfully reduce bleed emissions.

As the Delphi inventors constructed an embodiment that met all the '844 patent claim limitations and they knew that the Delphi Scrubber worked for its intended purpose of reducing bleed emissions, they successfully reduced the claims of the '844 patent to practice. This reduction to practice occurred on or before January 10, 2000, which is the date of the submitted RoI, that describes the purpose and success of the prototype. (D.I. 292-3, Exh. 38 at 34 of 298). This date precedes Plaintiffs' asserted conception date of August 2001. (D.I. 292-1, Exh. 27 at 237 of 256).

In proceedings that are now on appeal to the Federal Circuit, the International Trade Commission ("ITC") affirmed an administrative law judge's initial determination finding the '844 patent invalid. (D.I. 292-3, Exh. 47 at 122 of 298). One ground for the invalidity determination was that the '844 patent claims were anticipated by Delphi's prior invention. (*Id.*). The administrative law judge concluded that the Delphi inventors "sufficiently appreciated their invention under 102(g)(2)," despite the Delphi inventors not knowing the IAC values. (*Id.* at 133, 137 of 298). After an independent review of the relevant law and the facts in the record, this Court has reached the same conclusion. The Delphi inventors appreciated their invention and reduced the claims of the '844 patent to practice prior to Plaintiffs' conception.

### B. The Delphi Inventors Did Not Abandon, Suppress, or Conceal Their Invention.

Under Section 102(g), for a prior invention to anticipate a patent, the inventor must not abandon, suppress, or conceal it. 35 U.S.C. § 102(g). There is no genuine dispute that the Delphi inventors did not abandon, suppress, or conceal their invention. The Delphi inventors filed a RoI on January 10, 2000 (D.I. 292-3, Exh. 38 at 34 of 298), a provisional patent application on March 29, 2000 (*Id.*, Exh. 41 at 58 of 298), and a patent application on October 26, 2000. (*Id.*, Exh. 42 at 73 of 298). Plaintiff does not contest these facts. In performing these actions, the Delphi inventors did not suppress, abandon, or conceal their invention.

### IV. CONCLUSION

There is no genuine dispute of material fact that the Delphi Scrubber is a prior invention of the '844 patent claims and Delphi reduced them to practice before Plaintiffs. Therefore, Defendant is granted summary judgment on its affirmative defense of invalidity based on prior invention. As summary judgment is granted on this ground, the Court does not decide the parties' remaining arguments for summary judgment. Plaintiffs' motion for summary judgment is dismissed as moot.