IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INGEVITY CORPORATION and<br>INGEVITY SOUTH CAROLINA, LLC,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BASF CORPORATION,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)  C.A. No. 18-1391 (RGA)<br>)<br>)  **FILED UNDER SEAL**<br>)<br>)<br>)<br>)<br>) |

**PROPOSED PRELIMINARY JURY INSTRUCTIONS**

Pursuant to D. Del. L.R. 51.1(a) and the Court's Order (D.I. 428), the parties submit the attached Joint Proposed Preliminary Jury Instructions. Where there is disagreement, separate proposed instructions are provided. These instructions are also being submitted via email to the Court in Word format.

| | |
|---|---|
| SHAW KELLER LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s/ Nathan Hoeschen* | */s/ Anthony D. Raucci* |
| Karen E. Keller (No. 4489)<br>Jeff Castellano (No. 4837)<br>Nathan Hoeschen (No. 6232)<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>jcastellano@shawkeller.com<br>nhoeschen@shawkeller.com | Rodger D. Smith II (No. 3778)<br>Anthony D. Raucci (No. 5948)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>rsmith@morrisnichols.com<br>araucci@morrisnichols.com |

OF COUNSEL:

Jeffrey T. Thomas
Rod J. Stone
Taylor W. King
Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Dr.
Irvine, CA 92612-4412
(949) 451-3800

Brian M. Buroker
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Rustin K. Mangum
Spencer W. Ririe
MANGUM RIRIE LLP
999 Corporate Dr. #260
Ladera Ranch, CA 92694
(949) 298-5590

*Attorneys for Ingevity Corporation and Ingevity South Carolina, LLC*

OF COUNSEL:

Thomas J. Friel, Jr.
KING & SPALDING LLP
601 California Street, Suite 100
Palo Alto, CA 94304
(650) 422-6741

James P. Brogan
Brian Eutermoser
Angela C. Tarasi
Mikaela Stone
KING & SPALDING LLP
1515 Wynkoop Street, Suite 800
Denver, CO 80202
(720) 535-2300

Norman Armstrong, Jr.
Paul Alessio Mezzina
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

Joseph D. Eng, Jr.
Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100

*Attorneys for BASF Corporation*

August 5, 2021

## TABLE OF CONTENTS

**Page**

1. INTRODUCTION ...................................................................................................1
2. THE NATURE OF THE ACTION AND THE PARTIES ....................................1
3. CONTENTIONS OF THE PARTIES ...................................................................2
4. CONDUCT OF THE JURY ..................................................................................4
5. EVIDENCE.............................................................................................................6
6. EVALUATING A WITNESS ................................................................................8
7. TRIAL PROCEDURE ...........................................................................................9

1.      **INTRODUCTION**[1]

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial. You will hear the evidence, decide what the facts are and then apply those facts to the law that I will give you. You and only you will be the judges of the facts. You will have to decide what happens. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial and I will explain to you the legal principles that must guide you in your decisions. You must follow the law that I give you, whether you agree with it or not.

**Source**

Preliminary Jury Instruction I, *TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 1:15-cv-00121-RGA (D. Del. Oct. 1, 2019).

2.      **THE NATURE OF THE ACTION AND THE PARTIES**

This is an action arising under the **[BASF's Proposal: antitrust laws] [Ingevity's Proposal: antitrust and patent laws]** of the United States and under Delaware common law. The plaintiff is BASF Corporation, which I will refer to as "BASF." The defendants are Ingevity Corporation and Ingevity South Carolina, LLC, which I will refer to as "Ingevity."

The case involves BASF's allegations that Ingevity engaged in anticompetitive conduct involving carbon products used to capture harmful emissions from automobiles, called "carbon

---

[1] The parties reserve the right to object to, revise, amend, supplement, or modify jury instructions based upon any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions (including the pending cross-motions for summary judgment (D.I. 441, 444, 455, 456, 468, and 470)), and similar developments.

adsorbents." Specifically, the carbon adsorbents at issue in this action are carbon honeycombs used in automotive components called "fuel vapor canisters." **[Ingevity's Proposal: I will refer to these carbon honeycombs as "fuel vapor canister carbon honeycombs."]** Ingevity owns a patent that relates to fuel vapor canisters. The patent is identified by its Patent Office number: RE38,844 (which may be called "the '844 Patent").

BASF and Ingevity manufacture **[Ingevity's Proposal: fuel vapor canister]** carbon honeycombs, but not fuel vapor canisters. Fuel vapor canisters are manufactured by companies that will be referred to throughout trial as "Tier 1 manufacturers." Tier 1 manufacturers sell fuel vapor canisters to car manufacturers that manufacture finished vehicles and will be referred to throughout trial as "OEMs."

### Source

Preliminary Jury Instructions, *ZF Meritor LLC v. Eaton Corp.*, C.A. No. 1:06-cv-00623-SLR (D. Del. Sept. 14, 2019).

**3.     CONTENTIONS OF THE PARTIES**

BASF filed these claims against Ingevity for alleged antitrust violations and alleged tortious interference with prospective business relations. BASF alleges that Ingevity's tying of **[Ingevity's Proposal: fuel vapor canister]** carbon honeycombs to **[Ingevity's Proposal: implied]** licenses to the '844 Patent and Ingevity's entering into **[BASF's Proposal: exclusive long-term]** supply agreements with Delphi, Kayser, and KFTC unreasonably restrained trade in violation of Section 1 of the Sherman Act. BASF asserts that Ingevity's conduct allowed it to acquire and maintain monopoly power in the relevant market for carbon adsorbents used in LEV III/Tier 3-compliant fuel vapor canisters in the United States and Canada and to impede competition in violation of Section 2 of the Sherman Act. BASF further alleges that the **[BASF's Proposal: long-term]** supply agreements violate Section 3 of the Clayton Act. In addition to the

antitrust claims, BASF alleges that Ingevity tortiously interfered with its prospective business relations with Kayser in violation of Delaware common law.

Ingevity denies the allegations. Ingevity contends it has the right under the patent laws to control the market for non-staple goods that do not have substantial uses other than to practice the '844 Patent. Ingevity further contends it has the right under the patent laws to enforce its patent, including through communications about its patent rights to customers and through litigation. Additionally, Ingevity contends it has the right to petition the government, such as through filing a lawsuit, and threatening litigation.

Ingevity further contends that it has not restrained trade or unlawfully acquired or maintained **[BASF's Proposal: a monopoly] [Ingevity's Proposal: monopoly power in any market]**. Further, Ingevity also contends that it did not tie licenses to the '844 Patent to the sale of fuel vapor canister carbon honeycombs, and that its **[BASF's Proposal: long-term]** supply agreements with Delphi, Kayser, and KFTC did not **[Ingevity's Proposal: unlawfully]** substantially foreclose competition or result in harm to competition, did not cause injury to BASF, and did not cause any alleged damages. Ingevity contends that its sales of fuel vapor canister carbon honeycombs and resulting **[Ingevity's Proposal: implied]** licensing from those sales and its supply agreements with customers promoted competition. Ingevity also contends that it did not know about or intentionally interfere in any improper way with BASF's prospective business relationship with Kayser.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

### Source

Preliminary Jury Instructions, *GN Netcom, Inc. v. Plantronics, Inc.*, C.A. No. 1:12-cv-01318-LPS (D. Del. Oct. 10, 2017).

3

**4.    CONDUCT OF THE JURY**

I have a few words about your conduct as jurors.  First, I instruct that during the trial and until you have heard all the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even amongst yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.

I know that many of you use cell phones, smart phones (like iPhones and Android phones), and other portable electronic devices; laptops, tablets, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others.  You must not talk to anyone about this case through any of those means.  You also must not talk the old fashioned way of just talking.  This includes your family and friends.  You must not communicate with anyone about the case on any kind of electronic device or through email, text messaging, Twitter, Snapchat, internet chat rooms, blogs, or social networking sites such as Facebook.  You may not use any similar technology or social media to either get or share information about this case, even if I have not specifically mentioned it here.

The lawyers, parties and witnesses are not supposed to talk to you outside the testimony and arguments presented in the courtroom.  If any lawyer, party or witness does not speak to you when you pass in the hall, ride in the elevator or the like, it is because they are not supposed to talk with you, not because they are rude.  That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to the case that is not admitted into evidence.  By that I mean if there are newspaper articles or a radio or television report relating to the case, do not read the article or watch or listen to the report.

In addition, do not try to do any independent research or investigation on your own in any matters related to the case or this type of case. Do not do any research on the internet, for example, about activated carbon technology. You are to decide the case upon the evidence presented at trial.

You should not consult dictionaries or reference materials such as the internet or any other electronic sources to obtain information about this case or to help you decide the case. Do not try to find out any information from any source outside what you hear in the courtroom. Do not reach any conclusion as to the claims or defenses until all the evidence is in. Keep an open mind until you start deliberations at the end of the case.

During the trial it may be necessary for me to talk to the lawyers out of your hearing by having a side bar, which is when we meet over there. If that happens, please be patient. We're not trying to keep important information from you. The side bars are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law. We will, of course, do what we can to keep the number and length of these side bars to a minimum. While we meet, I may invite you to stand up and stretch and take a short break or if it's a lengthy issue perhaps even call a recess. I also may not always grant an attorney's request for a side bar. Do not consider my granting or denying a request for a side bar as any indication of my opinion of the case or of what your verdict should be.

Now, only the lawyers and I are allowed to ask questions of witnesses. You, however, are not permitted to ask questions of witnesses. If you wish, you may take notes during the presentation of evidence, the summation or arguments of attorneys at the end of the case and during my instructions to you on the law. You will also get my instructions on the law in writing. My courtroom deputy will arrange for pens, pencils and paper. Any notes you take are for your own personal use, they are not to be given or read to anyone else.

We also have, as you can see, a court reporter, the person in front of the bench here, who will be transcribing the testimony during the course of the trial, but you should not assume that the transcripts will be available for your review during your deliberations, nor should you consider notes that you or your fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony keep in mind that you will be relying on your memory of that testimony during your deliberations.

Here are a couple other specific points to keep in mind about note taking. It is permitted, it is not required. Each of you may take notes, but no one is required to. And the second thing is do not take your notes away from court. If you do take notes, take them with you each time you leave the courtroom and leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them to protect the secrecy of your deliberations.

### Source

Preliminary Jury Instruction 5, *TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 1:15-cv-00121-RGA (D. Del. Oct. 1, 2019); Preliminary Jury Instructions, *Alarm.com v. SecureNet*, C.A. No. 1:15-cv-00807-RGA (D. Del. Jan. 28, 2019).

**5.     EVIDENCE**

The evidence from which you are to find the facts consists of the following: the testimony of witnesses, documents and other things received as exhibits and any facts that are stipulated— that is, formally agreed to by the parties.

The following things are not evidence: statements, arguments and questions of the lawyers for the parties in this case, objections by lawyers, any testimony I tell you to disregard, and anything you may see or hear about this case outside of the courtroom. There are rules that control what can be received into evidence.

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe the evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or my ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence you receive is for a limited purpose only, you must follow that instruction. Certain testimony or other evidence may be ordered struck from the record by me, and I may also instruct you to disregard that evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not guess about what a witness might have said or what an exhibit might have shown.

There are two types of evidence that you may use in reaching your verdict: direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. An example of direct evidence is when the witness testifies about something that the witness knows through his or her own senses, something the witness has seen, felt, touched, heard or did. If a witness testified that she saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is indirect proof, meaning proof of one or more facts from which you can infer or conclude another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could infer that it was raining outside.

You should consider all of the evidence, both direct and circumstantial, that is presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**Source**

Preliminary Jury Instruction 6, *TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 1:15-cv-00121-RGA (D. Del. Oct. 1, 2019); Preliminary Jury Instructions, *Alarm.com v. SecureNet*, C.A. No. 1:15-cv-00807-RGA (D. Del. Jan. 28, 2019); *Bayer Healthcare LLC v. Baxalta Inc. et al.*, C.A. 1:16-cv-01122-RGA (D. Del. Jan. 23, 2019).

6.   **EVALUATING A WITNESS**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. Credibility means only whether a witness is worthy of belief. You should consider each witness's means of knowledge, strength of memory, and opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony. You may believe everything a witness says or only part of it or none of it.

You are also going to hear some testimony from expert witnesses. When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is someone that we often refer to as an expert witness and that person is permitted to state his or her opinion on those technical matters. However, you are not required to accept their opinion. As with any other witnesses, it is up to you to determine the credibility of an expert witness.

8

**Source**

Preliminary Jury Instruction 8, *TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 1:15-cv-00121-RGA (D. Del. Oct. 1, 2019); Preliminary Jury Instructions, *Alarm.com v. SecureNet*, C.A. No. 1:15-cv-00807-RGA (D. Del. Jan. 28, 2019).

**7.   TRIAL PROCEDURE**

The trial will now begin. We will start with the opening statements. Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors.

The second phase is the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

In the third phase, the evidence will be presented to you. Witnesses will testify and documents will be offered and admitted into evidence. BASF goes first in presenting its evidence on the issues for which it bears the burden of proof. Witnesses will be questioned by BASF's counsel in what is called direct examination. After the direct examination of a witness is completed, Ingevity has an opportunity to cross-examine the witness. After BASF has presented its evidence, Ingevity will put on its evidence with regard to those issues and also for the issues for which it bears the burden of proof. The parties may present the testimony of a witness by having the individual testify live for you or by playing a videotape of the witness's deposition testimony. Both are acceptable forms of testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

9

The evidence often is introduced piecemeal, meaning that all the evidence relating to an issue may not be presented all at one time but, rather, may be presented at different times during the trial. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

In the fourth phase, I will read you the final jury instructions. I will instruct you on the law that you must apply in this case. I have already explained to you a little bit about the law. In the fourth phase, I will explain the law to you in more detail.

In the fifth phase, the lawyers will again have an opportunity to talk to you in what is called "closing arguments." As with the opening statements, what the lawyers say in the closing arguments is not evidence for you to consider in your deliberations. It is an opportunity for the lawyers to summarize and interpret the evidence for you.

Finally, the sixth phase is the time for you to deliberate and reach a verdict. You will evaluate the evidence, discuss the evidence among yourselves, and decide the issues in this case.

**Source**

Preliminary Jury Instruction 9, *TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 1:15-cv-00121-RGA (D. Del. Oct. 1, 2019); Preliminary Jury Instructions, *Alarm.com v. SecureNet*, C.A. No. 1:15-cv-00807-RGA (D. Del. Jan. 28, 2019).

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 5, 2021, upon the following in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Karen E. Keller, Esquire<br>Nathan R. Hoeschen, Esquire<br>Jeffrey T. Castellano, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Jeffrey T. Thomas, Esquire<br>Frank P. Coté, Esquire<br>Eric T. Syu, Esquire<br>Taylor W. King, Esquire<br>Nathaniel R. Scharn, Esquire<br>GIBSON DUNN & CRUTCHER LLP<br>3161 Michelson Drive<br>Irvine, CA  92612<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Brian M. Buroker, Esquire<br>GIBSON DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  20036<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

Stuart M. Rosenberg, Esquire  *VIA ELECTRONIC MAIL*
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
*Attorneys for Plaintiffs*

Rustin K. Mangum, Esquire  *VIA ELECTRONIC MAIL*
Spencer W. Ririe, Esquire
MANGUM RIRIE LLP
999 Corporate Drive, Suite 260
Ladera Ranch, CA 92694
*Attorneys for Plaintiffs*

/s/ *Anthony D. Raucci*
_____
Anthony D. Raucci (#5948)