IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INGEVITY CORPORATION, et al., | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 18-1391-RGA |
| BASF CORPORATION, | : |
| Defendant. | : |

**MEMORANDUM ORDER RE DAUBERT MOTIONS**

The parties have filed Daubert motions to exclude some or all of the opinions of the other side's economics/damages expert. (D.I. 440, D.I. 443).

I have read and considered the briefing on both motions. (D.I. 441, 456, 470; D.I. 444, 455, 468). I now decide those motions.

The substance of Ingevity's motion to exclude Dr. Mathur's opinions entirely is that her opinion on lost profits damages is speculative. I note that there is a certain irony to Ingevity's insistence that since BASF never made a sale, damages are speculative. As BASF notes, this is an antitrust case based on Ingevity's exclusion of BASF's product from the market through anti-competitive conduct. That Ingevity succeeded in excluding BASF hardly seems like a basis for saying BASF cannot prove damages.

More specifically, Ingevity makes three main arguments. It says Dr. Mathur uncritically relied upon a document created by a BASF employee post-suit as the basis for her opinions. Ingevity says Dr. Mathur assumes no disruption in BASF's source of carbon supply even though its carbon supplier—EnerG2—went out of business after the start of the damages period.

Ingevity says that Dr. Mathur failed to take into account that Ingevity's legitimate but ultimately unsuccessful assertion of its patent has caused at least some delay in BASF's entry into the market.

BASF's responses to the more specific arguments are: (1) Dr. Mathur considered much material beyond the one post-suit document, including, for example, Ingevity's own internal documents on the same issues and a supply agreement BASF had signed with Kayser; (2) Dr. Mathur explains the basis for her assumption for uninterrupted carbon supply; and (3) Dr. Mathur did take into account the lawsuit, and concluded it had no impact.

I have considered relevant record support for the various arguments.

In particular, Ingevity does not respond to the argument that Dr. Mathur relied upon Ingevity's own records and the Kayser agreement. Thus, I conclude that Ingevity has not shown that Dr. Mathur's opinions are not based on reliable evidence; at most, Ingevity has raised questions about one particular piece of evidence on which Dr. Mathur relied.

BASF cited a footnote in Dr. Mathur's expert report in support of its argument that she considered the impact of the closing of EnerG2. (D.I. 456 at 31, citing D.I. 457-1, Ex. 82 p. 5 n.14 (at 338 of 829)).[1] That footnote is based on a discussion with Ms. Rowe, a BASF employee. Dr. Mathur testified that she did take the EnerG2 closing into account (D.I. 457-1, Ex. 88, pp. 67-75 (at 689-90 of 829)), and, if I understand her testimony correctly, that in the "but-for world" she assumes that that EnerG2 would have continued as the carbon supplier, and in the "actual world" she considers that it did close. Whether reliance on Ms. Rowe, as recited

---

[1] It is at best tedious scrolling through hundreds of pages looking for a document with only an exhibit number to help locate it. Thus, for some of the citations to the record I have indicated the exact page or pages, indicated in the form of "at ___ of ___," where the relevant document can be found.

in the expert report, is a sufficient basis for Dr. Mathur's opinions seems to be a subject for cross-examination, not a ground for exclusion under Daubert.

BASF cites Dr. Mathur's testimony at deposition for the proposition that she concluded the damages were caused by the anticompetitive conduct and not by the lawsuit. (D.I. 456 at 33-34, citing D.I. 457-1, Ex. 88, pp. 77-78 (at 690-91 of 829)). BASF also cites Dr. Mathur's expert report (D.I. 457-1, Ex. 79, ¶¶ 99-100 (at 287-90 of 829)), but the cited paragraphs do not specifically mention the lawsuit. At the deposition, Dr. Mathur clearly addressed the lawsuit. Each side cites the testimony that is supposed to support its position. In the end, I think Dr. Mathur says she considered the lawsuit. The seemingly contradictory answer that she does not offer "an estimate or any calculation" on the "impact" of the lawsuit is simply something that Ingevity can explore on cross-examination.

Thus, there is no Daubert basis to exclude any of Dr. Mathur's opinions. Ingevity's Daubert motion (D.I. 440) is **DENIED**.

BASF makes two main arguments. The first is that Dr. Rao's opinions concerning the pro-competitive impact of the tying arrangements and the long-term agreements because they permit "recoupment" of Ingevity's investments should be excluded because they are contrary to law. The second is that Dr. Rao's analysis of how different inputs impact Dr. Mathur's calculations should be excluded as not based on any evidence.

There seems to be no dispute that the antitrust issues in this case are "rule of reason" issues. Dr. Rao makes an economic argument that the tying arrangements and long-term agreements have a pro-competitive effect. Dr. Mathur does not seem to disagree with the general principle. (D.I. 442-14 at 90 ("while investments in capacity are beneficial for customers and generally procompetitive, it is not necessary that Ingevity alone make those investments. . . .

[But] Ingevity cannot show that this is the only way in which competitors would be induced to invest in capacity.")). I believe the experts dispute whether Ingevity's activities in this particular case are procompetitive or anticompetitive. I do not think that is a Daubert issue; I think it is a case of the experts disagreeing over the application of the general principle to the facts of this case.

The briefing on the second issue, which is sometimes referred to by the parties as concerning a "sensitivity analysis" (D.I. 468 at 18), indicates that Dr. Rao has offered opinions as to what happens if some of Dr. Mathur's inputs are changed. I gather that Dr. Mathur proposes various scenarios for damages, and that Dr. Rao challenges them. (*See generally* D.I. 459-1 at 82-109). The particular issue that is highlighted in the briefing concerns "the risk that BASF will fail to be adopted at an OEM after any given introductory platform." (*Id.* at 109 [¶ 133]). As far as I can tell, Dr. Rao's multiplication exercise based on 50% is offered merely as an illustration but has no substance behind it. Since his other opinions are at least arguably tethered to the evidence, I agree that the 50% analysis, if permitted among the maze of other opinions Dr. Rao has, is so unhelpful to the jury and significantly risks confusion, that I exclude Dr. Rao's testimony on that extremely narrow point, as its limited probative value is substantially outweighed by the risk of confusion. Fed. R. Evid. 403. By this ruling, I do not prohibit BASF from cross-examining Dr. Mathur on the effect of different inputs.

Thus, the Daubert motion as to Dr. Rao (D.I. 443) is **DENIED** except as to the illustrative 50% analysis.

IT IS SO ORDERED this 10 day of August 2021.

United States District Judge