███████████████████████

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGEVITY CORPORATION and<br>INGEVITY SOUTH CAROLINA, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 18-1391 (RGA) |
| | ) | |
| v. | ) | ████████████████ |
| | ) | |
| BASF CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## **JOINT PROPOSED FINAL PRETRIAL ORDER**

SHAW KELLER LLP
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:

Jeffrey T. Thomas
Rod J. Stone
Taylor W. King
Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Dr.
Irvine, CA 92612-4412
(949) 451-3800
Brian M. Buroker
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (No. 3778)
Anthony D. Raucci (No. 5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Thomas J. Friel, Jr.
KING & SPALDING LLP
601 California Street, Suite 100
Palo Alto, CA 94304
(650) 422-6741

James P. Brogan
Brian Eutermoser
Angela C. Tarasi
Mikaela Stone
KING & SPALDING LLP
1515 Wynkoop Street, Suite 800
Denver, CO 80202
(720) 535-2300

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Rustin K. Mangum
Spencer W. Ririe
MANGUM RIRIE LLP
999 Corporate Dr. #260
Ladera Ranch, CA 92694
(949) 298-5590

*Attorneys for Ingevity Corporation and Ingevity South Carolina, LLC*

Norman Armstrong, Jr.
Paul Alessio Mezzina
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

Joseph D. Eng, Jr.
Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100

*Attorneys for BASF Corporation*

August 5, 2021

# TABLE OF CONTENTS

**Page**

I.     NATURE OF THE CASE AND THE PLEADINGS ..................................................1

     A.     BASF's Statement Regarding the Scope of the Issues to be Tried: ........................4

     B.     Ingevity's Statement Regarding the Scope of the Issues to be Tried: ....................6

II.     JURISDICTION ..................................................................................................................9

III.     JOINT STATEMENT OF ADMITTED FACTS ...............................................................10

     A.     The Parties .........................................................................................................10

     B.     Emissions Regulations .......................................................................................10

     C.     Bleed Emissions Technology .............................................................................11

     D.     Licenses to the '844 Patent ...............................................................................11

     E.     Supply Agreements ............................................................................................11

     F.     BASF's Damages ...............................................................................................12

IV.     STATEMENT OF THE FACTS THAT REMAIN TO BE LITIGATED ........................12

V.     STATEMENT OF THE ISSUES OF LAW THAT REMAIN TO BE LITIGATED .......12

VI.     THE PARTIES' TRIAL EXHIBITS ...............................................................................13

     A.     Stipulations Concerning Trial Exhibits .............................................................13

     B.     Procedures for the Disclosure of Trial Exhibits and Demonstrative Exhibits .......15

VII.     TRIAL WITNESSES .......................................................................................................16

     A.     List of Witnesses to be Called ...........................................................................16

     B.     Testimony by Deposition ...................................................................................18

VIII.     PARTIES' BRIEF STATEMENT OF INTENDED PROOFS .........................................20

     A.     BASF's Statement ..............................................................................................20

     B.     Ingevity's Statement ..........................................................................................22

IX.     AMENDMENT TO PLEADINGS ...................................................................................24

**TABLE OF CONTENTS**
(continued)

**Page**

X.      MOTIONS IN LIMINE ................................................................................................24

XI.     CERTIFICATION OF GOOD FAITH SETTLEMENT EFFORTS ...............................24

XII.    OTHER MATTERS.......................................................................................................25

        A.      Jury Trial ................................................................................................25

        B.      Witness Sequestration ............................................................................25

        C.      Length of Trial .......................................................................................25

        [BASF's Proposal: ...............................................................................................26

        D.      The Parties .............................................................................................26

        E.      Order of Presentation of Evidence.........................................................26

        F.      Set-up of Electronic and Computer Devices...........................................27

        G.      Handling of Confidential Information at Trial........................................27

        H.      Updates to Proposed Pretrial Order .......................................................28

## I.      NATURE OF THE CASE AND THE PLEADINGS

1.      This is an antitrust action concerning counterclaims filed by BASF Corporation ("BASF") against Ingevity Corporation and its subsidiary Ingevity South Carolina, LLC ("Ingevity").

2.      The case originally arose from a Complaint for Patent Infringement ("Complaint") (D.I. 1), in which Ingevity alleged that BASF infringed certain claims of U.S. Patent No. RE38,844 ("the '844 Patent").  The '844 Patent relates to technology for reducing diurnal breathing loss emissions from evaporative emissions canisters.

3.      Ingevity's Complaint asserted infringement of claims 1, 2, 4, 8, 11, 14, 18, 19, 21, 24, 27, 31, 33, 36, 39, 43, 45, 48 and 51 of the '844 Patent.  Ingevity later narrowed its asserted claims to 1, 4, 11, 18, 19, 24, 43, and 48 of the '844 Patent ("Asserted Claims") (D.I. 423).

**BASF Files Counterclaims**

4.      On February 14, 2019, BASF filed its First Amended Answer and Counterclaims ("Counterclaims") (D.I. 65), in which BASF asserted claims alleging antitrust violations based on its contention that Ingevity ties purchase of carbon honeycombs to licenses to the '844 Patent and its contention that Ingevity entered into exclusive long-term supply agreements with customers. The Counterclaims also allege that Ingevity tortiously interfered with BASF's prospective business relations in violation of Delaware common law. BASF also denied infringement of the '844 Patent and reasserted the defenses of non-infringement stated in its original Answer (D.I. 19) of invalidity under 35 U.S.C. §§ 102, 103, and/or 112, limitation of damages, no injunctive relief, waiver, implied waiver, equitable estoppel, unclean hands, patent misuse, and failure to state a claim. BASF did not file a counterclaim seeking a declaratory judgment that all of the '844 Patent claims were invalid or unenforceable.

5.       Both Ingevity and BASF demanded a jury trial on all issues triable by a jury.

6.       On March 18, 2019, Ingevity filed a Motion to Dismiss BASF's Counterclaims. (D.I. 71.)  Ingevity requested, in the alternative, that the Court bifurcate BASF's Counterclaims if the Court denied Ingevity's Motion to Dismiss.  (D.I. 83.)  BASF opposed and moved for leave to amend its First Amended Answer and Counterclaims.  (D.I. 99.)  BASF's motion for leave to amend its First Amended Answer and Counterclaims also did not include a request for filing a counterclaim for declaratory judgment that all claims of the '844 Patent were invalid.  Ingevity's Motion was referred to Judge Fallon (D.I. 97) who issued a Report and Recommendation on October 22, 2019, recommending the Court deny Ingevity's Motion to Dismiss, bifurcate BASF's Counterclaims, and deny BASF's Motion to Amend.  (D.I. 147.)  The Court adopted the Report and Recommendation and bifurcated the Counterclaims on March 23, 2020.  (D.I. 246.)  On August 14, 2020, Ingevity filed an Answer to BASF's Counterclaims.  (D.I. 346.)

**Parties Move for Summary Judgment on the Patent Infringement and Validity Issues**

7.       On June 19, 2020, Ingevity moved for summary judgment on BASF's defenses of enablement, patent misuse, unclean hands, implied waiver, and equitable estoppel.  (D.I. 291).  Ingevity also moved for partial summary judgment that the accused product is a non-staple article of commerce under Ingevity's contributory infringement allegations.  *Id*.  Ingevity also moved to exclude certain opinions of BASF's economic expert Dr. Divya Mathur and BASF's technical expert Mr. James Lyons.  *Id*.

8.       BASF moved for summary judgment on indefiniteness, lack of enablement and written description, non-infringement, and anticipation of the '844 Patent.  (D.I. 289.)  BASF also moved for summary judgment of patent misuse and the absence of damages for infringement.  *Id.*

BASF also moved to exclude certain opinions of Ingevity's damages expert, Dr. Thomas Vander Veen. *Id*.

9.      Trial in this case was originally set for September 14, 2020. (D.I. 41.) On July 28, 2020, during the pendency of the summary judgment motions, Ingevity moved to postpone the trial, expressing concern about the ability to safely try the case due to the COVID-19 pandemic. (D.I. 339.) The next day BASF submitted a response, stating that it was prepared to try the case and urging the Court to keep the trial date. (D.I. 340.) The Court granted Ingevity's request for continuance. (D.I. 341.)

10.     At oral argument on the motions for summary judgment, the Court denied the Parties' motions on enablement and written description (D.I. 417 at 79:7-11) as well as BASF's motion on indefiniteness (*id.* at 79:17-80:5). The Court later denied without prejudice Ingevity's motion to exclude the testimony of BASF's economic expert, Dr. Mathur, and BASF's technical expert, Mr. Lyons. (D.I. 410.)

11.     On November 17, 2020, the Court granted BASF's motion for summary judgment finding the eight then-asserted patent claims invalid for prior invention. (D.I. 419 and D.I. 424.) The other undecided motions were denied as moot. (D.I. 420.)

**Parties Move for Summary Judgment on BASF's Counterclaims**

12.     Following the summary judgment decision, the Court entered a pretrial schedule for the bifurcated Counterclaims. Trial on the Counterclaims is scheduled for September 7, 2021. (D.I. 428.)

13.     On March 9, 2021, BASF moved for summary judgment that Ingevity engaged in unlawful tying and exclusive dealing, and that Ingevity committed tortious interference.

(D.I. 444.)  BASF also moved to exclude certain opinions of Ingevity's economic expert, Dr. Mohan Rao.  *Id.*

14.    Ingevity also moved for summary judgment on the Counterclaims.  (D.I. 441.)  In particular, Ingevity moved for summary judgment that the conduct BASF contends amounts to tying, exclusive dealing, and tortious interference with prospective business relations is in fact patent enforcement and petitioning activity that is immune from liability under the patent laws and the *Noerr-Pennington* doctrine; that the fuel vapor canister carbon honeycombs at issue in this case are nonstaple goods, such that Ingevity has the right to control the market for such fuel vapor canister carbon honeycombs; that BASF failed to adduce sufficient evidence in support of its tying claim; that BASF failed to adduce sufficient evidence of substantial foreclosure in support of its exclusive dealing claim; that BASF's claim for exclusive dealing for conduct that may or may not occur after the '844 Patent expires is not ripe and thus should be dismissed on standing grounds; and that BASF failed to adduce sufficient evidence in support of its tortious interference claim. Ingevity also moved to exclude certain opinions from BASF's economist, Dr. Divya Mathur.  *Id.*[1]

15.    The parties' second round of summary judgment and *Daubert* motions related to BASF's counterclaims are still pending.

**A.    BASF's Statement Regarding the Scope of the Issues to be Tried:**

16.    BASF intends to prove: that Ingevity has required customers to purchase its unpatented carbon honeycombs in order to be licensed to practice the claims of the '844 Patent in violation of Sections 1 and 2 of the Sherman Act; that Ingevity has entered into exclusive long-term supply agreements with customers in violation of Sections 1 and 2 of the Sherman Act, and

---

[1] BASF disagrees with Ingevity's characterization of its summary-judgment briefings and refers the Court to the parties' pending cross-motions for summary judgment (D.I. 441, 444, 455, 456, 468, and 470).

Section 3 of the Clayton Act; and that Ingevity has tortiously interfered with its prospective business relations in violation of Delaware common law.

17.     Ingevity should not be permitted to rely on any unasserted claims of the '844 Patent as a defense to liability for its antitrust violations and tortious interference.  Ingevity originally asserted 19 claims in this case alleged by Ingevity as applying to carbon honeycombs.  After Ingevity narrowed its asserted claims, all remaining eight Asserted Claims were invalidated by the Court. Ingevity has provided no pleading or discovery as to which unasserted claims of the '844 Patent it asserts to excuse its conduct.  Nor has it provided any claim charts or offered expert opinion on any unasserted claim.  As to the claims that were asserted but later dropped, Ingevity has not shown why such claims are not invalid for the same reasons as the previous invalidity determination.  Moreover, Ingevity did not notify the Court or BASF when it dropped its claims that it would later assert the dropped claims as a defense to the Counterclaims.  It would therefore be improper and a needless use of judicial resources to litigate validity of any unasserted claims.

18.     If Ingevity is permitted to rely on any unasserted claims of the '844 Patent as a defense to the Counterclaims and prove that carbon honeycombs are within the scope of the patent claims, then BASF intends to prove that the patent claims are invalid and unenforceable.  In addition, because the Court's decision on the parties' cross-motions for summary judgment (D.I. 441, 444, 455, 456, 468, and 470), including the issue of whether Ingevity may rely on the unasserted claims of the '844 Patent as a defense to the Counterclaims, may impact the scope of the issues tried to the jury, BASF will supplement **Exhibits 1, 3, 5, 7, and 9** if necessary to conform them to the Court's decision.

19.     BASF disagrees with Ingevity's Statement Regarding the Scope of the Issues to be Tried, *infra*, to the extent that Ingevity's statement is argumentative and mischaracterizes the

relevant law and the applicable burdens of proof.  For an accurate statement of the governing law, BASF refers the Court to BASF's summary-judgment briefing (D.I. 444, 456, and 468) and Statement of Facts to be Litigated (Exhibit 1).

**B.      Ingevity's Statement Regarding the Scope of the Issues to be Tried:**

20.     In summary judgment briefing, BASF narrowed the scope of its claims.  With respect to tying, BASF clarified that it alleges that Ingevity created tying arrangements by threatening litigation or otherwise informing customers of its patent rights, and that it was no longer relying on ███████████████████████████████████████ in connection with its tying claim.  D.I. 456 at 20.  Similarly, BASF admitted that Ingevity's grant of licenses to ███████████ and MAHLE were petitioning / patent enforcement activity that is immune from antitrust liability, and therefore dropped its contention that these licenses were evidence of alleged tying.  As such, BASF's allegations related to tying are limited to an allegation that Ingevity requires customers to purchase fuel vapor canister honeycombs to obtain an implied license to the '844 Patent through alleged communications with customers and others in the marketplace regarding Ingevity's patent rights and suspected infringement by BASF.

21.     With respect to exclusive dealing, BASF clarified that the alleged foreclosure attributable to exclusive dealing is ████ and is based on alleged express exclusive dealing arrangements, and that BASF's allegation of foreclosure of ████ requires combining alleged foreclosure from alleged tying and alleged exclusive dealing (D.I. 456 at 18), whereas it was previously unclear whether BASF alleged ████ foreclosure based solely on exclusive dealing through a combination of alleged express and implied exclusive dealing arrangements.  BASF thus clarified that it is relying only on alleged express exclusive dealing arrangements for purposes of its exclusive dealing claim.

22.     Finally, BASF narrowed its tortious interference claim to alleged interference with BASF's alleged prospective business relationship with Kayser.  However, this issue should not be presented to the jury.  Although BASF pleaded a cause of action for intentional interference with prospective business relationship under Delaware law, the only party it identified in the Complaint was ▮ and BASF failed to present any evidence in discovery of a prospective relationship with ▮ that Ingevity knew of and interfered with.  During summary judgment briefing, BASF dropped its allegations related to ▮ and limited its allegations to alleged interference with a contract with Kayser, not interference with a prospective business relationship Kayser or any other third party.  Under prevailing law, such alleged conduct cannot be pursued under a tortious interference with prospective business relationship cause of action.  It is undisputed that Ingevity did not tortiously interfere with a prospective business relationship between BASF and Kayser because BASF and Kayser formalized the business relationship in question through a contract. The parties have not performed under the contract, but BASF has not alleged tortious interference with contract, which includes additional and different elements.

23.     BASF states that if "Ingevity is permitted to rely on any unasserted claims of the '844 Patent as a defense to the Counterclaims and proves that carbon honeycombs are within the scope of the patent claims, then BASF intends to prove that the patent claims are invalid and unenforceable."  BASF misunderstands the law, and should not be permitted to present evidence or argument on invalidity or unenforceability.  First, as explained in Ingevity's summary judgment briefing (D.I. 441, 455, 470), whether eight of the '844 Patent claims were ruled to be invalid after the conduct in question is irrelevant.  The dispositive question is whether Ingevity's patent enforcement activity, including communications regarding Ingevity's patent rights (including rights under the unasserted claims of the '844 Patent and other patents related to fuel vapor canister

7

technology, such as U.S. Patent No. 9,732,649 and U.S. Patent No. 10,323,553) and suspected infringement by BASF, were in good faith. *See, e.g.*, D.I. 441 6-20, 455 12-14; 470 8-14, *esp.* 13. BASF did not challenge the presumption that Ingevity's patent enforcement activity was in good faith, so the question of whether the claims were later found invalid is irrelevant to the issues at hand. Second, BASF did not file a declaratory judgement action asking the Court to find all claims of the '844 Patent to be invalid, and "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims," (35 U.S.C. § 282(a)). Thus, the unasserted claims are presumed valid, the Court lacks jurisdiction to enter a ruling regarding the claims of the '844 Patent other than the eight asserted claims addressed in the Court's order, and there is no case or controversy over the unasserted claims based on the pleadings, so BASF lacks standing to raise invalidity as to the unasserted claims. D.I. 424. Third, BASF did not provide invalidity contentions on any of the unasserted claims at the deadline for those contentions to be provided and did not submit any expert reports addressing the unasserted claims; allowing BASF to present invalidity or unenforceability arguments at this stage would violate due process. Fourth, BASF only raised invalidity and unenforceability as affirmative defenses to an allegation that BASF infringed the '844 Patent. BASF has pled no independent basis for asserting invalidity or unenforceability and thus, there is no basis to try affirmative defenses to a claim for patent infringement that is not being tried at the same time and that is presently mooted given that the only remaining asserted claims were ruled invalid in a non-final order.

24.     BASF further misunderstands the law by characterizing the patent enforcement / *Noerr-Pennington* issue as a defense Ingevity must prove. That is incorrect. BASF bears the burden of proving existence of the conduct it contends was unlawful. Although Ingevity identified

patent enforcement and *Noerr-Pennington* immunity as defenses in its Answer, it did so to provide notice to BASF, and the form of Ingevity's pleading does not relieve BASF of its burden to prove the existence of allegedly unlawful conduct. Ingevity was explicit that in identifying its defenses, it was not "assuming any burden of proof that it would not otherwise bear." D.I. 344-1 at 24. The question of whether particular conduct BASF proves is immune patent enforcement and/or petitioning activity is a question of law for the Court to decide. To the extent BASF merely proves that it was allegedly harmed by Ingevity's patent enforcement activity and/or petitioning activity, such activity is not unlawful as a matter of law, and there is no factual issue for Ingevity to prove. BASF bears the burden of proving the existence of the alleged conduct, but even if BASF proves the conduct it alleges, that conduct is immune patent enforcement and/or petitioning activity.[2] But, to the extent the Court rules that there are factual questions, then BASF still bears the burden on those issues.

## II.    JURISDICTION

25.    This is a civil action arising under the antitrust laws, 15 U.S.C. §§ 1 and 2, 15 U.S.C. § 14, and 15 U.S.C. § 26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337; and 15 U.S.C. §§ 15, 26. No party contests personal or subject matter jurisdiction.

26.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. §§ 22 and 26 because Ingevity Corporation and Ingevity South Carolina, LLC are Delaware entities and have transacted business in this judicial district. No party contests venue.

---

[2] As Ingevity explained in its summary judgment briefing, Ingevity is entitled to summary judgment on BASF's claims for at least this reason.

### III.    JOINT STATEMENT OF ADMITTED FACTS

#### A.    The Parties

27.    Counterclaim Plaintiff BASF Corporation is a Delaware corporation with its principal place of business in Florham Park, New Jersey.

28.    Counterclaim Defendant Ingevity Corporation is a Delaware corporation with its principal place of business in North Charleston, South Carolina.  Ingevity Corporation is the implied exclusive licensee of the '844 Patent and thus has standing to bring the patent infringement claims in this lawsuit and to rely on the '844 Patent in response to BASF's antitrust and tortious interference claims.

29.    Counterclaim Defendant Ingevity South Carolina, LLC is a Delaware limited liability company wholly owned by Ingevity Corporation with its principal place of business in North Charleston, South Carolina.  Ingevity South Carolina, LLC is the assignee of all right title and interest in the '844 Patent and thus has standing to bring the patent infringement claims in this lawsuit and to rely on the '844 Patent in response to BASF's antitrust and tortious interference claims.

30.    Ingevity Corporation was formed in 2016 as a spin off from WestRock and assumed the business that had previously operated within Westvaco, MeadWestvaco, and MWV.

#### B.    Emissions Regulations

31.    The LEV III/Tier 3 bleed emissions standards were adopted by the California Air Resources Board ("CARB") and the U.S. Environmental Protection Agency ("EPA") in 2012 and 2014, respectively.

32.    Neither Ingevity nor BASF manufacture fuel vapor canisters.  Ingevity supplies carbon adsorbents to companies that manufacture fuel vapor canisters and fill them with carbon

adsorbents.  BASF has offered to supply its EvapTrap XC carbon honeycombs for use in fuel vapor canisters, but no company that manufactures fuel vapor canisters has purchased EvapTrap XC products.

###   C.   Bleed Emissions Technology

33.   Ingevity's U.S. Patent No. RE38,844 ("the '844 Patent") claims a technology for reducing evaporative emissions.  The '844 Patent is entitled "Method for Reducing Emissions from Evaporative Emissions Control Systems."  It issued on October 25, 2005 to inventors Laurence H. Hiltzik, Jacek Z. Jaqiello, Edward Don Tolles, and Roger S. Williams.  Ingevity South Carolina, LLC owns by assignment the entire right, title, and interest in and to the '844 Patent.  Ingevity Corporation is Ingevity South Carolina, LLC's implied exclusive licensee of the '844 Patent.

34.   The effective filing date of the '844 Patent is March 18, 2002.

35.   The '844 Patent also claims benefit to a provisional application filed on November 21, 2001.

36.   The '844 Patent expires on March 18, 2022.

###   D.   Licenses to the '844 Patent

37.   Ingevity shipped its carbon adsorbents across the country, including to customers in Alabama, Illinois, Kentucky, Michigan, New York, Tennessee, Texas, and Wisconsin.

###   E.   Supply Agreements

38.   Ingevity entered into a supply agreement with Delphi.

39.   Ingevity entered into a supply agreement with Kayser.

40.   Ingevity entered into a supply agreement with KFTC.

**F.      BASF's Damages**

41.     Customers have expressed interest in, and performed validation testing of, BASF's EvapTrap XC.

42.     BASF has not sold any EvapTrap XC.

## IV.     STATEMENT OF THE FACTS THAT REMAIN TO BE LITIGATED

43.     Defendant BASF's statement of facts that remain to be litigated is attached as **Exhibit 1**.

44.     Ingevity's statement of facts that remain to be litigated is attached as **Exhibit 2**.

45.     The parties reserve the right to modify or supplement their statements of facts that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## V.     STATEMENT OF THE ISSUES OF LAW THAT REMAIN TO BE LITIGATED

46.     BASF's statement of issues of law that remain to be litigated is attached as **Exhibit 3**.

47.     Ingevity's statement of issues of law that remain to be litigated is attached as **Exhibit 4**.  Ingevity objects to BASF's August 3, 2021 revisions to its statement of issues of law and reserves the right to update its statement of issues of law that remain to be litigated.  BASF provided extensive substantive revisions to its statement of issues of law without justification as to why there were updated so close to the deadline for submitting the pretrial order and without sufficient time for Ingevity to address any changes.

48.     The parties reserve the right to modify or supplement their statements of issues of law that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## VI.    THE PARTIES' TRIAL EXHIBITS

49.    BASF's list of exhibits it may offer at trial, including Ingevity's objections, is attached as **Exhibit 5**, and a list of Ingevity's objection codes is attached as **Exhibit 5A**.

50.    Ingevity's list of exhibits it may offer at trial, including BASF's objections, is attached as **Exhibit 6**, and a list of BASF's objection codes is attached as **Exhibit 6A**.  In addition, if the Court permits BASF to try issues of patent invalidity or unenforceability over Ingevity's objection, then Ingevity also identifies all exhibits listed on Exhibit 6 to the pretrial order for the patent trial as being incorporated into the list attached hereto as Exhibit 6.

51.    The parties reserve the right to modify or supplement their trial exhibits lists to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

### A.    Stipulations Concerning Trial Exhibits

52.    Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections.  The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit should the opposing party attempt to offer it into evidence.

53.    Each exhibit list contains all of the exhibits that a party intends to present at trial other than: (1) exhibits used solely for impeachment and (2) exhibits necessary to account for information learned in discovery completed after the submission of this Pretrial Order, provided that the need for such exhibits could not reasonably have been anticipated earlier.[3]  With the

---

[3] Demonstrative exhibits need not be listed on the parties' exhibit lists, and procedures for the exchange of demonstrative exhibits are addressed separately.

aforementioned exceptions, exhibits not listed on a party's exhibit list or on the opposing party's exhibit list will not be admitted into evidence unless good cause is shown.

54.    Neither party will remove a document from its exhibit list without agreement from the other party, unless it provides the other party the opportunity to add the document to its exhibit list.

55.    Any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document or any other listed document.

56.    The parties will meet and confer regarding replacing any poor print or digital quality copies of exhibits with substantively identical improved or higher quality or color copies.

57.    Each party shall make available for inspection any physical exhibits no less than one week before the start of jury selection.

58.    Legible copies of exhibits may be offered into evidence in lieu of originals, subject to all foundational requirements and other objections that might be made to the admissibility of originals, and subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the copy.  Electronic versions of document exhibits in their native format, such as spreadsheets or presentations, may be offered into evidence in lieu of paper or PDF versions.  The parties will exchange replacement versions and/or native versions of exhibits prior to use in trial.

59.    Legible copies of United States patents and patent applications, including the '844 Patent, and their file histories may be offered into evidence in lieu of certified copies thereof, subject to all other objections that might be made to admissibility of certified copies.

60.     Certified translations of foreign-language documents may be offered into evidence in lieu of original copies thereof and the parties will not object to the admissibility of the exhibits on the basis that they are translations.

61.     Demonstrative exhibits do not need to be included on the parties' respective trial exhibit lists.  For purposes of this Pretrial Order, the term "demonstrative exhibits" does not include: (1) exhibits created in the courtroom during testimony or opening at trial, (2) the enlargement, highlighting, or ballooning of a trial exhibit (or parts of a trial exhibit) or a transcript of testimony.

62.     BASF's trial exhibits will be identified with AT-PTX numbers, starting with AT-PTX-0001.  BASF's demonstrative trial exhibits will be identified with AT-PDX, starting with AT-PDX-001.

63.     Ingevity's trial exhibits will be identified with DTX numbers, starting with DTX-0001.  Ingevity's demonstrative trial exhibits will be identified with DDX, starting with DDX-001.

64.     The parties will meet and confer in a further effort to refine and shorten their exhibit lists and to resolve objections without the Court's intervention.

**B.      Procedures for the Disclosure of Trial Exhibits and Demonstrative Exhibits**

65.     A party will provide, together with its identification of a witness to be called (as provided in section VII below) a list of trial exhibits to be used in connection with a direct examination of that witness by 7:00 p.m. two calendar days before their intended use (by way of example, for a witness that a party intends to call at any time on Thursday, September 9, 2021, the party shall provide its list of direct examination exhibits by 7:00 p.m. on Tuesday, September 7, 2021).  Any objections by the opposing party will be provided no later than 7:00 p.m. the following day.  The parties shall meet and confer prior to going into Court to resolve any objections to the

exhibits.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand. The parties also agree to provide opposing counsel with one set of all exhibits to be used in direct and/or cross examination at the time of that examination.

66.     A party shall provide a color PDF or PowerPoint copy, or for videos or animations an appropriate video format, of demonstrative exhibits to be used in connection with a direct examination by 7:00 p.m. one calendar day before their intended use (by way of example, for a witness that a party intends to call at any time on Thursday, September 9, 2021, the party shall provide its demonstrative exhibits by 7:00 p.m. on Wednesday, September 10, 2021).  Objections to any such demonstrative exhibits shall be made by 9:00 p.m. that same day.  The parties will meet and confer on any objections by 10:00 p.m. that same day and will present any unresolved issues to the Court before the proposed use of the disputed demonstrative exhibit.

67.     With respect to opening and closing statements, the parties shall identify any evidence (*e.g.*, trial exhibits or designated deposition testimony) and demonstrative exhibits they intend to use two calendar days before the statements in which such materials will be used by 7:00 p.m. Eastern.  The parties shall make objections, if any, to the evidence disclosed one calendar day before opening statements by 7:00 p.m. Eastern and shall promptly meet and confer on any such objections.

## VII.   TRIAL WITNESSES

### A.     List of Witnesses to be Called

68.     The witnesses that BASF may call in person or by deposition at trial, together with Ingevity's objections, are attached as **Exhibit 7**.

69.     The witnesses that Ingevity may call in person or by deposition at trial, together with BASF's objections, are attached as **Exhibit 8**.

70.     Ingevity objects to BASF's identification of Kirill Bramnik and James Peterson as witnesses BASF may call to testify by deposition, as both are employees of BASF and their deposition testimony constitutes hearsay when offered by BASF.  Ingevity further objects to BASF's identification of Robert K. Beckler, Stefan Schutte, Frank Gregor, and Kasih Listiawan as trial witnesses because these individuals were not identified in BASF's disclosures under Federal Rule of Civil Procedure 26.

71.     BASF objects to Ingevity's identification of Scott Garcia, Julie Baugh, Achim Rauber, and Sebastian Bunzendahl as trial witnesses because these individuals were not identified in Ingevity's disclosures under Federal Rule of Civil Procedure 26.  Moreover, unlike the individuals identified in paragraph 70, these individuals have not been deposed by the parties during the course of discovery.  With respect to Robert K. Beckler, Stefan Schutte, Frank Gregor, and Kasih Listiawan, Ingevity itself has identified these individuals as trial witnesses.

72.     Any witness not listed on the parties' witness lists (**Exhibits 7-8**) will be precluded from testifying absent good cause shown (provided, however, that either party may supplement its witness list to account for information learned in discovery served after the submission of this Pretrial Order, if the need for any additional witnesses could not reasonably have been anticipated earlier), except that each party reserves the right to call rebuttal witnesses to the extent the offering party could not reasonably have anticipated requiring testimony from such witnesses at the time of submission of this Pretrial Order, on reasonable notice to the opposing party.  No party shall be required to present testimony from any witness on its list of witnesses.  The listing of a witness by

a party on its witness list does not waive any objections to that witness should the opposing party attempt to call that witness to testify, either live or by deposition.

73.     The parties reserve the right to modify or supplement their witnesses lists to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

74.     Given the evolving travel restrictions and guidelines related to the COVID-19 pandemic, the parties will meet-and-confer in good faith to address any accommodations necessary to facilitate witness participation at trial, including any adjustments to whether certain testimony will be presented live, remotely, or via deposition transcripts.  Any requests for adjustments to the parties' witness lists (Exhibits 7-8) pursuant to this Paragraph shall be served in writing on the other party by August 27, 2021.

75.     The parties will identify specific witnesses that they intend to call on direct, and the order in which they will be called, by 7:00 p.m. two calendar days before the direct examination is expected to take place (by way of example, for the witnesses that a party intends to call on Thursday, September 9, 2021, the party shall identify the witnesses and the order in which they will be called by 7:00 p.m. on Tuesday, September 7, 2021).  Each party shall identify which witnesses will be called live and which will be offered by deposition.  Any objections by the opposing party will be provided no later than 7:00 p.m. the following day.  The parties shall meet and confer prior to going into Court to resolve any objections regarding witnesses.

**B.     Testimony by Deposition**

76.     BASF's deposition designations (including Ingevity's objections and counter-designations and BASF's objections thereto) are attached as **Exhibit 9**.

77.     Ingevity's deposition designations (including BASF's objections and counter-designations and Ingevity's objections thereto) are attached as **Exhibit 10**.

78.     The parties may not add new deposition designations or counter-designations, or provide new objections to listed designations or counter-designations, except for good cause shown or by agreement of the parties.

79.     The parties reserve the right to modify or supplement their deposition designations or counter-designations to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

80.     Any deposition testimony not specifically identified on a party's deposition designation list may still be used at trial for the purpose of impeachment, if otherwise competent for that purpose.

81.     The party intending to offer a witness by deposition shall provide the other party with a list of final deposition designations (by page and line number) it intends to introduce by 7:00 pm two calendar days before the deposition testimony is expected to be read or played in Court.  The other party shall identify any objections and counter-designations to the designated testimony by 10:00 p.m. the same day.  The offering party shall thereafter provide any objections to the counter-designations and any counter-counter-designations no later than 6:00 p.m. the following day (*i.e.*, one calendar day before the deposition testimony is expected to be read or played in Court).  The parties shall meet and confer as to any objections no later than 10:00 p.m. the same day.  Any unresolved objections must be raised with the Court by the objecting party the morning of the day on which the witness's testimony will be offered.  If the deposition testimony is going to be played by video, the party offering the deposition testimony in its case-in-chief shall provide a copy of the video to be played, in the form in which it is to be played (including any

editing or synching), as well as a clip report of the designated testimony, to the opposing party by 11:00 p.m. one calendar day before the testimony is to be played.

82.     If a party chooses to read a witness's designations at trial, all counter-designations will also be read (subject to any objections).  If a party chooses to play a video of a witness's designations at trial, all counter-designations will also be played in video (subject to any objections).  Designations and counter-designations will be read or played in chronological order. However, the party offering testimony by deposition may elect to introduce less than all of the testimony it designated in connection with this Pretrial Order, and the opposing party may elect to introduce less than all of the testimony it counter-designated as well as any testimony previously designated by the offering party.

83.     All irrelevant or redundant material such as attorney objections and colloquy between counsel will be removed when the deposition is read or played at trial.

84.     Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations.  The parties shall promptly meet and confer concerning the amount of time attributable to each party's designations and counter-designations and shall inform the Court of the allocation of the time.

## VIII.  PARTIES' BRIEF STATEMENT OF INTENDED PROOFS

### A.     BASF's Statement

85.     BASF's statement of what it expects to prove in support of its claims is set forth below.  BASF's statement is based upon the current status of the case and the Court's current rulings.  BASF reserves the right to revise this statement in light of any further decisions or orders of the Court.

86.     BASF intends to establish, by a preponderance of the evidence, that Ingevity entered into tying arrangements in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2).

87.     BASF intends to establish, by a preponderance of the evidence, that Ingevity entered into exclusive dealing arrangements in violation of the Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2), and Section 3 of the Clayton Act (15 U.S.C. § 14).

88.     BASF intends to establish, by a preponderance of the evidence, that Ingevity tortiously interfered with BASF's prospective business relations in violation of Delaware common law.

89.     If Ingevity is found to have violated the federal antitrust laws and/or Delaware common law, BASF intends to seek monetary damages in the form of lost profits.  Monetary damages for a violation of the federal antitrust laws will be trebled in accordance with 15 U.S.C. § 15(a).

90.     If Ingevity is found to have violated the federal antitrust laws and/or Delaware common law, BASF intends to seek a permanent injunction against further anticompetitive conduct, including by: (i) prohibiting Ingevity from making licenses to its intellectual property contingent upon licensees' purchase of carbon adsorbents, whether expressly or otherwise through coercive terms; (ii) declaring any such tying agreements unlawful and unenforceable; (iii) enjoining Ingevity from offering to, or entering into exclusive agreements with, purchasers of carbon adsorbents; (iv) declaring any existing exclusive agreements for carbon adsorbents unlawful and unenforceable; (v) taking any other action to unlawfully extend the scope of its patent exclusivity with respect to carbon adsorbents; and (vi) prohibiting Ingevity from taking any other action to interfere with BASF's prospective relationships with carbon adsorbent customers.

91.     If Ingevity is found to have violated the federal antitrust laws and/or Delaware common law and BASF is awarded damages, BASF intends to seek any and all pre- and post-judgment recoverable interest, including under 28 U.S.C. § 1961, 15 U.S.C. § 15(a), and Del. Code Ann. tit. 6, § 2301(d).

92.     If Ingevity is found to be liable for tortiously interfering with BASF's prospective business relations, BASF intends to seek exemplary and punitive damages for Ingevity's willful, malicious, and/or outrageous conduct.

93.     If Ingevity is found to have violated the federal antitrust laws, BASF intends to seek its expenses of litigation and cost of this action, including attorneys' fees, including under 15 U.S.C. § 15(a), 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d), and Rule 54.1 of the Court's Local Rules.

### B.     Ingevity's Statement

94.     Ingevity's statement of what it expects to prove in support of its defenses is set forth below. Ingevity's statement is based upon the current status of the case and the Court's current rulings. Ingevity reserves the right to revise this statement in light of any further decisions or orders of the Court.

95.     If the Court does not grant Ingevity's motion for summary judgment and determines that the jury should decide issues related to *Rohm & Haas*, it plans to prove that BASF cannot meet its burden to prove that Ingevity's fuel vapor canister honeycombs are staple goods that have actual and substantial uses other than practicing U.S. Patent No. RE38,844.

96.     In addition, if the Court does not grant Ingevity's motion for summary judgment on patent enforcement and *Noerr-Pennington* petitioning activities barring pre-patent expiration relief to BASF and determines that the jury should decide issues related to those questions, then Ingevity

plans to prove that BASF cannot meet its burden to show that the alleged tying, exclusive dealing, and tortious interference allegations are not patent enforcement or petitioning activities.

97.     Ingevity intends to establish that BASF has failed to meet its burden of proving that Ingevity entered into tying arrangements in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2).

98.     Ingevity intends to establish that BASF has failed to meet its burden of proving that Ingevity entered into exclusive dealing arrangements in violation of the Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2), and Section 3 of the Clayton Act (15 U.S.C. § 14).

99.     Ingevity intends to establish that BASF failed to meet its burden of proving that Ingevity tortiously interfered with BASF's prospective business relations in violation of Delaware common law.

100.    If Ingevity is found to have violated the federal antitrust laws and/or Delaware common law, Ingevity intends establish that BASF has failed to meet its burden of proving any amount of damages, including through BASF's failure to disaggregate damages attributable to lawful competition, patent enforcement activity, and petitioning activity and any alleged unlawful activity.

101.    Ingevity intends to establish that, to the extent BASF has suffered any damages attributable to any anticompetitive or tortious conduct that is not immune from liability, that BASF failed to mitigate its damages.

102.    If Ingevity is found to have violated the federal antitrust laws and/or Delaware common law, Ingevity intends to establish that BASF is not entitled to a permanent injunction.

103.    If Ingevity is found to have violated the federal antitrust laws and/or Delaware common law and BASF is awarded damages, Ingevity intends to establish that BASF is not entitled

to any pre- and post-judgment interest, including under 28 U.S.C. § 1961, 15 U.S.C. § 15(a), and Del. Code Ann. tit. 6, § 2301(d).

104.    If Ingevity is found to be liable for tortiously interfering with BASF's prospective business relations, Ingevity intends to establish that BASF is not entitled to exemplary or punitive damages.

105.    If Ingevity is found not to have violated the federal antitrust laws, Ingevity intends to seek its expenses of litigation and cost of this action, including attorneys' fees, including under 15 U.S.C. § 15(a), 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d), and Rule 54.1 of the Court's Local Rules.

106.    BASF states that it intends to prove the '844 Patent is unenforceable.  For the reasons stated above (*see supra*, § V), BASF should not be permitted to waste the Court's, the jury's, and the parties' time with irrelevant issues such as enforceability or invalidity (which it has referenced in other sections of this pretrial order but not in the section identifying issues it intended to prove).

## IX.    AMENDMENT TO PLEADINGS

107.    Neither party intends to request an amendment to its pleadings at the present time.

## X.    MOTIONS IN LIMINE

108.    Motions *in Limine* were filed separately on the docket per the Court's current practice.

## XI.    CERTIFICATION OF GOOD FAITH SETTLEMENT EFFORTS

109.    The parties certify that they have engaged in a good faith effort to explore the resolution of the litigation by settlement.  A settlement has not yet been reached.  The parties

participated in two Court-ordered mediations with Magistrate Judge Sherry R. Fallon on October 23, 2019 (D.I. 98) and June 22, 2020 (D.I. 242).

## XII.   OTHER MATTERS

### A.   Jury Trial

110.   This is a jury trial.   There shall be eight jurors.   The Court will conduct jury selection through the "struck-juror" method.

### B.   Witness Sequestration

111.   Fact witnesses who may be called (or re-called) to testify will not be permitted to attend any trial proceeding (outside of their own examination) at which testimony will be given, until such witness is fully excused, unless agreed to by the parties or ordered by the Court.   For avoidance of doubt, expert witnesses who may be called (or re-called) to testify are permitted to attend all trial proceedings.   The parties may each designate one corporate representative who may attend all trial proceedings, subject to the confidentiality restrictions below, regardless of whether that representative is also a fact witness.

### C.   Length of Trial

112.   The case is currently scheduled for a five-day jury trial.   Each trial day will begin at 9:30 a.m. and the jury will be excused at 4:30 p.m.   The trial will be timed, as the Court will allocate to counsel for each party a number of hours in which to present their respective cases.

[**BASF's Proposal**:

**D.    The Parties**

**113.    During trial, to avoid jury confusion BASF will be referred to as "plaintiff," while Ingevity Corporation and Ingevity South Carolina, LLC will be collectively referred to as "defendants."[4]**]

**E.    Order of Presentation of Evidence**

114.    Ingevity proposes that unless the Court specifies otherwise, the order of presentation of evidence will be as follows:

- Opening Statements (BASF first, followed by Ingevity);

- BASF's presentation of evidence of issues for which BASF bears the burden of proof;

- Ingevity's presentation of evidence rebutting BASF's presentation, and Ingevity's presentation of evidence on issues for which Ingevity bears the burden of proof;

- BASF's presentation of evidence rebutting Ingevity's presentation of evidence on issues for which Ingevity bears the burden of proof, and BASF's presentation of issues on issues for which BASF bears the burden of proof under a burden-shifting framework; and

- Closing Arguments (BASF first, followed by Ingevity, followed by BASF rebuttal).

115.    BASF reserves the right to request a different order of presentation of evidence depending on the Court's rulings on dispositive motions, *Daubert* motions, and other considerations.

---

[4] *See Starr International Co. v. AIG, Inc.*, 623 F. Supp. 2d 497, 500 n.1 (S.D.N.Y. 2009).

### F.        Set-up of Electronic and Computer Devices

116.    The parties request that the Court grant access to the Courtroom on the business day before trial begins, to allow them to set up electronic and computer devices to be used during trial.

### G.        Handling of Confidential Information at Trial

117.    Persons entitled to have access to HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY or THIRD PARTY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY information under the Protective Order (D.I. 90) shall not be excluded from the courtroom and shall have the right to review any information presented by either party at trial, including, but not limited to, exhibits and trial transcripts; provided, however, that such persons who are not entitled to have access to HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY or THIRD PARTY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY information under the Protective Order shall not be permitted to review any exhibits designated as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY or THIRD PARTY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY information other than as may be published or presented to the jury in Court during a witness examination.

118.    Persons not entitled to have access to CONFIDENTIAL, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY, or THIRD PARTY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY information shall be excluded from the courtroom, at the request of any party and subject to the Court's approval, during the presentation of any evidence designated CONFIDENTIAL, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY, or THIRD PARTY

CONFIDENTIAL – OUTSIDE ATTORNEYS EYES ONLY information, or any testimony that is reasonably anticipated to solicit such information.

### H.   Updates to Proposed Pretrial Order

119.   This Order shall control the subsequent course of the action, unless modified by the Court.

120.   The parties agree to work together to amend the Proposed Pretrial Order, subject to the approval of the Court, if any changes are warranted based on changed circumstances between the date of this filing and trial.

| | |
|---|---|
| SHAW KELLER LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | |
| */s/ Nathan Hoeschen* | */s/ Anthony D. Raucci* |
| Karen E. Keller (No. 4489) | Rodger D. Smith II (No. 3778) |
| Jeff Castellano (No. 4837) | Anthony D. Raucci (No. 5948) |
| Nathan Hoeschen (No. 6232) | 1201 North Market Street |
| I.M. Pei Building | P.O. Box 1347 |
| 1105 North Market Street, 12th Floor | Wilmington, DE 19899 |
| Wilmington, DE 19801 | (302) 658-9200 |
| (302) 298-0700 | rsmith@morrisnichols.com |
| kkeller@shawkeller.com | araucci@morrisnichols.com |
| jcastellano@shawkeller.com | |
| nhoeschen@shawkeller.com | OF COUNSEL: |
| | |
| OF COUNSEL: | Thomas J. Friel, Jr. |
| | KING & SPALDING LLP |
| Jeffrey T. Thomas | 601 California Street, Suite 100 |
| Rod J. Stone | Palo Alto, CA 94304 |
| Taylor W. King | (650) 422-6741 |
| Nathaniel R. Scharn | |
| GIBSON, DUNN & CRUTCHER LLP | James P. Brogan |
| 3161 Michelson Dr. | Brian Eutermoser |
| Irvine, CA 92612-4412 | Angela C. Tarasi |
| (949) 451-3800 | Mikaela Stone |
| Brian M. Buroker | KING & SPALDING LLP |
| GIBSON, DUNN & CRUTCHER LLP | 1515 Wynkoop Street, Suite 800 |
| 1050 Connecticut Avenue, N.W. | Denver, CO 80202 |
| Washington, DC 20036-5306 | (720) 535-2300 |
| (202) 955-8500 | |

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Rustin K. Mangum
Spencer W. Ririe
MANGUM RIRIE LLP
999 Corporate Dr. #260
Ladera Ranch, CA 92694
(949) 298-5590

*Attorneys for Ingevity Corporation and
Ingevity South Carolina, LLC*

August 5, 2021

Norman Armstrong, Jr.
Paul Alessio Mezzina
Christopher C. Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

Joseph D. Eng, Jr.
Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100

*Attorneys for BASF Corporation*