IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INGEVITY CORPORATION, INGEVITY SOUTH CAROLINA, LLC, <br><br> Plaintiffs-Counterclaim Defendants, <br><br> v. <br><br> BASF CORPORATION, <br><br> Defendant-Counterclaim Plaintiff. | Case No. 18-1391-RGA |

## DECLARATION OF ERIK RIPPLE

I, Erik Ripple, declare as follows:

1.  I am Chief Growth and Innovation Officer at Plaintiff Ingevity Corporation ("Ingevity"). Prior to this role, I served as President, Asia/Pacific for Ingevity from 2018 to 2020. From 2017 to 2018, I was Vice President of Performance Materials at Ingevity, where I was responsible for all commercial aspects of the automotive business.

2.  I make this declaration based on my personal knowledge. If sworn as a witness, I could and would testify to the matters referred to below.

3.  Exhibit D16 in Ingevity's Table of Exhibits in Support of Ingevity's Motions in Limine (reproduced as Exhibit P2-J in BASF's Appendix in Support of BASF's Motion in Limine No. 2) is Ingevity's supply agreement with Kayser. Exhibit D17 in Ingevity's Table of Exhibits in Support of Ingevity's Motions in Limine (reproduced as Exhibit P2-K in BASF's Appendix in Support of BASF's Motion in Limine No. 2) is Ingevity's supply agreement with Delphi.

4. Schedule 1 in Ingevity's supply agreement with Kayser identifies Ingevity's specific prices for 16 different carbon honeycomb products as of August 1, 2019. Paragraphs 3(e) and 3(e) identify the specific prices Ingevity will be charging Kayser for these 16 different carbon honeycomb products until 2026. Similarly, Schedule 1 and and paragraphs 3(a) and 3(b) in Ingevity's supply agreement with Delphi identify the specific prices Ingevity will be charging Delphi for 10 different carbon honeycomb products until 2025.

5. These specific prices that Ingevity will be charging Delphi and Kayser under their respective supply agreements with Ingevity are not known publicly and are not even known amongst these two companies. Disclosure of this pricing information would be harmful to Delphi and Kayser since other Tier-1 customers of Ingevity (which compete with Delphi and Kayser) do not know the prices or terms of these supply agreements. More specifically, since Tier-1 companies such as Delphi and Kayser submit confidential bids for vehicle platforms to the OEMs, revealing the price of a key component in these companies' bids would significantly affect their competition for business. Disclosure of this pricing information would also be harmful to Delphi and Kayser since their customers (the OEMs) might use this information to try to push down prices for Delphi's and Kayser's products.

6. I understand that several documents in the submission contain specific information about the share of volume eligible for the meet or release provisions in KFTC's and Kayser's supply agreements. This information is not known publicly and is not even known amongst these two companies. Disclosure of this information would harm KFTC's and Kayser's current and future ability to negotiate with its suppliers who would know how much of KFTC's and Kayser's volume would be up for negotiation.

7. I understand that several documents in the submission contain specific information about the amount of rebates Ingevity has provided to Delphi pursuant to the terms of Delphi's supply agreement. This information is not known publicly and is not even known by the other two companies with which Ingevity has supply agreements (Kayser and KTFC). Disclosure of this information would harm Kayser's ability to compete with other Tier-1 suppliers who would be able to reverse engineer the amount of rebates to determine the prices for which Kayser is paying for Ingevity's fuel vapor canister honeycombs. As discussed above, since Tier-1 companies such as Kayser submit confidential bids for vehicle platforms to the OEMs, revealing the price of a key component in Kayser's bids would significantly affect their competition for business.

8. I understand that one of the documents in the submission contains specific information about Ingevity's pelletized carbon and honeycomb sales separated by customer for 2019. This information is not known publicly. Disclosure of this information would competitively disadvantage Ingevity because it would give competitors insight into Ingevity's pricing strategies and give Ingevity's customers insight into exactly where they stand with respect to their relationship with Ingevity. Disclosure of this information would also competitively disadvantange Ingevity's customers because it would give their competitors (Ingevity's other customers) insight into which of Ingevity's customers are buying which products.

9. I understand that one of the documents in the submission contains specific information about Ingevity's worldwide volume, net sales, and margins for its pelletized carbon and carbon honeycomb products for 2018 and 2019. This information is not known publicly. Disclosure of this information would competitively disadvantage Ingevity because it would give

competitors insight into Ingevity's pricing strategies and production capabilities and give Ingevity's customers insight into exactly where they stand with respect to their relationship with Ingevity. Disclosure of this information would also competitively disadvantange Ingevity's customers because it would give their competitors (Ingevity's other customers) insight into which of Ingevity's customers are buying which products.

10. I understand that one of the documents in the submission contains specific information about Ingevity's volume and average net price of two of Ingevity's products (BAX 1100 and the 29x100 mm honeycomb) from 2010 to 2019. This information is not known publicly. Disclosure of this information would competively disadvantage Ingevity because it would give competitors insight into Ingevity's pricing strategies and production capabilities and give Ingevity's customers insight into exactly where they stand with respect to their relationship with Ingevity. Disclosure of this information would also competitively disadvantange Ingevity's customers because it would give their competitors (Ingevity's other customers) insight into which of Ingevity's customers are buying which products.

11. I understand that one of the documents in the submission contains specific information about Ingevity's incremental cost for its fuel vapor canister honeycombs. This information is not known publicly. Disclosure of this information would competively disadvantage Ingevity because it would give competitors insight into Ingevity's pricing strategies and give Ingevity's customers insight into exactly where they stand with respect to their relationship with Ingevity.

12. I understand that two of the documents in the submission contain specific information about the number of honeycombs Ingevity produced in 2018 and 2019. Disclosure of this information would competively disadvantage Ingevity because it would give competitors

insight into Ingevity's production capabilities and give Ingevity's customers insight into exactly where they stand with respect to their relationship with Ingevity.

13.     I understand that one of the documents in the submission contains specific amounts that Ingevity raised prices for certain customers in 2019.  Ingevity's specific price increases for its products are confidential, and public disclosure of the amount of Ingevity's specific price increases to certain customers would significantly affect those customers' ability to compete.  As discussed above, since Ingevity's customers (the Tier-1 companies) submit confidential bids for vehicle platforms to the OEMs, revealing the price increase of a key component in their bids would significantly affect their competition for business.

14.     I understand that one of the documents in the submission contains specific information about Ingevity's internal projections of the price of carbon honeycombs by 2025. Disclosure of this information would competively disadvantage Ingevity because it would give competitors insight into Ingevity's production capabilities and give Ingevity's customers insight into exactly where they stand with respect to their relationship with Ingevity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 29, 2021              By:  /s/ Erik Ripple
                                         Erik Ripple

## **CERTIFICATE OF SERVICE**

I, Jeff Castellano, hereby certify that on August 30, 2021, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

Rodger D. Smith, II
Anthony D. Raucci
MORRIS, NICHOLS, ARHST & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
araucci@mnat.com

Thomas J. Friel, Jr.
KING & SPALDING LLP
601 South Carolina Avenue, Suite 100
Palo Alto, CA 94304
(650) 422-6700
tfriel@kslaw.com

Joseph D. Eng, Jr.
Emily T. Chen
KING & SPALDING LLP
1185 Avenue of the Americas, 35th Floor
New York, NY 10036-2601
(212) 556-2100
jeng@kslaw.com
echen@kslaw.com

James P. Brogan
Brian Eutermoser
Angela C. Tarasi
Mikala Stone
KING & SPALDING LLP
1400 16th Street
16 Market Square, Suite 400
Denver, CO 80202
(720) 535-2300
jbrogan@kslaw.com
beutermoser@kslaw.com
atarasi@kslaw.com
mikaela.stone@kslaw.com

Norman A. Armstrong, Jr.
Christopher C. Yook
Paul Alessio Mezzina
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500
narmstrong@kslaw.com
cyook@kslaw.com
pmezzina@kslaw.com

*/s/Jeff Castellano*
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4867)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Ingevity Corporation and Ingevity South Carolina, LLC*