```
                    IN THE UNITED STATES DISTRICT COURT

                       FOR THE DISTRICT OF DELAWARE


 INGEVITY CORPORATION and         )
 INGEVITY SOUTH CAROLINA, LLC.    )
                                  )
          Plaintiffs,             )
                                  ) C.A. No. 18-1391(RGA)
 v.                               )
                                  ) Trial Volume VII
 BASF CORPORATION,                )
                                  )
          Defendant.              )


                                    J. Caleb Boggs Courthouse
                                    844 North King Street
                                    Wilmington, Delaware

                                    Wednesday, September 15, 2021
                                    9:19 a.m.
                                    Jury Trial


 BEFORE: THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.


 APPEARANCES:

           SHAW KELLER LLP
           BY: KAREN E. KELLER, ESQUIRE

                  -and-

           GIBSON DUNN & CRUTCHER, LLP
           BY: JEFFREY T. THOMAS, ESQUIRE
           BY: BRIAN M. BUROKER, ESQUIRE
           BY: NATHANIEL SCHARN, ESQUIRE

                                    For the Plaintiffs
```

```
 1   APPEARANCES CONTINUED:

 2           MORRIS NICHOLS ARSHT & TUNNELL LLP
             BY:  RODGER D. SMITH, II, ESQUIRE
 3
                      -and-
 4
             KING & SPALDING
 5           BY:  THOMAS J. FRIEL, ESQUIRE
             BY:  CHRISTOPHER YOOK, ESQUIRE
 6           BY:  NORMAN ARMSTRONG, JR., ESQUIRE
             BY:  EMILY T. CHEN, ESQUIRE
 7           BY:  BRIAN EUTERMOSER, ESQUIRE
             BY:  PAUL ALESSIO MEZZINA, ESQUIRE
 8
                                     For the Defendant
 9
                   ***   PROCEEDINGS   ***
10
             DEPUTY CLERK:  All rise.
11

12           THE COURT:  All right.  Good morning.  Be

13   seated.

14           So we have a note from the jury which says, and

15   I'm simplifying here, that the instructions refer to 6.1 and

16   6.2 and all they found was 6 and 6.1.  And we want to make

17   sure we aren't missing something.

18           So I looked and I think what's missing is a five

19   before the 6.1 and the 6.2.  And so what I propose to do is

20   to send back, rather than bringing them in here and telling

21   them this, something that says the cross-reference to 6.1

22   and 6.2 is a typo.  It was meant to be a cross reference to

23   5.6.1 and 5.6.2, Pages 50 to 52 and sign my name.

24           MR. THOMAS:  That's exactly -- we conferred and

25   we agree, Your Honor, that that's a typo.  There was a prior
```

```
09:20:05  1    version.
09:20:05  2              THE COURT:  You know, I understand how typos
09:20:10  3    occur.  So all right.
09:20:14  4              Well, so if we're all agreed on that, then I
09:20:17  5    will, I guess, give this to my staff to make a copy of it
09:20:20  6    and then give the original back to the jury and hope that
09:20:24  7    their careful proofreading doesn't turn out to develop more
09:20:28  8    errors that a team of lawyers and a judge all missed.
09:20:33  9              Okay?  So we'll be in recess --
09:20:37 10              DEPUTY CLERK:  All rise.
09:20:38 11              THE COURT:  -- until further notice.
09:20:40 12              (Recess was taken.)
10:51:49 13              THE CLERK:  All rise.
10:51:55 14              THE COURT:  All right.  Good morning.  We have a
10:51:57 15    second note -- you can be seated -- which I think says we'd
10:52:03 16    like to view Dr. Mathur's and Dr. Rao's PowerPoint
10:52:08 17    presentations.  And they said they can't locate them, and
10:52:14 18    they were looking for help.
10:52:15 19              I assume the PowerPoints are demonstrative
10:52:18 20    exhibits.
10:52:19 21              MR. FRIEL:  That's correct.
10:52:21 22              THE COURT:  And so unless you all tell me
10:52:23 23    something different -- well, do you want, do both sides want
10:52:29 24    to give them to the jury?
10:52:30 25              MR. THOMAS:  No, Your Honor.  They're not
```

```
10:52:32  1   evidence, and I think there was something in one of your
10:52:35  2   instructions.
10:52:35  3               THE COURT:  No, there was definitely something
10:52:37  4   in one of my instructions.  And in fact, I was trying to put
10:52:40  5   my hand on that, but I -- sometimes lawyers change their
10:52:45  6   minds about things, but obviously, they are demonstrative
10:52:48  7   exhibits and so the proposed response here is and I quote,
10:52:55  8   "The PowerPoints are demonstrative exhibits.  (See jury
10:52:59  9   instructions at page to be filled in)."
10:53:04 10               MR. SMITH:  It's Page 11.
10:53:05 11               THE COURT:  Thus, they are not part of the
10:53:06 12   evidence in this case and I cannot provide them to you and
10:53:10 13   sign my name.
10:53:11 14               MR. SMITH:  Your Honor, it's Page 11.
10:53:12 15               THE COURT:  Page 11.
10:53:13 16               MR. SMITH:  Instruction 1.11.
10:53:15 17               THE COURT:  Yeah.  I'm sure you're right, just
10:53:21 18   unfortunately, I just want to go get a different pen.  I'll
10:53:25 19   be right back.
10:53:54 20               (Recess was taken.)
10:53:57 21               THE COURT:  Page 11, Mr. Smith?
10:53:58 22               MR. SMITH:  Yes, Your Honor.  It's instruction
10:54:01 23   1.11.
10:54:01 24               THE COURT:  I was just going to put Page 11.
10:54:04 25               MR. SMITH:  Fair enough.
```

```
10:54:05  1              THE COURT:  This is a frequent sort of question
10:54:09  2   one gets, so one of the weaknesses in the system which is we
10:54:13  3   can tell them they can get the exhibits, but not the
10:54:17  4   demonstrative exhibits.  But as they're listening, they have
10:54:19  5   no idea which are which.
10:54:21  6              MS. KELLER:  Right.
10:54:22  7              THE COURT:  So all right.  So I guess I will --
10:54:26  8   so you're good with me just sending back what I just read,
10:54:30  9   Mr. Thomas?
10:54:30 10              MR. THOMAS:  That's fine.
10:54:32 11              THE COURT:  Mr. Friel?
10:54:33 12              MR. FRIEL:  Yes, Your Honor.
10:54:34 13              THE COURT:  So we'll make a copy of this and
10:54:36 14   send it back and see what happens next.
10:54:39 15              All right.  We'll be in recess.
10:54:40 16              THE CLERK:  All rise.
12:21:56 17              (Court was recessed.)
12:21:56 18              DEPUTY CLERK:  All rise.
12:25:12 19              THE COURT:  All right.  Please be seated.  I've
12:25:16 20   been told that the jury has a verdict, so let's get the
12:25:20 21   jury.
12:25:21 22              (Jury entering the courtroom.)
12:27:08 23              THE COURT:  All right.  Everyone, you may be
12:27:19 24   seated.
12:27:20 25              Members of the jury, welcome back.  I understand
```

12:27:23  1  that you have reached a unanimous verdict.
12:27:26  2              Is that correct, Madam Forelady?
12:27:29  3              THE JUROR:  Yes.
12:27:30  4              THE COURT:  All right.  Could you hand the
12:27:32  5  verdict to the deputy clerk?
12:27:36  6              All right.  So I'm going to hand the verdict to
12:28:20  7  the deputy clerk to read it or what, for some reason or
12:28:24  8  another, we call to publish it.  So pay close attention
12:28:29  9  because it's possible that after the verdict is announced,
12:28:32 10  each member of the jury will be asked whether you agree with
12:28:34 11  it.
12:28:35 12              All right?  So can we publish the verdict?
12:28:40 13              DEPUTY CLERK:  The verdict reads:  Plaintiff's
12:28:45 14  tying claim.  Has BASF proven by a preponderance of the
12:28:49 15  evidence that Ingevity engaged in unlawful tying of licenses
12:28:53 16  to U.S. Patent Number RE38,844 to sales of Ingevity's carbon
12:29:02 17  honeycombs in violation of Sections 1 or 2 of the Sherman
12:29:02 18  Act?
12:29:07 19              The jury answers, "Yes."
12:29:08 20              Plaintiff's exclusive dealing claim.  Has BASF
12:29:15 21  proven by a preponderance of the evidence that Ingevity
12:29:19 22  engaged in unlawful exclusive dealing in violation of
12:29:23 23  Sections 1 or 2 of the Sherman Act or Section 3 of the
12:29:27 24  Clayton Act?
12:29:28 25              The jury answers, "Yes."

```
12:29:29  1                  Plaintiff's claim for intentional interference
12:29:34  2    with prospective business relationships.  Has BASF proven by
12:29:40  3    a preponderance of the evidence that Ingevity knew about and
12:29:44  4    unlawfully interfered with a prospective business
12:29:48  5    relationship between BASF and Kayser?
12:29:50  6                  The jury answers, "Yes."
12:29:51  7                  Antitrust damages.  What amount of compensatory
12:30:02  8    damages, if any, is BASF entitled to recover for its
12:30:06  9    antitrust claims tying and exclusive dealing?
12:30:10 10                  The jury says, $28,285,714.
12:30:18 11                  Tortious interference damages.  What amount of
12:30:21 12    compensatory damages, if any, is BASF entitled to recover
12:30:25 13    for its claim that Ingevity unlawfully interfered with
12:30:29 14    BASF's prospective business relationship with Kayser?
12:30:33 15                  The jury says, $16 million, 800 and -- I'm
12:30:37 16    sorry, "$16,483,475."
12:30:42 17                  Members of the jury, is this the verdict you
12:30:45 18    have agreed upon and so say you all?
12:30:48 19                  THE JURY:   Yes.
12:30:48 20                  THE COURT:  All right.  Are there any requests?
12:30:51 21                  MR. FRIEL:  None here, Your Honor.
12:30:54 22                  MR. THOMAS:  Yes, Your Honor.
12:30:56 23                  THE COURT:  So you'd like the jury polled?
12:30:58 24                  MR. THOMAS:  I'd like to poll the jury.
12:30:59 25                  THE COURT:  Yes, yes.  Okay.  Let's poll the
```

```
12:31:01  1    jury.
12:31:01  2                DEPUTY CLERK:  Juror Number 1, is this the
12:31:04  3    verdict as read the verdict you have agreed upon?
12:31:07  4                JUROR NUMBER 1:  Yes.
12:31:08  5                DEPUTY CLERK:  Juror Number 2, is the verdict as
12:31:10  6    read the verdict you have agreed upon?
12:31:12  7                JUROR NUMBER 2:  Yes.
12:31:13  8                DEPUTY CLERK:  Juror Number 3, is the verdict as
12:31:15  9    read the verdict you have agreed upon?
12:31:17 10                JUROR NUMBER 3:  Yes.
12:31:17 11                DEPUTY CLERK:  Juror Number 4, is the verdict as
12:31:19 12    read the verdict you have agreed upon?
12:31:21 13                JUROR NUMBER 4:  Yes.
12:31:22 14                DEPUTY CLERK:  Juror Number 5, is the verdict as
12:31:24 15    read the verdict you have agreed upon?
12:31:25 16                JUROR NUMBER 5:  Yes.
12:31:27 17                DEPUTY CLERK:  Juror Number 6, is the verdict as
12:31:28 18    read the verdict you have agreed upon?
12:31:30 19                JUROR NUMBER 6:  Yes.
12:31:30 20                DEPUTY CLERK:  Juror Number 7, is the verdict as
12:31:33 21    read the verdict you have agreed upon?
12:31:34 22                JUROR NUMBER 7:  Yes.
12:31:34 23                DEPUTY CLERK:  Juror Number 8, is the verdict as
12:31:37 24    read the verdict you have agreed upon?
12:31:39 25                JUROR NUMBER 8:  Yes.
```

```
12:31:39   1                THE COURT:  All right.  So there is no doubt as
12:31:42   2   to unanimity, so I'm going to direct the clerk to file and
12:31:47   3   record the verdict.  And I'm going to discharge the jury
12:31:53   4   from their service in this case.
12:31:58   5                And I guess, before I do that, I would like to
12:32:05   6   tell you that I will be free in about one minute after you
12:32:12   7   leave.  And if you're still here, I would like to come back
12:32:15   8   and thank you personally for your service on this case.
12:32:20   9                In any event, on behalf of the Court and as the
12:32:24  10   parties said during closing argument, we all do thank you
12:32:29  11   for your service.  You know, resolution of disputes like
12:32:33  12   this is impossible without people who are willing to serve.
12:32:37  13                And I will also note, at least to what I saw,
12:32:42  14   that you were very attentive throughout the trial.
12:32:47  15   Sometimes when there's lots of videos and, you know, it's
12:32:51  16   kind of a lot of technical sort of testimony of one kind or
12:32:56  17   another, it's real easy for jurors to fall asleep.  I didn't
12:33:01  18   see any of that.  And so you've not only done your service,
12:33:06  19   but I think you've done it to a very high standard.
12:33:09  20                So, in any event, I'm going to now excuse the
12:33:13  21   jury.  By the way, if you're in a hurry to get out of here,
12:33:16  22   you don't have to wait around for me to come back and say
12:33:19  23   thank you.
12:33:20  24                Okay?  Can we take the jury out?
12:33:24  25                (Jury leaving the courtroom.)
```

```
12:33:39   1              All right.  You can be seated for a minute.  So
12:33:48   2   my understanding of the way the jury has returned this
12:33:51   3   verdict is the total verdict is $28,285,714 because the
12:34:00   4   tortious interference damages overlap with the damages for
12:34:07   5   exclusive dealing relating to the antitrust claims.  And so
12:34:13   6   I think the -- so that's my impression of what the right
12:34:17   7   amount of the verdict is.
12:34:18   8              Do you disagree with it, Mr. Friel?
12:34:20   9              MR. FRIEL:  No, Your Honor, but with a caveat
12:34:22  10   that that's for antitrust damages, and you have an
12:34:25  11   alternative damages number on the interference claim.
12:34:31  12              THE COURT:  Oh, okay. Right, right.  In other
12:34:35  13   words, it's $28 million, but if something happened to the
12:34:38  14   antitrust, you'd get $16 million on the tortious
12:34:41  15   interference?
12:34:41  16              MR. FRIEL:  Correct.  And that amount that would
12:34:43  17   apply under the antitrust law is, for trebling, would be the
12:34:48  18   full amount that's --
12:34:49  19              THE COURT:  Well, yeah.  The trebling is
12:34:52  20   something else.  I don't think that's something that I do
12:34:54  21   right now, is it?
12:34:55  22              MR. FRIEL:  I don't think you need to do it at
12:34:57  23   this moment, no.
12:34:58  24              THE COURT:  Okay.  Well, no, I mean, in other
12:35:00  25   words, I'm going to enter a verdict under Rule 58 that says
```

something, and it's going to have the $28 million number and the $16 million number, but anything else will be something for you to raise post-trial.

MR. FRIEL:  Sure.  I understand trebling is automatic, but we will file whatever is appropriate.

THE COURT:  Well, in any event, I'm going to report what the jury said.  If it's automatic, maybe it's automatic.  This is the first time I've ever done this, so I have no idea.

But all right.  I think, in any event, we're in agreement as to what should be entered as the verdict at least based on the -- that there is overlap between the tortious interference and the antitrust damage.  So I think we've got that straightened out; right?

MR. FRIEL:  Yes, Your Honor.  Yes.

THE COURT:  All right.  Well, is there anything else right now?

MR. THOMAS:  Yes, Your Honor.  Obviously, we're going to be filing a Rule 50(b) motion and I was just wondering whether we could have, rather than entering the judgment right away and getting the 28 days started, whether we could speak with counsel for BASF and work out a briefing schedule and propose it to Your Honor.

THE COURT:  Well, I think the verdict that I'm entering, it's not a final judgment, it's just a trial

```
12:36:18  1   verdict, and the trial verdict has occurred.  So my
12:36:20  2   recollection is the rule actually says something like you're
12:36:24  3   supposed to enter it promptly after the trial is concluded.
12:36:28  4              So you can talk about getting extensions of
12:36:33  5   time, but I think I need to enter the trial verdict.
12:36:37  6              MR. FRIEL:  Yes, and I think the patent
12:36:39  7   invalidity verdict has been -- the judgment entry has been
12:36:43  8   delayed on that.  I think it's time to wrap this up.
12:36:45  9              THE COURT:  Okay.  Well, that's not really --
12:36:49 10   you know, that's not a trial verdict, that's something else.
12:36:51 11              MR. FRIEL:  Right.
12:36:52 12              THE COURT:  So I'm going to enter the trial
12:36:54 13   verdict.  You all can confer and meet and submit proposals,
12:36:57 14   hopefully one, but maybe more than one, as to what I should
12:37:01 15   do next.  But until somebody tells me that I'm supposed to
12:37:06 16   do something, after I enter the trial verdict, I don't plan
12:37:09 17   to do anything.
12:37:09 18              Okay?
12:37:10 19              MR. THOMAS:  Okay.  Thank you, Your Honor.
12:37:11 20              MR. FRIEL:  Thank you, Your Honor.
12:37:12 21              THE COURT:  All right.  Well, thank you very
12:37:14 22   much.  It was a well-tried case, and I appreciate your
12:37:18 23   patience with me.
12:37:20 24              All right.  We'll be in recess.
12:37:22 25              DEPUTY CLERK:  All rise.
```

1      (Court was recessed at 12:37 p.m.)

2      I hereby certify the foregoing is a true and

3 accurate transcript from my stenographic notes in the

4 proceeding.

5      /s/ Heather M. Triozzi
       Certified Merit and Real-Time Reporter
6      U.S. District Court