IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INGEVITY CORPORATION and<br>INGEVITY SOUTH CAROLINA, LLC,<br><br>　　　　Plaintiffs/Counter-Defendants,<br><br>　　v.<br><br>BASF CORPORATION,<br><br>　　　　Defendant/Counter-Plaintiff. | Civil Action No. 18-1391-RGA |

## MEMORANDUM ORDER

Plaintiffs Ingevity Corporation and Ingevity South Carolina, LLC (collectively, "Ingevity") filed a patent case against Defendant BASF, alleging infringement of U.S. Patent No. RE38,844 "(the '844 Patent"). (D.I. 1). The '844 Patent claimed a technology for reducing evaporative emissions. (*Id.*). On November 17, 2020, I invalidated all asserted claims of the '844 Patent based on prior invention. (D.I. 419 at 14).[1]

BASF had filed counterclaims. BASF alleged that Ingevity: (1) unlawfully leveraged, or tied, the '844 Patent by requiring customers wishing to license the patent to also purchase unpatented carbon honeycombs from Ingevity; (2) unlawfully restrained competition by entering into exclusive supply agreements with Delphi, KFTC, and Kayser; and (3) tortiously interfered with a prospective business relationship between BASF and Kayser. (D.I. 65 at 16-37; D.I. 525 at 2; D.I. 549 at 12). The parties filed and briefed cross-motions for summary judgment. (D.I. 440, 441, 443, 444, 455, 456, 468, 470). Ingevity argued that its carbon honeycombs were non-staple

---

[1] The Federal Circuit later affirmed a related ITC decision. *See Ingevity Corp. v. ITC*, 2021 WL 3440786 (Fed. Cir. July 21, 2021).

1

articles of commerce, such that Ingevity had the right to control the market for such honeycombs (D.I. 441 at 6-15), and that its alleged anticompetitive conduct was immune from liability under the patent laws and the *Noerr-Pennington* doctrine. (*Id.* at 15-20). I denied both summary judgment motions. (D.I. 525). I decided that BASF's tying claim involved a question of fact as to whether Ingevity's carbon honeycombs were staple articles of commerce. (*Id.* at 2-3). I said that I would decide the *Noerr-Pennington* issues, but that my decision "must await hearing the evidence at trial." (*Id.* at 4-5). I noted that "the *Noerr-Pennington* doctrine will [likely not] help Ingevity if BASF proves the Ingevity product that competes with the EvapTrap XC is a staple article of commerce." (*Id.* at 5).

The staple article of commerce question was incorporated in Final Jury Instruction 4.2, which provided, "BASF bears the burden of proving by a preponderance of the evidence that the carbon honeycombs at issue are staple goods and therefore beyond the scope of Ingevity's right to exclude." (D.I. 549 at 17; D.I. 570 at 1316). I further instructed that if the jury determined that BASF had not met this burden, then the jury "must find for Ingevity on the tying and tortious interference claims." (D.I. 549 at 17; D.I. 570 at 1316). The parties also jointly requested and received a jury instruction on *Noerr-Pennington* and patent-enforcement immunity. (*See* D.I. 545 at 24-25). That instruction—Final Jury Instruction 4.1—was provided to the jury in writing and orally. It read as follows:

### 4.1 COMMON IMMUNITY – PATENT ENFORCEMENT AND THE EXERCISE OF CONSTITUTIONAL RIGHTS

> Ingevity has the right under the patent laws to enforce its patents, including through licensing, through communications about its patent rights to customers and competitors, and through litigation. Additionally, Ingevity has the right under the first amendment to the U.S. Constitution to file a lawsuit, to threaten litigation, and to communicate with customers about litigation. Evidence of the exercise of such rights cannot form the basis for BASF's antitrust claims or BASF's tortious interference claim.

> However, Ingevity has no right to engage in conduct, such as tying or exclusive dealing, that unlawfully restricts competition beyond the scope of the patent monopoly, and such conduct can form the basis for BASF's antitrust claims and its tortious interference claim.

(D.I. 549 at 16; D.I. 570 at 1315).[2]

The jury returned a verdict finding that BASF proved by a preponderance of the evidence that (1) Ingevity unlawfully tied licenses to the '844 Patent to sales of Ingevity's carbon honeycombs; (2) Ingevity engaged in unlawful exclusive dealing; and (3) Ingevity knew about and unlawfully interfered with a prospective business relationship between BASF and Kayser. (D.I. 553 at 1-2). Following the jury's verdict, the parties submitted proposed findings of fact and conclusions of law on the immunity issues. (D.I. 575, 576, 577). I have considered the parties' briefing. For the reasons set forth below, I find that neither the *Noerr-Pennington* doctrine nor the patent laws immunize Ingevity's conduct.

The key question here is whether the jury implicitly found facts that are fatal to Ingevity's immunity defenses. I agree with BASF that, "in finding Ingevity liable for tying, exclusive dealing, and tortious interference, the jury implicitly and necessarily found that BASF had proven that the honeycombs at issue were a staple good with substantial noninfringing uses." (D.I. 575 at 5). The logic is straightforward. The jury was instructed to find for Ingevity if BASF failed to meet its burden on the staple article of commerce question. (D.I. 549 at 17). As the jury did not find for Ingevity (D.I. 553), the jury must have found that BASF met its burden.

---

[2] Both parties requested the first paragraph. Only BASF requested the second paragraph. Ingevity's written objections to the second paragraph led with its being "repetitive, … argumentative, confusing, and unnecessary." (D.I. 545 at 24-25). Ingevity did not make or renew any objections to Final Jury Instruction 4.1 when the instructions were being finalized. (*See* D.I. 569 at 1245-95).

Ingevity does not dispute that the jury implicitly found that its honeycombs were staple goods.[3] In Ingevity's view, however, this finding is irrelevant. (D.I. 576 at 1). Ingevity maintains that its immunity defenses do not depend on any staple article finding by the jury, as the staple article question "is separate from Ingevity's First Amendment and patent law immunity defenses." (*Id.* at 8-9). "[T]he accused tying conduct," says Ingevity, "is in fact an exercise of First Amendment and patent rights" (*id.* at 3), as BASF's evidence regarding that conduct "shows nothing more than that Ingevity communicated to customers what does and does not infringe the '844 Patent," which is a protected exercise of such rights. (*Id.* at 2).

The trouble with Ingevity's argument is that the jury found otherwise. Jury Instruction 4.1 provided that Ingevity has a right under the patent laws "to enforce its patents ... through communications about its patent rights to customers and competitors, and through litigation," as well as a First Amendment right "to file a lawsuit, to threaten litigation, and to communicate with customers about litigation." (D.I. 549 at 16). The jury was instructed, "Evidence of the exercise of such rights cannot form the basis for BASF's antitrust claims or BASF's tortious interference claim." (D.I. 549 at 16). In other words, the jury was "instructed that it could *not* find illegal tying if Ingevity's conduct was limited to 'communications about its patent rights to customers.'" (D.I. 577 at 3 (quoting D.I. 549 at 16)). Again, the logic is straightforward. The jury found tying (D.I. 553); thus, the jury also found that the conduct upon which the jury based its finding was not limited to protected communications about its patent rights to customers. I therefore disagree with Ingevity's assertion that "the jury was not asked to decide ... the immunity questions now before

---

[3] Ingevity indicates that it will seek to show in a forthcoming motion that the jury's staple article finding "was not supported by substantial evidence, or at a minimum was against the great weight of the evidence." (D.I. 576 at 1).

4

the Court," such as "whether the conduct at issue ... was petitioning activity or an immune exercise of patent rights." (D.I. 576 at 8).

Neither am I convinced by Ingevity's argument that the jury's findings are irrelevant because the parties agreed that I—and not the jury—would decide the instant immunity questions. (*Id.*). As I noted in my order on the summary judgment motions (D.I. 525 at 4), the parties appeared to have reached such an agreement prior to the pretrial conference. (*See* D.I. 496 at 15 n.3 ("BASF and Ingevity agree that the determination of whether conduct amounts to patent enforcement or petitioning activity that is therefore immune under the patent laws and/or the *Noerr-Pennington* doctrine is a question of law for the Court, but include the issue here in case the Court disagrees and determines the matter is a question of fact for the jury.")).[4] The parties did not, however, agree that I would decide every subsidiary factual issue that bears on immunity. For example, at the pretrial conference, BASF clarified that although it would be helpful for me to resolve the immunity issues as a matter of law, "there may be subsidiary factual issues that wind up being tried before the jury." (D.I. 521 at 8).

Ingevity's position was less clear. Although Ingevity indicated its preference for me to "hear the evidence in the case and then decide [the immunity questions] ... and not give that to the jury" (*id.* at 7), Ingevity also appeared to agree with BASF that the jury should decide related factual issues. (*See id.* at 13 ("[Y]ou might instruct the jury that certain activities that they've identified as being improper ... are protected and Ingevity has a right to do X, Y, Z....")). At trial, Ingevity did not object to Jury Instruction 4.1. Indeed, when asked about that instruction during

---

[4] At the time of the pretrial order, the parties filed requested final jury instructions. (D.I. 496). The parties continued to work on resolving disputes on that subject. After four days of trial, the parties filed revised requested final jury instructions. (D.I. 545). At the end of the fifth day of trial, the Court and the parties discussed the jury instructions at the prayer conference. (D.I. 569 at 1245-95). Thereafter, the Court filed the final jury instructions. (D.I. 549).

the "prayer conference,"[5] Ingevity seemed to suggest that the instruction reflected Ingevity's own theory that its *Noerr-Pennington* and patent law immunity defenses are independent of the staple good issue. (*See* D.I. 569 at 1282-83). Ingevity also confirmed during the prayer conference that it wanted the jury to decide factual issues bearing on the immunity questions. "[The Court]: So basically you're wanting to ask [on the verdict form 'whether the good is staple'] for – not really for what the jury is being directly asked to decide, but as a sort of factual finding that I would then do something with if necessary afterwards? [Counsel for Ingevity]: I believe that's correct." (*Id.* at 1284 (bracketed quote at 1283)).

In sum, counter to Ingevity's contentions (*see* D.I. 572 at 4-6), nothing in the record amounts to a waiver by BASF of its demand for a jury trial such that the jury's findings as to "any factual issues relevant to the immunity defenses" were merely "advisory." (*Id.* at 6). "Given that a court must indulge every reasonable presumption against a finding of waiver, ambiguity should be resolved against inferring waiver." *Cabinet Vision v. Cabnetware*, 129 F.3d 595, 601 (Fed. Cir. 1997). I do not think that Ingevity should receive another bite at the apple by relitigating facts that the jury, at Ingevity's request, has already decided. *See Everett H. ex rel. Havey v. Dry Creek Joint Elem. Sch. Dist.*, 2018 WL 3655886, at *3-4 (E.D. Cal. July 31, 2018) (rejecting plaintiffs' demand that the court "issue findings of fact and conclusions of law that run counter to the jury's findings" in a case "already decided by the jury at Plaintiffs' request").

---

[5] This is a term used in Delaware. *See Lolley v. State*, 132 A.3d 1160 (Table), 2016 WL 446736, at *1 (Del. Feb. 4, 2016) (Chief Justice Seitz). I have the impression it is not widely used elsewhere.

Thus, for the reasons discussed above, I conclude that neither the *Noerr-Pennington* doctrine nor the patent laws immunize Ingevity's conduct.

IT IS SO ORDERED.

Entered this 11th day of April, 2023.

_____
United States District Judge